# ATTACHMENT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | )   Civil Action No. 3:14-01772-ST |
| v. | ) |
| | )   **AMENDED CONSENT DECREE** |
| LINNTON PLYWOOD | ) |
| ASSOCIATION, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## AMENDED CONSENT DECREE

## I. BACKGROUND

A.      The United States of America ("United States"), on behalf of the Administrator of

the United States Environmental Protection Agency ("EPA"), the National Oceanic and

Atmospheric Administration ("NOAA"), United States Department of Commerce and the United

States Department of the Interior ("DOI"), filed a complaint in this matter pursuant to Section107

of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42

U.S.C. § 9607, as amended ("CERCLA"), seeking reimbursement for response costs incurred or

to be incurred for response actions taken or to be taken at or in connection with the release or

threatened release of hazardous substances and for Natural Resource Damages at the Portland

Harbor Superfund Site in Portland, Multnomah County, Oregon (the "Site).

B.      In response to the release or threatened release of hazardous substances at or from

the Site, EPA undertook response actions pursuant to Section 104 of CERCLA, 42 U.S.C. § 9604,

and will undertake additional response actions in the future.  NOAA and DOI have undertaken, in

Page 1

coordination with the other Natural Resource Trustees, Natural Resource Damage assessment activities pursuant to Section 107 of CERCLA, 42 U.S.C. § 9607, and will undertake additional Natural Resource Damage assessment activities in the future.

C.    In performing response actions at the Site, to date EPA has incurred approximately $9 Million in unreimbursed costs in response to releases and threatened releases of hazardous substances at the Site , and will continue to incur costs in the future. A 2012 draft Feasibility Study estimated the cost of different remedial alternatives could range between $169 Million and $1.7 Billion. In performing Natural Resource Damage assessment activities at the Site, NOAA and DOI have incurred unreimbursed costs in excess of $2 Million and will continue to incur costs in the future. A preliminary estimate of Natural Resource Damages at the Site exceeds $291 Million.

D.    The United States alleges that Settling Defendant is a responsible party pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and is jointly and severally liable for response costs incurred and to be incurred at the Portland Harbor Superfund Site and Natural Resource Damages related to the Site.

E.    As more fully described below, liability insurance policies may have been or were issued to, or for the benefit of Settling Defendant which may provide coverage for a part of the claims the United States is making against Settling Defendant.

F.    Settling Defendant has represented that it is no longer conducting any business and, other than its insurance policies, its only tangible asset is a parcel of real property, located within the boundaries of the Site. Settling Defendant is in the process of liquidating all of its assets and winding down all of its business affairs.

G.     Settling Defendant has entered into a sale agreement for the sale of its real property to Linnton Water Credits, LLC ("LWC"), which is conditioned upon its settlement of Settling Defendant's liability for response costs and Natural Resource Damages under CERCLA. At the conclusion of the sale of its property, Settling Defendant will not own or operate on any property within the Site.

H.     At the United States' request, Settling Defendant provided Financial Information and Insurance Information and represents that all such information is true and complete.  The United States has reviewed the Financial Information and Insurance Information submitted by Settling Defendant to determine whether Settling Defendant is financially able to pay response costs incurred and to be incurred at the Site and Natural Resource Damages related to the Site. Based upon this Financial Information and Insurance Information, the United States has determined that Settling Defendant has limited financial ability to pay response costs incurred and to be incurred at the Site and Natural Resource Damages related to the Site, but is able to pay the amounts specified in Section VII. and fulfill the other obligations assumed by Settling Defendant under this Consent Decree.

I.     The United States and Settling Defendant agree, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that settlement of this matter will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is ORDERED, ADJUDGED, AND DECREED:

## II. <u>JURISDICTION</u>

Page 3

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. §§ 9607 and 9613(b) and also has personal jurisdiction over Settling Defendant.  Settling Defendant consents to and shall not challenge entry of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

### III.  PARTIES BOUND

2.      This Consent Decree is binding upon the United States, and upon Settling Defendant and its successors and assigns.  Any change in ownership or corporate or other legal status, including, but not limited to, any transfer of assets or real or personal property, shall in no way alter the status or responsibilities of Settling Defendant under this Consent Decree.   In accordance with ORS Chapter 62, the Complaint, this Consent Decree, and Settling Defendant's obligations hereunder are pending proceedings which survive in the event of dissolution of Settling Defendant.

### IV.  DEFINITIONS

3.      Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations.  Whenever terms listed below are used in this Consent Decree or in any appendix attached hereto, the following definitions shall apply:

a.      "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. § 9601, et seq.

b.    "Consent Decree" shall mean this Consent Decree and all appendices attached hereto.  In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

c.    "Day" shall mean a calendar day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

d.    "DOJ" shall mean the United States Department of Justice and any successor departments, agencies or instrumentalities of the United States.

e.    "Effective Date" shall mean the date upon which this Consent Decree is entered by the Court as recorded on the Court docket, or, if the Court instead issues an order approving the Consent Decree, the date such order is recorded on the Court docket.

f.    "EPA" shall mean the United States Environmental Protection Agency and any successor departments, agencies or instrumentalities of the United States.

g.    "EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

h.    "Federal Natural Resource Trustees" or "Federal Trustees" shall mean the U.S. Department of the Interior and the National Oceanic and Atmospheric Administration, U.S. Department of Commerce and any successor departments, agencies or instrumentalities of the United States.

i.    "Financial Information" shall mean those financial documents identified in Appendix A.

j.      "Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a).  The applicable rate of interest shall be the rate in effect at the time the interest accrues.  The rate of interest is subject to change on October 1 of each year.

k.      "Institutional Controls" shall mean Proprietary Controls and state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices that: (1) limit land, water, and/or resource use to minimize the potential for human or environmental exposure to Waste Material at or in connection to the Site; (2) limit land, water, and/or resource use to implement, ensure non-interference with, or ensure the protectiveness of the response action; and/or (3) provide information intended to modify or guide human behavior at the Site.

l.      "Insurance Information" shall mean those insurance documents identified in Appendix B.

m.      "Insurance Policies" shall mean all insurance policies under which Settling Defendant is insured, including, but not limited to policies for which Settling Defendant is an "insured," "named insured" or "additional insured," including, but not limited to comprehensive, commercial, primary, umbrella and excess policies issued by Liberty Mutual Insurance Company, or its affiliates, parents, subsidiaries or predecessors and successors in interest, including, but not limited to General Insurance Company of America, American States Insurance Company and SAFECO Insurance Company, and including but not limited to all policies for comprehensive or commercial general liability, excess, excess/umbrella, umbrella, pollution legal liability, and environmental impairment liability that may have ever been issued to Settling Defendant and

policies otherwise for the benefit of Settling Defendant. Insurance Policies known at the time of signing this Consent Decree are listed in Appendix B to this Consent Decree.

n.    "Natural Resource Damages" shall mean the compensation, including the reasonable costs of assessing such damages, which is recoverable pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), by Natural Resource Trustees on behalf of the public for injury to, destruction of, loss of, or loss of uses of the natural resources or resource services resulting from the release or threat of release of hazardous substances at or from the Site.

o.    "Natural Resource Trustees" shall mean, for the purposes of this Consent Decree, those Trustees who are part of the Portland Harbor Natural Resource Trustee Council as of the date of entry of this Consent Decree.

p.    "Net Proceeds of Sale" shall mean the total value of all consideration received by Settling Defendant from the sale of the Property either on the terms set forth in Appendix C, or by a future purchase and sale agreement, not including: i) any payment in consideration of the release of any lien listed in Appendix A; (ii) any reasonable closing costs paid regarding the sale; (iii) any reasonable broker's fees regarding the sale; (iv) any state and/or municipal transfer taxes regarding the sale; (v) amounts owed those trade creditors disclosed to the US prior to the lodging of this Consent Decree, if any; and (vi) payments of retains from earnings and share redemption as ordered by the court in the matter of *Weiss, et al. v. Linnton Plywood Association, et al.*, Circuit Court of the State for Multnomah County Case No. 0807-10423; and iv) federal, state, or county taxes owed on the Property and Sale proceeds.

q.    "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

r.    "Parties" shall mean the United States and the Settling Defendant.

s.    "Plaintiff" shall mean the United States.

t.    "Portland Harbor Special Account" shall mean the special account, within the EPA Hazardous Substances Superfund, established for the Portland Harbor Superfund Site by EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. § 9622(b)(3).

u.    "Portland Harbor Natural Resource Trustee Council" shall mean those Natural Resource Trustees who are participating as Natural Resource Trustees pursuant to the "Natural Resource Trustee Memorandum of Agreement for the Portland Harbor Superfund Site" at the time of entry of this Consent Decree – the U.S. Department of the Interior; the U.S. Department of Commerce, acting through the National Oceanic and Atmospheric Administration (NOAA); the State of Oregon; the Confederated Tribes of the Grand Ronde Community of Oregon; the Confederated Tribes of Siletz Indians; the Confederated Tribes of the Umatilla Indian Reservation; the Confederated Tribes of the Warm Springs Reservation of Oregon; and the Nez Perce Tribe.

v.    "Property" shall mean Linnton Plywood Association's 26.5 acres located at 10504 NW St. Helens Road, Portland, Oregon, Multnomah County, as more fully described in the legal description set forth in Appendix D.

w.    "Proprietary Controls" shall mean easements or covenants running with the land that (1) limit land, water, or resource use and/or provide access rights and (2) are created pursuant to common law or statutory law by an instrument that is recorded by the owner in the appropriate land records office.

x.    "RCRA" shall mean the Solid Waste Disposal Act, 42 U.S.C. § 6901, *et seq.* (also known as the Resource Conservation and Recovery Act).

y.    "Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

z.    "Settling Defendant" shall mean Linnton Plywood Association.

aa.    "Site" shall mean the Portland Harbor Superfund Site, located in the City of Portland, Multnomah County, Oregon, that was listed on the National Priorities List ("NPL") on December 1, 2000, 65 Fed. Reg. 75179-01 . The Portland Harbor Superfund Site consists of the areal extent of contamination from releases to the lower Willamette River, and also includes upland source areas.  The Portland Harbor Superfund Site Assessment Area currently covers River Mile 1 to River Mile 12.

bb.    "United States" shall mean the United States of America, including its departments, agencies and instrumentalities, including EPA and the Federal Natural Resource Trustees.

cc.    "Waste Material" shall mean 1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); 2) any pollutant or contaminant under Section 101(33) of CERCLA, 42 U.S.C. § 9601(33); 3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27); and 4) any "hazardous substance" under ORS 465.200 *et.seq.*

## V. <u>STATEMENT OF PURPOSE</u>

4.    By entering into this Consent Decree, the mutual objective of the Parties is for Settling Defendant to make cash payments and provide other valuable consideration to resolve its

alleged liability as provided in the Covenant Not to Sue by Plaintiff in Section IX., and subject to the Reservation of Rights by the Plaintiff in Section X.

## VI.  CONFESSION OF JUDGMENT

5.      Settling Defendant hereby agrees and confesses to entry of a judgment against it on the United States' claims, as set forth in the Complaint, in the amount of $9 Million for unreimbursed past costs and in an unliquidated amount for all future response costs incurred and to be incurred in connection with the release or threatened releases of hazardous substances at the Site, including those beginning in 1951 and continuing thereafter during Defendant's ownership and operations at the Property, under Section 107 of CERCLA, 42 U.S.C. § 9607.   Settling Defendant hereby further agrees and confesses to entry of a judgment against it on the United States' claims, as set forth in the Complaint, in the amount of $2 Million of past unreimbursed Natural Resource Damages, specifically assessment costs incurred, and in an unliquidated amount for all Natural Resource Damages in connection with the release or threatened releases of hazardous substances at the Site, including those beginning in 1951 and continuing thereafter during Defendant's ownership and operations at the Property, under Section 107 of CERCLA, 42 U.S.C. §9607.

## VII.  PAYMENT OF THE JUDGMENT

6.      Within thirty (30) days of entry by the Court of this Consent Decree, Settling Defendant shall pay to the United States, Four Hundred Fifty Thousand Dollars ($450,000) in accordance with the instructions contained in Paragraph 8 below.

7.      Payment of Net Proceeds of Sale of Property.

a.      No later than thirty (30) days after Settling Defendant closes the sale of the Property, Settling Defendant shall remit to the United States the Net Proceeds of Sale of the

Page 10

Property as defined in this Consent Decree and pursuant to the requirements of this Paragraph provided below.   The payments shall be made in accordance with the instructions contained in Paragraph 8. below.

      b.     Settling Defendant shall submit to EPA and the Federal Natural Resource Trustees, at least fifteen (15) days prior to the date of the Property sale closing, a notice of the sale and Settling Defendant's calculation of the net sales proceeds, and all documentation regarding the values used in the calculation, including but not limited to: (i) copies of all documents to be executed regarding the sale; (ii) documentation of the amounts to be paid to holders of any liens and property taxes owed; (iii) documentation of the amounts of closing costs to be paid; (iv) documentation any broker's fees regarding the sale; (v) documentation of the amounts of state and/or municipal taxes to be paid regarding the sale of the Property; (vi) amounts owed those trade creditors disclosed to the US prior to the lodging of this Consent Decree, if any;  (vii) the payments of retains and share redemption; and (viii) federal and state taxes owed on Sale proceeds.  At least seven (7) days after receipt of  the purchase money, Settling Defendant shall submit updated documentation regarding the calculation of the Net Proceeds of Sale to be paid according to Paragraph 7.a above.

      c.     In the event that the purchase and sale agreement with Linnton Water Credits, LLC does not close or is voided or withdrawn, Settling Defendant shall use best efforts to sell the Property to another purchaser.  "Best efforts" for purposes of this Paragraph includes: (i) entering into a listing agreement for the purpose of marketing and selling the property with a real estate broker, dealer, or agent licensed in the State of Oregon who customarily deals with real property similar to the Property; (ii) advertising the Property for sale in appropriate publications;

(iii) listing the Property with appropriate real estate listing services; (iv) maintaining the Property in a condition suitable for showing to prospective buyers; and (v) providing access to the Property, at reasonable times, to real estate brokers, dealers or agents and prospective buyers. Settling Defendant shall submit to EPA reports regarding Settling Defendant's efforts to market the property.  The first such report shall be due six months after the purchase and sale agreement with Linnton Water Credits, LLC is voided or withdrawn, and successive reports shall be due biannually thereafter.

      d.    Settling Defendant shall provide to EPA a copy of the proposed Property sales contract along with a letter opinion, as that term is defined in O.R.S. § 696.294, regarding the proposed sale price of the Property from a licensed principal real estate broker, as that terms is defined in O.R.S. § 696.010(13).  Settling Defendant must obtain EPA's written approval of the Property sales contract before executing the contract.  Settling Defendant shall provide to EPA a copy of the executed contract within five working days after signing the contract.  The requirements and commitments contained in subsections a. and b. above shall apply to the pre-closing and post-closing of the Property sales contract.

      e.    In the event of a sale or other transfer of the Property or any portion thereof, Settling Defendant shall continue to be subject to all terms, conditions and benefits of this Consent Decree, except for Section XIII. (Access and Institutional Controls), to the extent it requires Settling Defendant to provide access to, or to implement Institutional Controls regarding the Property or portion thereof that was sold or transferred.  Settling Defendant shall continue to be subject to the requirement to enforce any agreements, pursuant to Section XIII., for the new

owner to provide access and/or record Institutional Controls regarding the Property or portion thereof that was sold.

8. <u>Payment Instructions for all Payments.</u>

a. Every payment required by Paragraphs 6 and 7 of this Section, shall be divided between EPA and the Federal Natural Resource Trustees as follows: 75% to EPA and 25% to the Federal Natural Resource Trustees.

b. The payments pursuant to Paragraphs 6 and 7 above shall be made by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account in accordance with current EFT procedures to be provided to Settling Defendant by the Financial Litigation Unit of the U.S. Attorney's Office in the District of Oregon following lodging of the Consent Decree. Any payment received by the Department of Justice after 4:00 p.m. Eastern Time shall be credited on the next business day.

c. At the time of payment, Settling Defendant shall send notice that payment has been made to EPA, the U.S. Department of Interior, and DOJ in accordance with Section XVI. (Notices and Submissions). Notice shall also be made to EPA Cincinnati Finance Office by email at acctsreceivable.cinwd@epa.gov or by mail to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, Ohio 45268

For the payment to EPA, the notice shall also reference DOJ Case Number 90-11-2-06787/3, EPA Region 10 and Site/Spill Identification Number 103R.

d. Notice that payment has been made shall also be sent by mail to:

DOI Office of Restoration and Damage Assessment
Attn:  NRDAR Fund Manager
1849 C Street, NW
Mailstop 3548
Washington, D.C.  20240

For the payment to the Natural Resource Trustees, the notice shall also reference "Natural Resource Damages for the Portland Harbor Superfund Site" and NRDAR Account No. 14X5198.

9.     Portland Harbor Superfund Site Insurance Recovery Trust.  Within five (5) days after the Effective Date, Settling Defendant shall execute the Revised Portland Harbor Insurance Recovery Trust Trust Agreement in the form attached to this Consent Decree as Appendix E and incorporated herein by reference.  Settling Defendant shall fully comply with the Revised Portland Harbor Insurance Recovery Trust Trust Agreement, including the payment of $50,000 into the Trust no later than thirty (30) days after the Effective Date of this Consent Decree.  Upon and after the Settling Defendant's execution of the Revised Trust Agreement: (1) Settling Defendant shall not be entitled to any funds obtained by the Insurance Recovery Trust Trustee on account of or in connection with any of the rights under Insurance Policies transferred to the Insurance Recovery Trust; (2) Except as provided in this Consent Decree and the Revised Trust Agreement, Settling Defendant shall be estopped from claiming or receiving defense or indemnity coverage under the Insurance Policies related to the Portland Harbor Superfund Site; and (3) Except as provided in this Consent Decree and the Revised Trust Agreement, Settling Defendant shall have no rights to make additional Environmental Claims (as that term is defined in the Revised Trust Agreement) for payment or pursue existing such claims for payment for defense or indemnity under the Insurance Policies.  Except as provided in this Consent Decree and the Revised Trust Agreement, Settling Defendant further covenants not to assert or claim insurance coverage related to the Portland Harbor Superfund Site under the Insurance Policies after the date

Page 14

it signs the Revised Trust Agreement.  In addition, Settling Defendant shall fully cooperate in the following tasks related to the Portland Harbor Insurance Recovery Trust ("Trust"):

a.     Complete a diligent, good faith search to identify any evidence of Insurance Policies (including, but not limited to, a review of business records, insurance related invoices, Certificates of Insurance, accounting ledgers, correspondence, or any other insurance related documentation) in which Settling Defendant may have an interest within 30 days from the Effective Date, and immediately notify Trustee of the discovery of any evidence of additional Insurance Policies (even if such discovery occurs more than 30 days after the Effective Date);

b.     Take such further actions and execute and deliver such documents and instruments as may be necessary or appropriate (if any) to transfer and/or assign  Settling Defendant's rights to Environmental Claims (as that term is defined in the Revised Trust Agreement) for payment under any or all of the Insurance Policies and to authorize the Trust to commence and/or prosecute pending proceedings, and to defend proceedings, in the Settling Defendant's name in connection with any and all of the Insurance Policies the rights to Environmental Claims (as that term is defined in the Revised Trust Agreement) under which have been transferred and/or assigned to the Trust;

c.     Cooperate with Trustee's efforts to pursue any and all claims and/or causes of action under or related to the Insurance Policies and to avoid any interference, whether by affirmative act or failure to act, with Trustee's recovery efforts or management of the Trust and Trust Fund;

      d.      Identify any documents or sources of documents that, to Settling Defendant's knowledge, may relate to operations, activities, or corporate histories of entities that conducted operations at the Property ("Property Records");

      e.      Provide Trustee and the Trust's representatives with full access to Property Records; and

      f.      Provide Trustee and the Trust's representatives with any other assistance necessary to accomplish the duties, purposes, and goals of the Trust, including but not limited to the execution of any documents associated with the Trust and its recovery activities in a timely fashion.

      g.      In the event of the dissolution or complete liquidation of the Settling Defendant, the provisions of this Paragraph 9 shall survive, and the Trustee may assert claims or causes of action contemplated by this Paragraph 9 and by the Revised Trust Agreement as if Settling Defendant had not dissolved or completely liquidated.

10.     The total amount to be paid to EPA as required by Paragraphs 6 and 7 of this Section and all funds received by EPA from the Trust shall be deposited in the Portland Harbor Special Account in the EPA Hazardous Substance Superfund.  EPA may retain and or use the monies received from this settlement to conduct or finance response actions taken after the Effective Date of this settlement at or in connection with the Site, or transfer all or any portion of such funds to the EPA Hazardous Substance Superfund.

## VIII.  <u>FAILURE TO COMPLY WITH CONSENT DECREE</u>

11.     <u>Interest on Late Payments</u>.  If Settling Defendant fails to make the payments specified in Paragraphs 6 and 7 in Section VII. by the required due date, Interest shall accrue on

any unpaid amounts until the total amount due has been received.

12.    <u>Stipulated Penalty.</u>

a.      If any amounts due under Paragraphs 6 and 7 in Section VII. are not paid by the required dates or in the correct amounts, Settling Defendant shall be in violation of this Consent Decree and shall pay, as a stipulated penalty, in addition to the Interest required by Paragraph 11, $100 per violation per day that such payment is late or not paid in full.

b.      Stipulated penalties are due and payable within 30 days of the date of the demand for payment of the penalties by EPA. All payments to United States under this Paragraph shall be identified as "stipulated penalties" and shall be made by certified or cashier's check made payable to "EPA Hazardous Substance Superfund." The check, or a letter accompanying the check, shall reference the name and address of the party making payment, the Site name, the EPA Region and Site Spill ID Number 103R, and DOJ Case Number 90-11-2-06787/3, and shall be sent to:

> US Environmental Protection Agency
>  Superfund Payments
> Cincinnati Finance Center
> PO Box 979076
> St. Louis, MO  63197-9000

c.      At the time of each payment, Settling Defendant shall send notice that payment has been made to EPA and DOJ in accordance with Section XVI. (Notices and Submissions) and to the EPA Cincinnati Finance Office by email at acctsreceivable.cinwd@epa.gov, or by mail to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, Ohio  45268

Such notice shall reference the CDCS Number, Site/Spill ID Number 103R, and DOJ Case Number 90-11-2-06787/3.

        d.      Penalties shall accrue as provided in this Paragraph regardless of whether EPA has notified Settling Defendant of the violation or made a demand for payment, but need only be paid upon demand.  All penalties shall begin to accrue on the day after payment is due and shall continue to accrue through the date of payment.  Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

        13.     If the United States brings an action to enforce this Consent Decree, Settling Defendant shall reimburse the United States for all costs of such action, including but not limited to costs of attorney time.

        14.     Payments made under this Section shall be in addition to any other remedies or sanctions available to Plaintiff by virtue of Settling Defendant's failure to comply with the requirements of this Consent Decree.

        15.     Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive payment of any portion of the stipulated penalties that have accrued pursuant to this Consent Decree.  Payment of stipulated penalties shall not excuse Settling Defendant from payment as required by Section VII. or from performance of any other requirements of this Consent Decree.

## IX.  COVENANT NOT TO SUE BY PLAINTIFF

        16.     Except as specifically provided in Section X. (Reservation of Rights by United States), the United States covenants not to sue or to take administrative action against Settling Defendant pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), with regard to a) all Natural Resource Damages arising from injuries to trust resources resulting

Page 18

from releases of hazardous substances at or from the Site and b) all United States response actions taken or to be taken and all United States response costs incurred or to be incurred, at or in connection with the sediments and surface waters in the lower twelve river miles of the Willamette River, including those riparian bank locations at which EPA takes response actions. With respect to present and future liability, this covenant shall take effect upon 1) receipt by the United States of the payment by Settling Defendant of Four Hundred Fifty Thousand Dollars ($450,000) as set forth in Section VII., Paragraph 6, and 2) Settling Defendant's execution of the Revised Portland Harbor Insurance Recovery Trust Trust Agreement.  This covenant not to sue is given in consideration for and is conditioned upon: a) the satisfactory performance by Settling Defendant of its obligations under this Consent Decree, including but not limited to, payment of all amounts due under Section VII. and execution of and compliance with the Revised Portland Harbor Insurance Recovery Trust Trust Agreement, including payment of $50,000 into the Trust and assignment to the Trust of Settling Defendants's rights under the Insurance Policies; b) any amount due under Section VIII. (Failure to Comply with Consent Decree); and c) the veracity and completeness of the Financial Information provided to the United States by Settling Defendant and the financial, insurance, and indemnity certification made by Settling Defendant in Section XV., Paragraph 35.  If the Financial Information or Insurance Information provided by Settling Defendant, or the financial, insurance, or indemnity certification made by Settling Defendant in Paragraph 35, is subsequently determined by the United States to be false or, in any material respect, inaccurate, Settling Defendant shall forfeit all payments made pursuant to this Consent Decree and this covenant not to sue and the contribution protection in Section XII. shall be null and void.  Such forfeiture shall not constitute liquidated damages and shall not in any way foreclose the United States' right to pursue any other causes of action arising from Settling

Defendant's false or materially inaccurate information. This covenant not to sue extends only to Settling Defendant and does not extend to any other person. The cash payment made under Paragraph 6 of this Consent Decree Shall be credited toward the confessed judgment. As part of this covenant not to sue, the parties agree that the remainder of the confessed judgment shall be satisfied solely from the Net Proceeds of Sale and from proceeds obtained on account of the rights to Environmental Claims for payment under Insurance Policies, which rights will be assigned to the Insurance Recovery Trust by operation of the Revised Portland Harbor Superfund Site Insurance Recovery Trust Agreement. For avoidance of doubt, it is the parties' intention that this covenant not to sue and the assignment of rights through execution of and compliance with the Portland Harbor Insurance Recovery Trust upon which it is conditioned shall not extinguish any claim in contract, tort, or statute under and in connection with the Insurance Policies.

## X.  RESERVATION OF RIGHTS BY UNITED STATES

17.     The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendant with respect to all matters not expressly included within the Covenant Not to Sue by the United States in Paragraph 16. Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Settling Defendant with respect to:

        a.     liability for failure of Settling Defendant to meet a requirement of this Consent Decree;

        b.     criminal liability;

c.    liability arising from the past, present, or future disposal, release or threat of release of a hazardous substance, pollutant, or contaminant outside of the Site, or on the Property;

d.    liability based on the ownership or operation of any portion of the Site by Settling Defendant when such ownership or operation commences after signature of this Consent Decree by Settling Defendant;

e.    liability based on Settling Defendant's transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, after signature of this Consent Decree by Settling Defendant; and,

f.    liability for response actions taken or to be taken, and response costs incurred or to be incurred at, or in connection with the Willamette River above river mile twelve, riparian bank locations at which EPA does not take response actions, and/or the upland portions of the Site (including response actions taken or to be taken and response costs incurred or to be incurred in connection with upland areas that are sources of releases or threats of releases to Willamette River sediments and surface water within the Site).

18.    Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to reinstitute or reopen this action, or to commence a new action seeking relief other than as provided in this Consent Decree, if the Financial Information or the Insurance Information provided by Settling Defendant, or the financial, insurance, or indemnity certification made by Settling Defendant in Section XV., Paragraph 35, is false or, in any material respect, inaccurate.

## XI. COVENANT NOT TO SUE BY SETTLING DEFENDANT

19.     Settling Defendant covenants not to sue and agrees not to assert any claims or causes of action against the United States, or its contractors or employees, with respect to the Site or this Consent Decree, including but not limited to:

    a.      any direct or indirect claim for reimbursement from the Hazardous Substance Superfund based on Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law;

    b.      any claim arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law; or,

    c.      any claim against the United States pursuant to Sections 107 and 113 of CERCLA, 42 U.S.C. §§ 9607 and 9613, or state law, relating to the Site.

20.     Nothing in this Consent Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. 300.700(d).

21.     Except as provided in Paragraph 22 of this Section (claims against other PRPs) and Paragraph 26 (res judicata and other defenses) in Section XII., these covenants not to sue shall not apply in the event the United States brings a cause of action or issues an order pursuant to any of the reservations set forth in Section X. (Reservations of Rights by United States), other than in Paragraph 17.a. (claims for failure to meet a requirement of the Consent Decree) or 17.b. (criminal liability), but only to the extent that Settling Defendant's claims arise from the same

response action or response costs that the United States is seeking pursuant to the applicable reservation.

22.     Settling Defendant agrees not to assert any CERCLA claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) that it may have for all matters relating to all Natural Resource Damages arising from injuries to trust resources resulting from releases of hazardous substances at or from the Site and all response actions taken or to be taken and all response costs incurred or to be incurred, at or in connection with the Site, against any other person who is a potentially responsible party under CERCLA at the Site.  This waiver shall not apply with respect to any defense, claim, or cause of action that Settling Defendant may have against any person if such person asserts a claim or cause of action relating to the Site against Settling Defendant.

## XII.  EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION

23.     Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree.  The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this Decree may have under applicable law.  Except as provided in Paragraph 22, the Parties expressly reserve any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which they may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.  Nothing in this Consent Decree diminishes the right of the United States, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to pursue any such persons to obtain additional response costs, Natural Resource Damages or response action and to enter into settlements that  give rise to contribution protection pursuant to Section 113(f)(2).

24.     The Parties agree, and by entering this Consent Decree this Court finds, that this settlement constitutes a judicially-approved settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and that Settling Defendant is entitled, as of the date of entry of this Consent Decree, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), or as may be otherwise provided by law, for matters addressed in this Consent Decree.  The matters addressed in this Consent Decree are a) all Natural Resource Damages arising from injuries to trust resources resulting from releases of hazardous substances at or from the Site and b) all response actions taken or to be taken and all response costs incurred or to be incurred, at or in connection with the sediments and surface water in the lower twelve river miles of the Willamette River, including those riparian bank locations at which EPA takes response actions, by the United States or any other person with respect to the Site; provided, however, that if the United States exercises rights under the reservations in Section X., (Reservation of Rights by the United States),  other than in Paragraph 17.a (for claims for failure to meet a requirement with the Decree), or 17.b (criminal liability), the "matters addressed" in this Consent Decree will no longer include those response costs or response actions or Natural Resource Damages that are within the scope of the exercised reservation.

25.     Settling Defendant shall, with respect to any suit or claim for contribution brought against it for matters related to this Consent Decree, notify EPA, the Federal Trustees, and DOJ in writing within 10 days of service of the complaint or claim upon it.  In addition, Settling Defendant shall notify EPA, the Federal Trustees, and DOJ within 10 days of service or receipt of any Motion for Summary Judgment, and within 10 days of receipt of any order from a court setting a case for trial, for matters related to this Consent Decree.

Page 24

26.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, Natural Resource Damages, or other relief relating to the Site, Settling Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, *res judicata*, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the Covenant Not to Sue by Plaintiff set forth in Section IX.

## XIII.  ACCESS AND INSTITUTIONAL CONTROLS

27.     If, access and/or land use restrictions are needed to implement response activities at the Site at the Property, or any other real property that is owned or controlled by Settling Defendant, Settling Defendant shall:

a.      commencing on the date of lodging of this Consent Decree, provide the United States and its representatives, including EPA and the Federal Trustees, and their contractors, with access at all reasonable times to the Property, or such other property, for the purpose of conducting any response activity related to the Site, including, but not limited to, the following activities:

(1)      Monitoring, investigation, removal, remedial or other activities at the Site;

(2)      Verifying any data or information submitted to the United States;

Page 25

(3)      Conducting investigations relating to contamination at or near the Site;

(4)      Obtaining samples;

(5)      Assessing the need for, planning, or implementing additional response actions at or near the Site;

(6)      Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendant or its agents, consistent with Section XIV. (Access to Information);

(7)      Assessing Settling Defendant's compliance with this Consent Decree; and

(8)      Determining whether the Property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree; and

(9)      Implementing, monitoring, maintaining, reporting on, and enforcing any Institutional Controls.

b.      Commencing on the date of lodging of this Consent Decree, Settling Defendant shall not use the Property, in any manner that would: (1) interfere with completion of the Remedial Investigation and Feasibility Study for the Portland Harbor Superfund Site; (2) additional source control investigation and implementation; or (3) adversely affect the implementation, integrity or protectiveness of the remedial measures to be performed at the Site.

c.     If Settling Defendant sells or transfers all or a portion of the Property, Settling Defendant shall place a Proprietary Control on the Property prior to or simultaneously with the transfer, such as, an easement and equitable servitude or covenant.  Such Proprietary Control shall be placed on the Property title through the deed or contemporaneously with the recording of the deed transferring an interest in the Property or portion thereof which complies with Oregon real property law so as to run with the land and be binding against future owners. Such easement and equitable servitude or covenant shall be enforceable by Settling Defendant and provide EPA with a third party beneficiary interest to enforce the easement and equitable servitude or covenant.  If agreed to by the State of Oregon, the State may be the grantee and holder of the easement and reserved uses and have enforcement rights as well.  The easement and equitable servitude or covenant shall require the purchaser or transferee to provide:

(1)     access to the United States,  Settling Defendant, and any parties to an agreement with EPA or order issued by EPA, and their representatives, contractors and subcontractors, to conduct any activity related to the cleanup of the Portland Harbor Superfund Site at reasonable times, including, but not limited to, the activities listed in subparagraph a;

(2)     to refrain from using the Property, in any manner that would interfere with completion of the Remedial Investigation and Feasibility Study, additional source control investigation and implementation, or adversely affect the implementation, integrity or protectiveness of the remedial measures to be performed at the Portland Harbor Superfund Site; and

(3)     to cooperate with United States and any parties to an agreement or under an order issued by EPA upon their request in facilitating the performance of the remedy at

the Portland Harbor Superfund Site.  In the event that the sole use of the Property by a future owner is as a habitat restoration project and if EPA determines that access to the Property is necessary to perform the remedy at the Site, and/or maintain the remedy, EPA will require any performing party to notify the Property owner no less than ninety (90) days prior to when access is needed, except for an emergency response action situation, and discuss the manner, duration, and specifics of the work required to be done on, at, or from the Property for the purpose of minimizing disruption to the owner's use of the Property and restoring any habitat impacted by the work.

      d.    Settling Defendant shall, within sixty (60) days of entry of this Consent Decree, but no later than thirty (30) days prior to the closing of a sale or transfer of the Property or a portion thereof submit to EPA for review and approval with respect to such property:

      (1)    a draft easement and equitable servitude or covenant, that complies with this Consent Decree, that is enforceable under the laws of the State of Oregon, free and clear of all prior liens and encumbrances (except as approved by EPA); and

      (2)    Within 30 days of recording the easement or covenant, Settling Defendant shall provide EPA a certified copy of the original recorded easement or covenant showing the clerk's recording stamps.

28.    If EPA determines that land/water use restrictions in the form of state or local laws, regulations, ordinances or other governmental controls are needed to implement response activities at the Portland Harbor Superfund Site, ensure the integrity and protectiveness thereof, or ensure non-interference therewith, Settling Defendant shall cooperate with EPA's efforts to secure such governmental controls, if Settling Defendant is still the owner of the Property.

29.    Notwithstanding any provision of this Consent Decree, the United States reserves all of its access authorities and rights, as well as all of its rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA, and any other applicable statute or regulations.

## XIV.  ACCESS TO INFORMATION

30.    Settling Defendant shall provide to EPA, upon request, copies of all records, reports, or information (hereinafter referred to as "records") within their possession or control or that of their contractors or agents relating to activities at the Site and Property, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Site and Property.

31.    Confidential Business Information and Privileged Documents.

a.    Settling Defendant may assert business confidentiality claims covering part or all of the records submitted to Plaintiff under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. 2.203(b).  Records determined to be confidential by EPA will be accorded the protection specified in 40 C.F.R. Part 2, Subpart B.  If no claim of confidentiality accompanies records when they are submitted to EPA, or if EPA has notified Settling Defendant that the records are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such records without further notice to Settling Defendant.

b.    Except as otherwise provided herein, Settling Defendant may assert that certain records are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Settling Defendant asserts such a privilege in lieu of providing records, it shall

provide Plaintiff with the following: 1) the title of the record; 2) the date of the record; 3) the name and title of the author of the record; 4) the name and title of each addressee and recipient; 5) a description of the subject of the record; and 6) the privilege asserted. However, no records created or generated pursuant to the requirements of this or any other settlement with the United States shall be withheld on the grounds that they are privileged.

32.     No claim of confidentiality shall be made with respect to any data, including but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other records evidencing conditions at or around the Site.

## XV.  RETENTION OF RECORDS

33.     Until ten (10) years after the entry of this Consent Decree, Settling Defendant shall preserve and retain all records now in its possession or control, or which come into its possession or control, that relate in any manner to response actions taken at the Site or the liability of any person under CERCLA with respect to the Site, regardless of any corporate retention policy to the contrary.

34.     After the conclusion of the document retention period in the preceding paragraph, Settling Defendant shall notify EPA and DOJ at least 90 days prior to the destruction of any such records, and, upon request by EPA or DOJ, Settling Defendant shall deliver any such records to EPA. Settling Defendant may assert that certain records are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Settling Defendant asserts such a privilege, it shall provide Plaintiff with the following: 1) the title of the record; 2) the date of the record; 3) the name and title of the author of the record; 4) the name and title of each addressee and recipient; 5) a description of the subject of the record; and 6) the privilege asserted.

However, no records created or generated pursuant to the requirements of this or any other settlement with the United States shall be withheld on the grounds that they are privileged.

35.    Settling Defendant hereby certifies that, to the best of its knowledge and belief, after thorough inquiry, it has:

a.    not altered, mutilated, discarded, destroyed or otherwise disposed of any records, reports, or other information relating to its potential liability regarding the Site since the earlier of notification of potential liability by the United States or the State or the filing of suit against it regarding the Site, and that it has fully complied with any and all EPA requests for information regarding the Site and Settling Defendant's financial circumstances, including but not limited to insurance and indemnity information, during the course of the negotiations of this Consent Decree and/or requests pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927; and

b.    submitted to EPA Financial Information that fairly, accurately, and materially sets forth its financial circumstances, and that those circumstances have not materially changed between the time the Financial Information was submitted to EPA and the time Settling Defendant executes this Consent Decree; and

c.    has and will fully disclose any information regarding the existence of any insurance policies or indemnity agreements that may cover claims relating to cleanup of the Site, and submitted to the United States upon request such insurance policies, indemnity agreements, and information.

## XVI.  <u>NOTICES AND SUBMISSIONS</u>

36.     Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.  Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, DOJ, and Settling Defendant, respectively.

As to the United States:


As to DOJ:
Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice (DJ # 90-11-2-06787/3)
P.O. Box 7611
Washington, D.C.  20044-7611


As to EPA:
Lori Houck Cora
Assistant Regional Counsel
Office of Regional Counsel
U.S. Environmental Protection Agency Region 10
ORC-158
1200 Sixth Avenue, Suite 900
Seattle, Washington  98101

Kristine Koch
Remedial Project Manager
Office of Environmental Cleanup
U.S. Environmental Protection Agency Region 10
ECL 115
1200 Sixth Avenue, Suite 900
Seattle, Washington  98101


As to the Federal Trustees:

Katherine A. Pease
NOAA Office of General Counsel
Suite 4470, 501 West Ocean Boulevard
Long Beach, CA  90802

Deirdre F. Donahue
Office of the Solicitor
U.S. Department of the Interior
805 SW Broadway
Portland, OR  97205-3346

<u>As to Settling Defendant</u>:


Linnton Plywood Association
10504 NW St. Helens Rd.
Portland, OR  97231


And


Lane Powell PC
Attn: William P. Hutchison, Esq.
601 SW Second Avenue, Suite 2100
Portland, OR  97204

## XVII.  RETENTION OF JURISDICTION

37.    This Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree.

## XVIII.  INTEGRATION/APPENDICES

38.    This Consent Decree and its appendices constitute the final, complete and exclusive Consent Decree and understanding between the Parties with respect to the settlement embodied in this Consent Decree.  The Parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.  The following appendices are attached to and incorporated into this Consent Decree:

      a.      Index of Linnton Plywood Association Financial Information

      b.      Index of Linnton Plywood Association Insurance Information (including Policies)

      c.      Linnton Plywood Association and Linnton Water Credits, LLC Purchase and Sale Terms

      d.      Legal Description of Linnton Plywood Association Property

      e.      Revised Portland Harbor Superfund Site Insurance Recovery Trust Trust Agreement

## XIX.  <u>LODGING AND OPPORTUNITY FOR PUBLIC COMMENT</u>

39.    This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that this Consent Decree is inappropriate, improper, or inadequate.  Settling Defendant consents to the entry of this Consent Decree without further notice.

40.    If for any reason this Court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the sole discretion of any party and the terms of the Consent Decree may not be used as evidence in any litigation between the Parties.

## XX.  <u>SIGNATORIES/SERVICE</u>

41.    Each undersigned representative of Settling Defendant to this Consent Decree and the Assistant Attorney General for the Environment and Natural Resources Division of the United States Department of Justice certifies that he or she is authorized to enter into the terms and conditions of this Consent Decree and to execute and bind legally such Party to this document.

42.    Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree, unless the United States has notified Settling Defendant in writing that it no longer supports entry of the Consent Decree.

43.    Settling Defendant shall identify, on the attached signature page, the name and address of an agent who is authorized to accept service of process by mail on its behalf with respect to all matters arising under or relating to this Consent Decree. Settling Defendant hereby agrees to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including but not limited to, service of a summons. The Parties agree that Settling Defendant need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXI.  **FINAL JUDGMENT**

44.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute the final judgment between the United States and Settling Defendant. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED AND ADJUDGED  THIS ___ DAY OF _____, 2___.

_____
United States District Judge

Page 36

*United States v. Clinton*

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of [insert case name and civil action number], relating to the Portland Harbor Superfund Site.

*Plywood Assoc, CIV. No. 3:14-1772*

FOR THE UNITED STATES OF AMERICA

John C. Cruden
Assistant Attorney General
Environment and Natural Resources Division

Eric Albert
Trial Attorney
Michael McNulty
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044-7611
(202) 514-2800

for _Richard Albright_
Director, Office of Environmental Cleanup
U.S. Environmental Protection Agency
Region 10
1200 Sixth Avenue, Suite 900
Seattle, Washington  98101

_Lori Houck Cora_
Assistant Regional Counsel
U.S. Environmental Protection Agency
Region 10
1200 Sixth Avenue, Suite 900
Seattle, Washington  98101

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States of America v. Linnton Plywood Association, Civil Action No. 3:14-1772, relating to the Portland Harbor Superfund Site.

FOR DEFENDANT LINNTON PLYWOOD ASSOCIATION

Date: 4-7-15

Jimmy Stahly, General Manager
Linnton Plywood Association
10304 NW St. Helens Road
Portland, OR 97231

Agent Authorized to Accept Service on Behalf of Above-signed Party:

    Name:  LPSL Corporate Services, Inc.

    Address:  601 SW Second Avenue, Suite 2100, Portland, OR 97204

Page 38

# APPENDIX A

## Financial Information

## TABLE OF CONTENTS

Attached are the documents which comprise Settling Defendants Financial Information:

- Correspondence (from William P. Hutchison to Lori Cora) dated October 2, 2009
- Correspondence dated October 30, 2009
  - Articles of Incorporation and Bylaws
  - October 28, 2009 Order Approving Settlement and Stipulation of Settlement of *Weiss, et al. v. Linnton Plywood Association, et al.*, Multnomah County Circuit Court for the State of Oregon Case No. 080710423
  - Stipulation for Settlement October 2009
  - 2009-2010 Property Tax Statement
  - Specimen copy of SAFECO's (f/k/a General Insurance Company of America, n/k/a Liberty Mutual) policy

- Correspondence dated March 24, 2010
  - Federal Tax Returns 2007 and 2008
  - Balance Sheet and Profit & Loss Statement for 2008 and 2009
  - October 28, 2009 Order on Joint Motion to Approve Stipulation for Settlement
  - Confirmed and Specimen of Unconfirmed Policies
  - Correspondence Related to Confirmed and Unconfirmed Policies
  - Financial information regarding debts and/or "Retains" owed to former member/shareholders of Linnton Plywood Association

- Correspondence (from Paul George to Lori Cora) dated April 19, 2010
- Correspondence (from William P. Hutchison to Lori Cora) dated June 4, 2010
- Correspondence (from Elia Popovich to Lori Cora) dated June 29, 2010

| Date | Insurer | Policy No. |
|------|---------|------------|
| 04/23/70 - 04/23/73 | General Insurance Co. of America | CP 276891 |
| 04/23/73 - 04/23/76 | General Insurance Co. of America | CP 383478 |
| 04/23/76 - 04/23/79 | General Insurance Co. of America | CP 646638 |
| 04/23/79 - 04/23/80 | General Insurance Co. of America | CP 646638-A |
| 04/23/80 - 04/23/81 | General Insurance Co. of America | CP 646638-A |
| 04/23/68 - 04/23/70 | General Insurance Co. of America | CP 160977 |

- Correspondence (from Mike Farnell to Lori Cora) dated July 28, 2010

  o *St. Paul Fire & Marine Ins. Co., Inc. v. McCormick & Baxter Creosoting Co.,* 324 Or 184, 212-15, 923 P2d 1200 (1996)
  o *Queen City Farms, Inc. v. Central National Insurance Company of Omaha,* 126 Wash2d 50, 94-95, 882 P2d 703 (1995)

- Correspondence (from Mike Farnell to Lori Cora) dated August 30, 2010
- Correspondence (from William P. Hutchison to Lori Cora) dated September 24, 2010

  o LPA Schedule of Estimated Property Sale Proceeds and Required Payment/Distribution Obligations

- Correspondence (from William P. Hutchison to Lori Cora) dated October 12, 2010
- Correspondence (from William P. Hutchison to Lori Cora) dated October 13, 2010
- Email dated June 8, 2011 (from William P. Hutchison to Lori Cora)
- Correspondence (from William P. Hutchison to Lori Cora) dated September 14, 2011

  o 2009, 2010 Tax Returns, including Form 1120-C
  o Annual Financial Statements
  o Land Purchase and Sale Agreement, with Amendments 1 through 3

- Correspondence (from William P. Hutchison to Lori Cora) dated March 20, 2013
- Correspondence (from William P. Hutchison to Lori Cora) dated February 25, 2014

  o July 26, 2013 Assignment and Assumption of Purchase and Sale Agreement to Linnton Water Credits, LLC

- Correspondence dated March 3, 2014

  o U.S. Income Tax Returns for 2011, 2012, and 2013 (2013 to be provided upon completion)
  o Balance Sheet and Profit & Loss Statements of March 31, 2013, fiscal year-end, and for December 31, 2013, calendar year end.
  o Pro forma itemization of current monthly expenses and income dated February 27, 2014
  o 2013-2014 Property Tax Statement

- Correspondence (from William P. Hutchison to Lori Cora) dated March 5, 2014

  o CP 646638B Policy 4/23/82 – 7/23/85
  o SN Barnes Management – Purchase and Sale Agreement

## APPENDIX B

## Insurance Information of Linnton Plywood Association (LPA)

## TABLE OF CONTENTS

Attached are the documents which comprise Settling Defendants Insurance
Information:

- Excerpt from Report to the Board of Directors dated May 4, 1955

- Excerpt from Special Meeting of Board of Directors dated August 22, 1955

- Correspondence (from Dennis W. Keener to Elia Popovich) dated November 24,
  2008

_Confirmed Policies_

| Policy No: | Effective Dates | Liab. Form | Cond. Form | Pollution Exclusion |
|---|---|---|---|---|
| CP383478 | 4/23/73 to 4/23/76 | C-10 1/73 | C1652 1/73 | C1599 1/72 |
| CP646638 | 4/23/76 to 4/23/79 | C-10 9/74* | C1652 5/74* | C1599 1/72* |
| CP646638A | 4/23/79 to 4/23/82 | C1138 4/78 | C1652 8/78 | C1599 1/72 |
| CP646638B | 4/23/82 to 4/23/85 | C1138 4/78* | C1652 8/78* | CGL21201 4/80* |

*Policy forms are unconfirmed.  The noted forms are those that were likely to have been issued
with the referenced policy.

_Unconfirmed Policies_

| Policy No: | Effective Dates | Liab. Form | Cond. Form | Other | Pollution Exclusion |
|---|---|---|---|---|---|
| BLP232479 | 4/23/66 to 4/23/67 | C-10 1/65 | | | |
| CP160977 | 4/23/67 to 4/23/70 | C-10 1/67 | CF640 10/66 | CF646 10/66 | |
| CP276891 | 4/23/70 to 4/23/73 | C10 1/67 | CF640 6/69 | CF646 1/67 | C-1599 11/70 |
| (effective 4/23/71) | | | | | |

- Correspondence dated October 30, 2009

  o Specimen copy of SAFECO's (f/k/a General Insurance Company of America,
    n/k/a Liberty Mutual) policy

- Correspondence dated March 24, 2010

  o Copies of all known confirmed liability insurance policies and specimen of
    unconfirmed policies
  o Correspondence related to confirmed and unconfirmed insurance policies

- Marsh Risk Consulting Statement of Work, July 10, 2014

  o Marsh Risk Consulting Global Insurance Archaeology Services

- Email (from William P. Hutchison to Lori Cora) transmitting List of Currently
  Known Insurance Policies) dated August 12, 2014

B-1

- Email (from William P. Hutchison to Lori Cora and Eric Albert) transmitting Liberty Insurance Policy Limits information dated October 7, 2014

- Email (from William P. Hutchison to Lori Cora and Eric Albert) attaching two lessee certificates of insurance dated December 19, 2014

- Email (from William P. Hutchison to Lori Cora and Eric Albert) transmitting Index and Additional Insured Certificates (LPA Lessees) dated April 1, 2015

- Email (from William P. Hutchison to Lori Cora and Eric Albert) transmitting Index and Miscellaneous Additional Insured Certificates (generally relating to transportation companies making deliveries) dated April 1, 2015

# APPENDIX C

## Purchase and Sale Agreement (as Amended)

## TABLE OF CONTENTS

- Purchase and Sale Agreement between Linnton Plywood Association and SN Barnes Management, LLC dated September 11, 2012 (n/k/a Linnton Water Credits, LLC)
  - First Amendment to Purchase and Sale Agreement (Linnton Plywood Site – Portland Harbor) dated December 11, 2012
  - Second Amendment to Purchase and Sale Agreement (Linnton Plywood Site – Portland Harbor) dated December 27, 2012
  - Third Amendment to Purchase and Sale Agreement (Linnton Plywood Site – Portland Harbor) dated February 1, 2013
  - Fourth Amendment to Purchase and Sale Agreement (Linnton Plywood Site – Portland Harbor) dated July 18, 2014
- Assignment and Assumption of Purchase and Sale Agreement between SN Barnes Management, LLC and Linnton Water Credits, LLC dated July 26, 2013

C-1

# APPENDIX D

## Legal Description of Linnton Plywood Association Property

PARCEL I:

The following tract of land situated in Sections 2 and 3, Township 1 North, Range 1 West of the Willamette Meridian, in the City of Portland, County of Multnomah and State of Oregon, described as follows:

BEGINNING at the Southeast corner of the Donation Land Claim of Solomon Richards No. 47 which point is the Northeast corner of the George G. Watts Donation Land Claim No. 46, in said Section 2; thence Northeasterly along the Northeasterly extension of the division line between said Donation Land Claim of Solomon Richards and George G. Watts to a point on the harbor line, as now established, of the Willamette River, which point is the true point of beginning of the tract herein described; thence Northwesterly along said harbor line, to the point of intersection with the center line of "C" Street in the TOWN OF LINNTON if extended in a straight line Easterly; thence Westerly, along said extended center line of "C" Street, to the Easterly line of the Burlington Northern Inc. right of way; thence Southerly along the East line of said right of way, 190 feet to a point of intersection with the Northerly line of the Southerly 15 feet of Lot 2, Block 65, TOWN OF LINNTON, if said line were extended Eastward; thence Westerly along said extended Northerly line, parallel with the Southerly line of said Block 65 to the East line of N.W. St. Helens Road; thence Southerly along the Easterly line of said N.W. St. Helens Road to an iron pipe on said Easterly line, which is 549.24 feet South and 292.52 feet East from the intersection of the center line of N.W. St. Helens Road with the Northerly line of N.W. 107th Avenue, formerly "C" Street, in the TOWN OF LINNTON; thence North 60°42' East, 226.45 feet to a point of intersection with the Easterly line of the Burlington Northern Inc. right of way; thence Southerly along the Easterly line of said right of way to the point of intersection with the Northerly line of that tract of land conveyed to Linnton Realty Company, an Oregon corporation, to Signal Oil Company, a California corporation, by Deed recorded July 8, 1936 in Book 345, Page 154, Deed Records; thence Northeasterly along the Northerly line of said Signal Oil Company Tract to the harbor line of the Willamette River; thence Northerly along said harbor line to the true point of beginning.

EXCEPTING THEREFROM the right of way of the Burlington Northern Inc.

ALSO EXCEPTING THEREFROM that portion West of the Burlington Northern Inc. right of way conveyed to the State of Oregon, by and through its State Highway Commission, by Deed recorded July 23, 1963 in Book 2178, Page 262, Deed Records.

AND FURTHER EXCEPTING THEREFROM the ownership of the State of Oregon in that portion lying below the line of mean high water in the portion of said property located in the Solomon Richards Donation Land Claim No. 47 and the ownership of the State of Oregon in that portion of said property lying below the line of low water in the portion of said property located in the George J. Watts Donation Land Claim No. 46.

PARCEL II:

A tract of land in the Solomon Richards, et ux, Donation Land Claim in Section 2, Township 1 North, Range 1 West, of the Willamette Meridian, in the City of Portland, County of Multnomah and State of Oregon, said tract of land lying between the Easterly line of 1st Street (now known as Northwest Front Avenue) in the Town of Linnton, and the Harbor Line, as now established, of the Willamette River, and between the Easterly extension of the centerline of "C" Street (now known as Northwest 107th Avenue) in the Town of Linnton and a line drawn parallel to and 100 feet Northerly of when measured at right angles to the said Easterly extension of the centerline of said "C" Street.

EXCEPTING THEREFROM the reservation of all of the coal, oil, gas, casinghead gas and all ores and minerals of every kind and nature underlying the surface of the premises as reserved by the Spokane, Portland and Seattle Railway Company, a Washington corporation and Burlington Northern Inc., a Delaware corporation in Deed recorded February 28, 1975 in Book 1029, Page 1716, Multnomah County Deed Records.

ALSO EXCEPTING therefrom ownership of the State of Oregon in that portion lying below the line of mean low water of the Willamette River.

D-1

# APPENDIX E

## Revised Portland Harbor Superfund Site Insurance Recovery Trust
## Trust Agreement

## REVISED PORTLAND HARBOR SUPERFUND SITE INSURANCE RECOVERY TRUST TRUST AGREEMENT

This Trust Agreement ("Agreement") is entered into by, between, and among Linnton Plywood Association, ("Settling Grantor"), and Daniel J. Silver, an individual ("Trustee"), to establish the Portland Harbor Superfund Site Insurance Recovery Trust ("Trust").

WHEREAS, Settling Grantor seeks to avoid difficult and prolonged litigation regarding the Portland Harbor Superfund Site ("Site") and seeks to resolve its potential liabilities to the United States under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601, *et seq.*

WHEREAS the environmental contamination at the site has resulted in losses and damages prior to this Agreement.

WHEREAS, Settling Grantor and the United States have entered into an agreement to settle pursuant to CERCLA, 42 U.S.C. § 9601 et seq., which includes, among other things, contribution protection and a covenant not to sue effective upon and given in consideration for, in part, execution of this Agreement, and Settling Grantor's commitment to comply with this Agreement.

WHEREAS, Settling Grantor has selected Trustee to be the trustee pursuant to this Agreement, and Trustee is willing to act as trustee.

WHEREAS, the Trust is created pursuant to, and to effectuate, the Consent Decree.

WHEREAS, the United States alleged that Settling Grantor is liable for, among other things, response costs and natural resource damages incurred and to be incurred at the Site.

WHEREAS, the Trust is created to allow and accommodate future contributions to the Trust from future grantors, whether presently known or unknown, to further the purposes set forth herein and for the benefit and interest of EPA and the Federal Natural Resource Trustees.

NOW, THEREFORE, Settling Grantor and Trustee agree as follows:

## I.    DEFINITIONS

1.    Whenever terms listed below are used in this Agreement, the following definitions shall apply:

a.    "Beneficiaries" shall mean EPA and any successor departments, agencies, or instrumentalities of the United States, and the Federal Natural Resource Trustees.

b.    "DOJ" shall mean the United States Department of Justice and any successor departments, agencies, or instrumentalities of the United States.

c.    "Effective Date" shall mean the date upon which Settling Grantor executes this Agreement, which execution shall occur after entry by the Court of the Consent Decree between the United States and Linnton Plywood Association, a copy of which is attached hereto, but in no event shall such execution occur later than five (5) days following entry of the Consent Decree.

d.    "Environmental Claims" shall mean any claim related to the Portland Harbor Superfund Site for coverage under an Insurance Policy for property damage, personal injury, or other liability for costs or damages (including Natural Resource Damages and response costs) arising under any federal or state environmental law, or common law, from or related to the discharge, dispersal, release, escape and/or presence of smoke, vapors, fumes, soot, acids, alkalis, chemicals, pollutants, contaminants, hazardous substances, or wastes of any kind, or related to the transportation, generation, disposal, storage, handling, or processing of

2

smoke, vapors, fumes, soot, acids, alkalis, chemicals, pollutants, contaminants, hazardous substances, or wastes of any kind.

e.  "Grantor" or "Grantor(s)" shall mean any person, corporation, business trust, estate, trust, partnership, limited liability company, association, joint venture, government, governmental subdivision, agency, or instrumentality, public corporation, or any other legal or commercial entity or association, of whatever form, and any successors or assigns, who contributes assets, funds, moneys, rights under insurance policies, and/or other property to the Trust, whether now or in the future, and whether presently known or unknown. "Grantor" or "Grantor(s)" shall expressly include, but is not limited to, the "Settling Grantor" defined below.

f.  "Federal Natural Resource Trustees" shall mean, for purposes of this Agreement, the United States Department of the Interior ("DOI") and the United States Department of Commerce, acting through the National Oceanic and Atmospheric Administration  ("NOAA"), and any successor departments, agencies, or instrumentalities of the United States.

g.  "Insurance Policies" shall mean all insurance policies under which Settling Grantor is insured, including, but not limited to policies for which Settling Grantor is an "insured," "named insured" or "additional insured," including, but not limited to comprehensive, commercial, primary, umbrella and excess policies issued by Liberty Mutual Insurance Company, or its affiliates, parents, subsidiaries or predecessors and successors in interest, including, but not limited to General Insurance Company of America, American States Insurance Company and SAFECO Insurance Company, and including but not limited to all policies for

3

comprehensive or commercial general liability, excess, excess/umbrella, umbrella, pollution legal liability, and environmental impairment liability that may have ever been issued to Settling Grantor and policies otherwise for the benefit of Settling Defendant.  Insurance Policies known at the time of signing this Consent Decree are listed in Exhibit 1 to this Agreement.

h.    "Portland Harbor Superfund Site Insurance Recovery Trust Fund," "Fund," or "Trust Fund" shall mean the corpus of the Trust established by this Agreement, as further described herein.

i.    "Settling Grantor" shall mean Linnton Plywood Association and any successors or assigns.

j.    "Site" or "Portland Harbor Superfund Site" shall mean the Portland Harbor Superfund Site, located in the City of  Portland, Multnomah County, Oregon that was listed on the National Priorities List ("NPL") on December 1, 2000, 65 Fed. Reg. 75179-01. The Portland Harbor Superfund Site consists of the areal extent of contamination from releases to the lower Willamette River, and also includes upland source areas.  The Portland Harbor Superfund Site Assessment Area currently covers River Mile 1 to River Mile 12.

k.    "Trust" shall mean the Portland Harbor Superfund Site Insurance Recovery Trust.

l.    "Trustee" shall mean Daniel J. Silver and any successor trustee.

m.    "United States" shall mean the United States of America, including its departments, agencies, and instrumentalities.

4

## II.    ESTABLISHMENT AND ACCEPTANCE OF TRUST

2.    *Trust Fund.* Settling Grantor and Trustee hereby establish the Portland Harbor Superfund Site Insurance Recovery Trust Fund ("Fund" or "Trust Fund") for the benefit of Beneficiaries as stated herein. Each Grantor and Trustee intend that no third parties have access to the Fund. All property in the Trust, and any and all proceeds therefrom, are intended for the cleanup and restoration in connection with the Site. The Trust Fund shall consist of all assets, funds, moneys, and/or other property in the Trust together with all assets, funds, moneys, rights under insurance policies, and/or other property received by and transferred to or paid into the Trust in the future.

3.    *Objective and Purpose.*  The purposes and functions of the Trust are 1) to receive and manage funds, moneys, rights under insurance policies, and/or other property in accordance with this Agreement for the benefit of Beneficiaries; 2) to pursue monetary recoveries pursuant to rights under insurance policies, and to pursue such other claims and causes of action as may be assigned, conveyed, transferred, or arise out of property assigned, conveyed, or transferred, to the Trust for the benefit of Beneficiaries; and 3) to disburse funds to Beneficiaries in accordance with this Agreement.  The Trust has no objective or authority to engage in any trade or business.

4.    *Initial Cash Contribution.* The Fund shall consist of, without limitation, initial cash contributions, specified as follows, paid into the Trust by Settling Grantor: Payment in the amount of $50,000 within thirty (30) days of the Effective Date of the Consent Decree between Settling Grantor and the United States .

5.    *Rights Under Insurance Policies.*

a.    The Fund shall consist of, without limitation, all of the Settling Grantor's rights to Environmental Claims for payment under the Insurance Policies (both known and

5

unknown), including without limitation any and all potential or actual Environmental Claims and/or causes of action (including but not limited to causes of action based in contract, tort, extra-contractual theories,  statutory claims, including but not limited to claims under O.R.S. § 465.484, and claims for attorney fees and interest) related to the Portland Harbor Superfund Site pursuant to the Insurance Policies, and any proceeds therefrom.

b.    In consideration for the Covenant Not To Sue given by the United States in the Consent Decree attached hereto, which covenant is effective upon and given in consideration for, in part, this Agreement, Settling Grantor hereby unconditionally transfers, conveys, and assigns to the Trust all of its rights (including those of its predecessors, successors, and assigns) to Environmental Claims for payment under the Insurance Policies (both known and unknown), including without limitation any and all potential or actual claims and/or causes of action (including but not limited to causes of action based in contract, tort, extra-contractual theories, and statutory claims) related to the Portland Harbor Superfund Site pursuant to the Insurance Policies, and any proceeds therefrom. Settling Grantor shall retain no rights or residual interest to Environmental Claims for payment under the Insurance Policies, including without limitation assigned claims and/or causes of action, and any proceeds therefrom, transferred to the Trust.  The Parties intend that Settling Grantor's transfer, conveyance, and assignment of rights to Environmental Claims for payment under the Insurance Policies be consistent with, and provide the Insurance Recovery Trust with the maximum of rights under the Insurance Polices permitted by, the Oregon Environmental Cleanup Assistance

6

Act, O.R.S. § 465.481 (2013), and, to the extent applicable, O.R.S. § 31.825.  For avoidance of doubt, it is the parties' intention that the Covenant Not To Sue given by the United States and this assignment of rights given in exchange for that covenant shall not extinguish any claim in contract, tort, or statute under and in connection with the Insurance Policies.

c.    Settling Grantor hereby unconditionally authorizes the Trust to commence and/or prosecute pending proceedings, including all potential or actual claims and causes of actions, and to defend proceedings, in Settling Grantor's name (including its predecessors' names) in connection with any and all of the rights under Insurance Policies transferred to the Trust. The parties' expressly intend that the Trust retain the right to prosecute and defend claims in Settling Grantor's name for the benefit of the Beneficiaries even in the event any assignment of the Settling Grantor's rights pursuant to this Agreement is invalidated or deemed void.  Recognizing the complete assignment of Settling Grantor's rights to Environmental Claims for payment under the Insurance Policies and the associated claims, proceeds, and causes of action, the Trustee may settle, release, or compromise matters involving any Insurance Policy and the associated claims, proceeds, and causes of action in accordance with this Agreement without any need for Settling Grantor's approval thereof.

d.    Settling Grantor acknowledges that, on and after the date it signs this Agreement: (1) Settling Grantor is not entitled to any of funds obtained by the Trustee on account of or in connection with any of the rights under Insurance Policies transferred to the Trust; (2) Except as provided in the Consent Decree and this

7

Trust Agreement, Settling Grantor is estopped from claiming or receiving defense or indemnity coverage under the Insurance Policies related to the Portland Harbor Superfund Site; (3) Except as provided in this Consent Decree and this Trust Agreement, Settling Grantor shall have no rights to make additional Environmental Claims for payment or pursue existing Environmental Claims for payment for defense or indemnity under the Insurance Policies. Except as provided in the Consent Decree and this Trust Agreement, Settling Grantor further covenants not to assert or claim insurance coverage under the Insurance Policies related to the Portland Harbor Superfund Site after the date it signs this Agreement.

e.    Settling Grantor shall perform and/or fully cooperate in the following tasks:

        i.   Complete a diligent, good faith search to identify any evidence of Insurance Policies (including, but not limited to, a review of business records, insurance related invoices, Certificates of Insurance, accounting ledgers, correspondence, or any other insurance related documentation) in which Settling Grantor may have an interest within thirty (30) days from the Effective Date of this Agreement, and immediately notify Trustee of the discovery of any evidence of additional Insurance Policies (even if such discovery occurs more than thirty (30) days after the Effective Date of this Agreement);

        ii.  Take such further actions and execute and deliver such documents and instruments as may be necessary or appropriate (if any) to

8

transfer and/or assign Settling Grantor's rights to Environmental Claims for payment under any or all of the Insurance Policies to the Trust and to authorize the Trust to commence and/or prosecute pending proceedings, and to defend proceedings, in Settling Grantor's name (including its predecessors' names) in connection with any and all of the Insurance Policies.

iii. Cooperate with Trustee's efforts to pursue any and all claims and/or causes of action under or related to the Insurance Policies and to avoid any interference, whether by affirmative act or failure to act, with Trustee's recovery efforts or management of the Trust and Fund;

iv. Identify any documents or sources of documents that, to Settling Grantor's knowledge, may relate to operations, activities, or corporate histories of entities that conducted operations at the Site ("Site Records");

v. Provide Trustee and the Trust's representatives with full access to Site Records, including the right to inspect and copy any or all of the Site Records at reasonable times and places. Settling Grantor shall not destroy any Site Records without giving Trustee at least ninety (90) days' written advance notice, which shall include a complete index of all Site Records to be destroyed, and a reasonable opportunity to inspect and copy any Site Records that are to be destroyed;

9

     vi.  Provide Trustee and the Trust's representatives with any other assistance necessary to accomplish the duties, purposes, and goals of the Trust, including but not limited to the execution of any documents associated with the Trust and its recovery activities in a timely fashion; and

     vii.  Ensure that the Insurance Policies will remain as undistributed assets of the Settling Grantor in the event of Settling Grantor's dissolution.

    f.  In the event of the dissolution or complete liquidation of the Settling Grantor, the provisions of this Paragraph 5 shall survive , and the Trustee may assert claims or causes of action contemplated by this Paragraph 5 as if Settling Grantor had not dissolved or completely liquidated.

    6.    *Policy Payments.* The Fund shall consist of, without limitation, any and all payments made by any insurer or any other party pursuant to Section IV of this Agreement in connection with the Insurance Policies including, without limitation, any and all amounts paid by any insurer or any other party in settlement or satisfaction of claims or rights arising under the Insurance Policies ("Policy Payments") and any interest, earnings, and profits thereon, less any payments or distributions made by Trustee pursuant to this Agreement; and

    7.    *Acceptance of Trust.* Trustee, by his execution of this Agreement, agrees that he understands and accepts the Trust established herein, accepts his rights, powers, duties, and responsibilities as Trustee of the Trust, and agrees to perform his duties and responsibilities as Trustee of the Trust.

10

## III.   FUTURE GRANTOR(S) AND FUNDS

8.     *Future Grantor(s).* Trustee shall have authority to permit other and additional Grantor(s) to contribute to the Trust and Trust Fund and to enter into subsequent agreements with future and additional Grantor(s) binding said Grantor(s) to the terms of this Agreement.

9.     *Future Trust Fund Contributions.* Trustee shall have authority to accept, without limitation, assets, funds, moneys, rights under insurance policies, and/or other property, of subsequent Grantor(s) to be added to the Trust Fund and to manage the same as a single undivided corpus without regard to the percentage or form of contribution from any current or future Grantor(s), whether presently known or unknown. Nothing in this Agreement should be construed to limit the type, form, amount, or character of any assets, funds, moneys, rights under insurance policies, and/or other property, whether real, personal or otherwise, that Trustee may accept in Trust, in his discretion, and control and manage in accord with the terms of this Agreement.

10.     *Single Trust.* Unless the terms of any separate trust document expressly indicate otherwise, future contributions to the Trust by future Grantor(s), accepted by Trustee, shall not create a new trust but shall vest in this Trust and Trust Fund and add to the single Fund created by this Agreement.

## IV.   TRUSTEE AUTHORITY

11.     *Pursuit and Liquidation of Claims.* Trustee shall have broad discretion and authority to take such actions as Trustee deems necessary or appropriate to pursue claims, payments, and proceeds for the Trust. Trustee is expressly authorized and empowered to take such actions as Trustee in his discretion deems necessary or appropriate to pursue applicable claims. Trustee shall pursue applicable claims with the skill, diligence, prudence, and care that a

similarly situated individual, acting in a like capacity and familiar with such matters, would pursue claims of a like character and with like aims.  Without limiting Trustee's general discretion and authority granted pursuant to this Section, Grantor(s) and Trustee agree that Trustee shall have the authority to:

a.      negotiate, settle, release, compromise, or otherwise adjust all claims, policies, and payments arising under or in connection with the trust assets, including but not limited to the Insurance Policies and other legal claims;

b.      engage such outside legal counsel, consultants, accountants, and other independent advisors as Trustee deems necessary or appropriate; compensate, or arrange or agree to compensate, such persons, using Trust proceeds;

c.      make, execute, acknowledge, and deliver any and all documents of transfer and conveyance and any and all other instruments that may be necessary or appropriate to carry out the powers herein granted; compromise, liquidate, or otherwise adjust all claims and Trust assets in favor of, or against, the Fund; sell, dispose of, or liquidate all Trust assets in favor of the Fund;

d.      purchase and maintain insurance coverage covering Trustee's personal liability for any acts or omissions in his capacity as Trustee and any other insurance products that are reasonable and appropriate to protect Trustee from personal liability.

12.     *Payments from the Fund.* Trustee shall have authority to make such payments and distributions from the Fund as set forth and prescribed in Section VII below.

13.     *General Authority.* Trustee shall have such further authority as provided by law and this Agreement.

12

## V.    TRUST MANAGEMENT

14.    *Investing Trust Assets.* Consistent with the liquidity needed to make payments authorized or required by this Agreement, Trustee shall invest the income of the Fund in liquid investments only. Trustee shall be under no liability for interest or producing income on any Fund assets. Investments are limited to demand and time deposits, such as certificates of deposit, in banks or other savings institutions whose deposits are federally insured, and other liquid investments, such as Treasury bills.

15.    *Checking Account.* Consistent with the liquidity needed to make payments authorized or required by this Agreement, the Trustee may deposit and maintain Trust funds in a checking account, provided that 100% of any such deposit, account, or other obligation is insured by FDIC or FSLIC.

16.    *Trustee's Other Trust Management Duties.* Trustee shall discharge his duties regarding the Fund solely in the interest of Beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that persons of prudence, acting in a like capacity and familiar with such matters, would use in the conduct of an enterprise of a like character and with like aims, consistent with the duties of a fiduciary. Notwithstanding any other provision of this Agreement, Trustee shall not take actions that cause Grantor(s) to incur any personal financial liability.

17.    *Management of Trust Funds and Assets.* The Trust Fund shall represent a single indivisible Fund irrespective of the identity or number of any current or future Grantor(s), and Trustee shall expressly be permitted, in his discretion, to hold and co-mingle all assets, funds, moneys, and/or other property granted by any current or future Grantor(s) in a single Fund held for the benefit and interest of Beneficiaries.

13

## VI.    TAXES AND EXPENSES

18.    All taxes of any kind that may be assessed or levied against, or in respect of, the Fund shall be paid solely from the Fund. The compensation of Trustee and all other expenses incurred by Trustee in connection with the administration of this Trust shall be paid solely from the Fund.

19.    *Grantor Environmental Trust.* For federal income tax purposes only, the Trust hereby established is intended to be an environmental remediation trust as described in U.S. Treasury Regulation § 301.7701-4(e). The Trust shall have no purpose in generating income or profit other than income generated by temporary investment of Trust assets, which income shall be incorporated into the corpus of the Trust and used exclusively for Trust purposes. The Trust has been organized with no objective to continue or engage in the conduct of a trade or business.

## VII.    PAYMENTS FROM THE FUND

20.    *Payments of Professional Fees and Expenses by Trustee.* Trustee shall make payments from the Fund to compensate or reimburse Trustee and persons or entities engaged by Trustee pursuant to Section IV of this Agreement. Additionally, pursuant to the preceding Section, Trustee shall make payments from the Fund for taxes and expenses. Upon payment to third parties pursuant to this paragraph, such funds shall no longer constitute part of the Fund as defined herein.

21.    *Disbursement Instructions for Distributions to the Beneficiaries.* Trustee shall make all disbursements from the Fund 75% to EPA and 25% to the Federal Natural Resource Trustees.

14

22.     *Threshold Fund Maintenance.* Trustee shall be entitled to retain in the Fund, in his discretion, up to $50,000 to further the Trust's purposes as set forth herein, which amount may be withheld from disbursement.

23.     *Notice; Disbursement Payments from Fund.* Within fifteen (15) days of receipt of Policy Payments exceeding $50,000, or when the value of the Fund exceeds $75,000, Trustee shall notify Beneficiaries in writing. Within fifteen (15) days of providing the above notice, Trustee shall pay the balance of the Fund, less $50,000 plus reasonable amounts for anticipated expenses, to Beneficiaries in accordance with Paragraph 21.

24.     *Direct Disbursement Payments to Beneficiaries.* Trustee shall make all payments to EPA by federal electronic funds transfer ("EFT") into the Portland Harbor Special Account within the EPA Hazardous Substance Superfund, or as otherwise provided by EPA, consistent with written instructions provided by EPA.   EPA may retain or use funds received from, or on behalf of, the Trust and deposited into the Portland Harbor Special Account to conduct or finance response actions at or in connection with the Site, or transfer all or any portion of such funds to the EPA Hazardous Substance Superfund. Trustee shall make all payments to the Federal Natural Resource Trustees for the Site by federal electronic funds transfer ("EFT") to NRDAR Account No. 14X5198, or as otherwise provided by the Federal Natural Resource Trustees, consistent with written instructions provided by the Federal Natural Resource Trustees. The Federal Natural Resource Trustees may retain or use funds received from, or on behalf of, Grantors to conduct or finance restoration activities in connection with the Site.

## VIII.   ROLE OF GRANTOR

25.     Except as provided in Section II, Grantors shall have no rights, responsibilities, or obligations pursuant to this Agreement. Grantors have no residual interest or entitlement to the Fund, Trust proceeds, or any proceeds of Trust assets.

## IX.    INSPECTION OF RECORDS, AUDITS, AND REPORTING

26.     *Accounting Records and Audits.* Trustee shall keep or cause to be kept proper books, records, and accounts of all transactions relating to the Trust in such form as will enable Trustee to produce all reports and accountings and to submit to any audit required pursuant to this Agreement. If requested by Beneficiaries, Trustee shall make available all Trust books and records, including accounting records, to Beneficiaries for inspection within five (5) days of Beneficiaries' request. Upon request by Beneficiaries, and in any event in advance of the intended termination of the Trust, Trustee shall arrange for an independent accounting audit and shall furnish Beneficiaries with the report and any other documents prepared by the independent accounting auditor.

27.     *Semi-Annual Reports.* On February 1 and July 1 of each year, the Trustee shall provide Beneficiaries with a semi-annual report summarizing the financial status and activities of the Trust in the six (6) months prior to January 1 and June 1 of that year, respectively.  At a minimum, each semi-annual report shall include a beginning and ending statement of Trust Fund balances, expenses incurred since the last semi-annual report, recoveries obtained and/or property received by the Trust since the last semi-annual report, a statement of accounts payable and accounts receivable as of the end of the reporting period, and a brief status report regarding any claims or causes of action being pursued.

16

## X.    ADVICE OF COUNSEL

28.    Trustee may at any time consult with counsel with respect to any issue regarding construction of this Agreement, or any action to be taken pursuant to the Agreement. To the extent permitted by law, Trustee shall not be liable for actions taken on advice of counsel.

## XI.    TRUSTEE COMPENSATION

29.    Trustee shall be entitled to compensation for his services on a basis in the amount listed in Exhibit 2, which Grantors and Trustee agree constitutes a reasonable fee as of the date of this Agreement.

## XII.    RESIGNATION, REMOVAL, AND SUCCESSOR TRUSTEE

30.    *Term of Trustee.* Trustee shall serve for a term of five (5) years. Trustee shall automatically be reappointed to subsequent five-year terms unless, no less than ninety (90) days prior to the end of the current term, Beneficiaries notify Trustee that Trustee will not be reappointed.

31.    *Resignation of Trustee.* Trustee may resign at any time, with or without cause, and without the necessity of any court proceeding, by giving not less than sixty (60) days prior written notice to Beneficiaries. Such resignation shall take effect on the date set forth in the resignation notice, which shall be a date not less than sixty (60) days after the date Trustee submits the resignation notice to Beneficiaries, unless a successor Trustee is appointed sooner pursuant to Paragraph 33 of this Agreement, in which event such resignation shall take effect immediately after the appointment and acceptance of the successor Trustee.

32.    *Removal of Trustee.* Notwithstanding any other provision of this Agreement, Trustee may be removed at any time, with or without cause, and without the necessity of any

court proceeding, pursuant to an instrument executed by the EPA Region 10 Director of the Office of Environmental Cleanup or his designee, or to his successor, and delivered to Trustee.

33.    *Successor Trustee.* If Trustee resigns, is removed, is not reappointed for a subsequent term, or otherwise ceases to act as Trustee, a successor Trustee shall be appointed pursuant to an instrument executed by Beneficiaries without the necessity of any court proceeding. The successor Trustee, by its execution of an addendum to this Agreement, agrees that the successor Trustee understands and accepts the Trust established by this Agreement, accepts the rights, powers, duties, and responsibilities set forth in this Agreement, and agrees to perform Trustee's duties in accordance with this Agreement.

34.    *Transfer to Successor Trustee.* Every successor Trustee appointed pursuant to the preceding paragraph shall execute and deliver to his predecessor an instrument accepting his appointment. Thereupon, such successor Trustee, without any further act, deed, or conveyance, shall become fully vested with all the estates, rights, powers, title to Trust assets, trusts, duties, and other Trustee obligations pursuant to this Agreement. Nevertheless, upon written request of the successor Trustee, such predecessor Trustee shall execute and deliver an instrument transferring to such successor Trustee all the estates, rights, powers, title to Trust assets, trusts, duties, and other obligations of such predecessor Trustee pursuant to this Agreement, and every predecessor Trustee shall deliver all assets and records of the Trust held by him to his successor; provided, however, that before any such delivery is required or made, all allowable fees and expenses of any such predecessor Trustee shall be paid in full. If payment of any fees or expenses is disputed, predecessor Trustee shall not withhold delivery of any undisputed assets to successor Trustee.

18

## XIII.  NOTICES

35.    Whenever, pursuant to the terms of this Agreement, written notice or communications are required or authorized, or a report or other document is required or authorized to be sent, the written notice, document, or communication shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give written notice of a change. All notices and submissions shall be considered effective on receipt, unless otherwise provided.

    a.  As to Beneficiaries:

**EPA**
Lori Houck Cora
Assistant Regional Counsel
Office of Regional Counsel
U.S. Environmental Protection Agency Region 10
ORC-158
1200 Sixth Avenue, Suite 900
Seattle, Washington  98101

Kristine Koch
Remedial Project Manager
Office of Environmental Cleanup
U.S. Environmental Protection Agency Region 10
ECL 115
1200 Sixth Avenue, Suite 900
Seattle, Washington  98101

Director, Office of Environmental Cleanup
Region 10 United States Environmental Protection Agency
1200 Sixth Avenue, ECL-111 Seattle, Washington 98101

**Federal Natural Resource Trustees**
Katherine A. Pease
NOAA Office of General Counsel
Suite 4470, 501 West Ocean Boulevard
Long Beach, CA  90802

Deirdre F. Donahue
Attorney-Advisor

19

Office of the Solicitor
U.S. Department of the Interior
805 SW Broadway, Suite 600
Portland, OR  97205-3346

b.  As to Trustee:

Daniel J. Silver
606 Columbia St. NW
Olympia, WA 98501

c.  As to Grantor:

Jimmy Stahly, General Manager
Linnton Plywood Association
10304 NW St. Helens Road
Portland, OR 97231

## XIV.  IRREVOCABILITY AND TERMINATION

36.  *Irrevocability of Trust.* The Trust is irrevocable. Grantors retain no equitable, legal, beneficial, or residual interest in the Trust.

37.  *Termination of Trust.* This Trust shall continue until, and Trustee shall terminate this Trust within thirty (30) days after, in the judgment of Beneficiaries, (1) all claims against Trustee in his individual and official capacity have been resolved; (2) Trustee has made all valid claims based on the Insurance Policies and received all proceeds based on the Insurance Policies, or until the remaining valid claims based on the Insurance Policies are no longer worthwhile of further recovery efforts; (3) Trustee has made all remaining valid legal claims assigned to the Trust and received any proceeds from such claims, or until the remaining valid claims are no longer worthwhile of further recovery efforts; and (4) Trustee has paid all expenses and obligations of the Trust. Upon termination of the Trust, Trustee shall liquidate all remaining Trust property, pay all final Trust administration expenses, and distribute the remaining balance of the Trust to Beneficiaries in accordance with Paragraph 20.

20

## XV.    AMENDMENT AND MODIFICATION

38.    The Trust may be amended or modified in order to further the material purposes of the Trust as follows:

a.    amendments or modifications shall be valid only if made pursuant to a written instrument agreed to and signed by Trustee and Beneficiaries;

b.    amendments or modifications to the Trust shall be deemed effective upon the date of mutual execution by Trustee and Beneficiaries, unless the terms of the amendment or modification expressly provide otherwise;

c.    amendments or modifications to the Trust shall be incorporated into this Agreement and be binding on all future Grantor(s) and Trustee(s) and Beneficiaries;

d.    amendments or modifications of the Trust may be done without notice to or consent of Grantor(s) and without the necessity of court intervention or approval;

e.    The dissolution of any Grantor (including, but not limited to, Settling Grantor) shall not modify this Agreement or alter the rights, duties, or assets of the Trust, Trustee, or Trust Fund in any way except as otherwise provided herein.

## XVI.    IMMUNITY AND INDEMNIFICATION

39.    *No Liability of Beneficiaries.* Notwithstanding any other provision of this Agreement, the United States, including without limitation Beneficiaries, shall not be liable to the Trust, Trustee, or Grantors for any damages or payments whatsoever arising out of matters related to the Trust, and Trustee shall not have power to sue the United States, including without limitation Beneficiaries, in any forum except for the purpose of enforcing the terms of this Agreement.

40.    *Extent of Liability of Trustee.* Trustee shall not be liable for his acts, omissions, or defaults, regardless of whether or not occasioned by the negligence of Trustee, nor for the acts, omissions, or defaults of any agent or depository employed, appointed, or selected by Trustee, except for such Trustee's own acts, omissions, or defaults occasioned by the gross negligence or willful misconduct of such Trustee. Trustee shall not be responsible for the acts or omissions of any predecessor Trustee nor, in particular, shall Trustee be liable for such predecessor Trustee's exercise or nonexercise of any power or discretion properly delegated pursuant to this Agreement.

41.    *Indemnification of Trustee.* To the extent of Trust assets only, the Trust shall indemnify, hold harmless, and defend, to the extent allowed by law, Trustee from any personal liability to which Trustee may be subjected by reason of any act or omission in Trustee's official capacity, including all expenses reasonably incurred in Trustee's defense. This provision shall not apply with respect to gross negligence or willful misconduct by Trustee.

42.    *Survivorship of Protections.* Notwithstanding any other provision of this Agreement, the terms and conditions of Paragraphs 38, 39, and 40 of this Agreement shall survive the termination of the Trust, and the protections in Paragraphs 38, 39, and 40 of this Agreement may not be altered, amended, or revoked without the consent of Beneficiaries and Trustee of the protections set forth in each respective paragraph.

43.    *No Bond or Insurance Required.* No bond or other security shall be exacted or required of any Trustee appointed by this Agreement.

**XVII. CHOICE OF LAW**

44.    This Agreement shall be administered, construed, and enforced according to the laws of the State of Oregon.

22

## XVIII. MISCELLANEOUS

45.    *Headings.* Headings to sections and paragraphs of this Agreement are included for the convenience of reference only and shall be disregarded in the construction and interpretation of any of the provisions of this Agreement.

46.    *Particular Words.* Any word contained in the text of this Agreement shall be read as singular or plural and masculine, feminine, or neuter, as may be applicable or permissible in the particular context. The word "person" shall include an individual, partnership, association, company, corporation, or municipal corporation.

47.    *Preservation of Privilege.* In connection with the rights, claims, and causes of action assigned, conveyed, or transferred to the Trust, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) related to the Trust or the assets assigned, conveyed, or transferred to the Trust (including, but not limited to, rights under the Insurance Policies, legal claims, and all related and unrelated assigned claims) shall vest in the Trust and its representatives, and the parties are authorized to take all necessary actions to effectuate the transfer of such privileges.

48.    *Disputes; Jurisdiction of Court.* All disputes arising between or among Trustee, Grantors, or Beneficiaries that cannot be resolved informally shall be resolved in the United States District Court for the District of Oregon. Trustee and Grantors agree to, and accept the jurisdiction of, the United States District Court for the District of Oregon for this purpose.

49.    *Complete Agreement.* This Agreement contains the final expression and the complete and exclusive statement of the terms of the Agreement between the parties with respect to the subject matter hereof and supersedes all prior and contemporaneous oral and written representations, understandings and agreements between them with respect thereto.

23

50.    *Authorized Signatories.* Each person signing this Agreement represents and warrants that he or she is duly authorized to enter into this Agreement by the entity on whose behalf the person is signing. Each person signing this Agreement has consulted or had the opportunity to consult independent legal counsel regarding the effect of this Agreement and understands the legal ramifications of entering into this Agreement.

51.    *Effective Date.* The effective date of this Agreement shall be Effective Date as defined in Paragraph 1.c of this Agreement.

52.    *Severability.* If any provision of this Agreement, or its application to any person in any circumstances, is deemed invalid or unenforceable by a court of law, the application of such provision to other persons and in circumstances other than those to which the provision is deemed to be invalid or unenforceable, and the other provisions of this Agreement, shall not be affected by such invalidity or unenforceability.

25

THE UNDERSIGNED PARTY enters into this PORTLAND HARBOR SUPERFUND SITE INSURANCE RECOVERY TRUST TRUST AGREEMENT

FOR DEFENDANT LINNTON PLYWOOD ASSOCIATION

Date: _____        _____

Jimmy Stahly, General Manager
Linnton Plywood Association
10304 NW St. Helens Road
Portland, OR 97231

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name:    LPSL Corporate Services, Inc.

Address:  601 SW Second Avenue, Suite 2011, Portland, OR 97204

26

27

THE UNDERSIGNED PARTY enters into this PORTLAND HARBOR SUPERFUND SITE INSURANCE RECOVERY TRUST TRUST AGREEMENT

FOR TRUSTEE   <u>Daniel J. Silver</u>

Date: _____          _____

606 Columbia St. NW
Suite 212
Olympia, WA 98501

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name:         _____

Title:         _____

Address:      _____

28

## EXHIBIT 1

**[insert known insurance policies under which rights will be assigned]**

**EXHIBIT 2**

**Trustee Compensation**

Trustee's compensation is set at $175 per hour. Trustee may propose increases to the above-set compensation no more frequently than annually, which proposed increases shall be negotiated in good faith between Trustee and Beneficiaries. Trustee shall further be reimbursed for actual travel expenses (including mileage) and direct costs associated with administration of the Trust.