# ATTACHMENT G



**Confederated Tribes and Bands**
**of the Yakama Nation**

Established by the
Treaty of June 9, 1855

The Honorable John C. Cruden                                                                    January 13, 2015
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611

      Re:    *United States v. Linnton Plywood Association*,
               D.J. Ref. No. 90-11-2-06787/3

Dear Assistant Attorney General Cruden:

I am writing to you on behalf of the Confederated Tribes and Bands of the Yakama Nation (the "Yakama Nation" or "Tribe") to provide its comments on the Consent Decree lodged in *United States v. Linnton Plywood Association*, No. 3:14-1772, in the United States District Court for the District of Oregon ("the Decree").  Because the settlement will result in all available financial resources of the settling party being paid to the United States, while categorically excluding the Tribe – a recognized natural resource trustee under the law – the Yakama Nation objects to the entry of the Decree.

<u>The Yakama Nation's Interests</u>

In the 1855 Treaty with the Yakamas, the Yakama Nation conditionally ceded 10 million acres of land and reserved for our People, among other things, the right to fish at all usual and accustomed places.  Those rights, specifically reserved to the Yakama Nation by the Treaty, are the very essence of what defines us as a People.  Fishing on the Columbia River has sustained our People since time immemorial, and we honor the fish with songs and stories that define our culture.  Now, our Treaty partner is attempting to usurp resources in which it knows the Yakama Nation has a vested interest.  The United States cannot protect the Yakama Nation's treaty rights without meaningfully involving the Yakama Nation in these decisions.

On June 26, 2013, the President set forth "a national policy to ensure that the Federal Government engages in a true and lasting government-to-government relationship with federally recognized tribes in a more coordinated and effective manner, including by better carrying out its trust responsibilities."  Executive Order 13647 (June 26, 2013).  The Yakama Nation was never advised of the ongoing negotiation, and only learned of the proposed Consent Decree through its publication.  This falls far short of exercising the United States' responsibility to the Tribe in the "coordinated and effective manner" established by the President.  And, consultation or – at a minimum – notification on a government-to-government basis would not affect the ability of the Attorney General to settle cases on behalf of the United States.  *See, id.,* Section 4(a)(i).

The United States is well aware of the Yakama Nation's interests.  Until June 2009, the Tribe was a member of the Portland Harbor Natural Resource Trustee Council.  The Yakama withdrew only when it became clear that the Council would not commit to ever doing damage assessment work in the Columbia River to determine the extent of injury there.  At that time, the Tribe informed the United States and other trustees that it would remain active in matters concerning Portland Harbor, and that it would continue its work on natural resource damage claims both at the Portland Harbor Superfund Site and in other areas where releases have come to be located.  *See*, Letter from Ralph Sampson, Jr., Chairman, to Authorized Officials of the Natural Resource Trustee Council (June 5, 2009)(attached).  Since that time, EPA has continued to recognized the Yakama Nation's status as natural resource trustee.  For example, in August 2010, the Director of the Office of Environmental Cleanup informed the Tribe that it was aware of its role in the NRDA process under CERCLA, and that it would continue to coordinate with the Tribe on matters related to the Portland Harbor Superfund Site.  *See*, Letter from Daniel D. Opalski, Director, to Philip Rigdon, Deputy Director, Department of Natural Resources (August 4, 2010) (attached).

Post Office Box 151, Fort Road, Toppenish, WA 98948 (509) 865-5121

It can come as no surprise to the United States that the Yakama Nation has a significant, federally-recognized interest in the resources that are at issue in the *Linnton Plywood Association* case.

The Consent Decree

This is not a case in which the available proceeds from a responsible party are being exclusively used for site cleanup. Rather, there is an explicit recognition that monies are owed not only for EPA's cleanup actions, but also to the Natural Resource Trustees for damages. *See, e.g.,* Decree ¶ 5. Twenty-five percent of settlement monies are being allocated to the Federal Natural Resource Trustees. Though not parties to the action, nor signatories to the Decree, the Natural Resource Trustees are defined to also include the State of Oregon, and the Grand Ronde, Nez Perce, Siletz, Umatilla and Warm Springs tribes. Decree ¶ 3.o. Those trustees do not include the Yakama Nation.

Fairness

The United States Congress made clear that consent decrees under CERCLA must take into account the interest of the public at large, the settling parties, and the non-settlors. H.R. Rep. No. 253, Pt. 3, 99th Cong., 1st Sess. 19 (1985). The United States has given no consideration whatsoever to the Yakama Nation's interests in this matter. For a variety of reasons, the Consent Decree lodged with the District Court cannot be considered fair.

- The Consent Decree explicitly recognizes the cognizable rights of natural resource trustees to recover for injuries to natural resources resulting from releases and/or potential releases *from the Linnton facility*. Under the Decree, monies from the settlement would be divided between EPA and the Federal Trustees.

- As a result of the proposed settlement, no monies will remain for any Trustee recognized by law, but not specifically identified in the Consent Decree. All insurance proceeds are being assigned to an Insurance Trust. Monies from that trust, like other recoveries under the settlement, will be divided between EPA and the trustees identified by the Consent Decree.

- The Consent Decree recognizes Natural Resource Trustees that are neither party nor signatory to the Decree. The State of Oregon and five Indian Tribes are identified, and the Yakama Nation is excluded.

- The Yakama Nation is a natural resource trustee under CERCLA, and has been recognized as such by the United States. Moreover, the Tribe has undertaken and continues to conduct Natural Resource Damage Assessment ("NRDA") activities at the Portland Harbor site pursuant to Section 107 of CERCLA, 42 U.S.C. 9607. To date, the Yakama Nation has incurred in excess of $200,000 in assessment costs associated with releases from that facility.

- The United States has made no effort to consult with or to include the Yakama Nation in any of its negotiations leading up to, or in implementing, the settlement proposed in the Consent Decree. Since at least 1997, the EPA has operated under a directive requiring coordination with Natural Resource Trustees. "EPA's policy is to encourage participation by *all affected Trustees at every stage in the CERLCA process*. Coordination with natural resource Trustees will help EPA assure that environmental impacts are more fully addressed as early as practicable and will facilitate timely and *simultaneous settlement of all liabilities.*" OSWER Directive No. 9200.4-22A (July 31, 1997).

- An ability to pay settlement recognizes that a responsible party does not have the financial means to fully participate in the cleanup of a facility, and seeks to recover the maximum amount available from that party. As is the case here, the responsible party will be left with no resources. If this settlement is approved, the responsible party would cease to exist, will have no financial resources, will have no proceeds from any potential insurance coverage, and the property will be sold with the proceeds going only to the United States.

A consent decree must meet standards of both procedural and substantive fairness. Here, the Consent Decree specifically states that the "Settling Defendant has represented that it is no longer conducting any business and, other than its insurance policies, its only tangible asset is a parcel of real property, located within the boundaries of the [Portland Harbor] Site. Settling Defendant is in the process of liquidating all of its assets and winding down all of

its business affairs." Consent Decree ¶ F. The implication is, as discussed above, that no assets will remain after EPA and the federal natural resource trustees have "cashed out" the responsible party, taken the proceeds of its only real asset, and assigned all insurance proceeds to the Insurance Trust. *See, also*, Consent Decree ¶ F ("[T]he United States has determined that the Settling Defendant has limited financial ability to pay response costs incurred or to be incurred at the Site *and Natural Resource Damages* related to the Site, but is able to pay the amounts specified [herein].").

On its face, this *cannot* meet a standard of substantive fairness, and fulfills neither the United States' trust responsibilities to the Yakama Nation, nor the purposes of CERCLA as defined by the United States' own policies and directives. The Yakama Nation objects to the entry of this Consent Decree unless and until a meaningful opportunity to participate at the Linnton site, on a government-to-government basis, occurs. Please feel free to contact me at (509) 865-5121 ext. 4655, or prigdon@yakama.com, with any questions or comments.

Sincerely,

Phil Rigdon, DNR Superintendent
Yakama Nation

Attachments



Confederated Tribes and Bands
of the Yakama Nation

Established by the
Treaty of June 9, 1855

June 5, 2009

Authorized Officials
Portland Harbor Natural Resource Trustee Council
c/o Stephen Zylstra
US Fish and Wildlife Service
2600 SE 98th Avenue, Suite 100
Portland, OR  97266

Re:    Portland Harbor Natural Resource Trustee Council  -  Yakama Nation's Withdrawal

Dear Authorized Official,

As we discussed on May 21, 2009, the Yakama Nation will be withdrawing from the Portland Harbor Natural Resource Trustee Council (Trustee Council), effective 10 days from the date of this letter.[1]

The Yakama Nation is disappointed we could not find a way to resolve our current differences. As we discussed, the areas of disagreement centered around whether, how and when to address potential harm to juvenile salmon, other fish and natural resources in the Columbia River.

The Yakama Nation has a long history of taking assertive action regarding the Columbia River. One of the reasons for the Yakama Nation's involvement in Portland Harbor Superfund matters has been concern with the harm potentially done to the Columbia River and its resources by Portland Harbor pollution.  All pollution released into the Willamette River has flowed into and thru the Columbia River, except for that which is still in the Willamette River or Multnomah Channel, or has been removed by dredging.  Of particular concern has been the potential harm done by this pollution to juvenile salmon as they pass through the last 100 miles of the Columbia River estuary from the confluence with the Willamette River to the Pacific Ocean.

---

[1] ¶ X.1. of the NATURAL RESOURCE TRUSTEE MEMORANDUM OF AGREEMENT FOR THE PORTLAND HARBOR SUPERFUND SITE (MOU) provides that withdrawal is effective 10 days after written notice such as this letter.

In the Yakama Nation's view, any phased settlement approach such as that being undertaken at Portland Harbor must address *all* potential harm to natural resources in the Columbia River. As we discussed, there would seem to be two ways of doing this. One way would be to first assess *all* the injury caused by Portland Harbor pollution, including that to the Columbia River water and juvenile salmon there, and then settle with cooperating polluters (Potentially Responsible Parties or "PRPs") for the damage done by the pollution they released. The second way would be to address the matter at the outset with the cooperating PRPs and agree to first work toward a *partial* settlement involving only injury and damage in the Willamette River, but agreeing to jointly address problems in the Columbia later.

We were surprised and disappointed that the other Trustees did not share this view. We were particularly disappointed in the positions of the federal agencies (NOAA, DOI-FWS) which have a trust obligation owed the Yakama Nation to protect our Treaty trust resources such as the salmon and other fish. This refusal of other Trustees to presently address matters in the Columbia River seemed most unusual in light of:

- Recent Columbia River NOAA Salmon Work - Recent salmon studies by NOAA Fisheries indicate that juvenile salmon in the Columbia River downstream of the confluence with the Willamette River are exposed to contaminates of the type released at Portland Harbor at higher levels than those upstream of the confluence, and that such exposure is of sufficient magnitude to place them at risk of injury.
- Judge Redden Letter – On Monday of the same week we met, the federal Judge in the BiOp case, *NWF v. NMFS*, raised concerns regarding mitigation work to ensure salmon survival in the Columbia River estuary (from Bonneville Dam to the Pacific Ocean). Despite Judge Redden's letter, NOAA turned a blind eye to the Columbia River when we met three days later, choosing a course of *not* assessing injury in the Columbia River that may have been caused by Portland Harbor pollution, and could ultimately result in additional restoration or mitigation work in the lower 2/3 of the estuary paid for by Portland Harbor polluters.[2]
- Recent Supreme Court Decision – The refusal to the take prudent steps necessary to ensure that later claims for damage in the Columbia River would not be barred by the recent U.S. Supreme Court CERCLA decision of *Burlington Northern v. U.S.,* 129 S.Ct 1870, 1882, fn. 9 (2008) (holding that equity considerations *cannot* be considered in allocating PRP liability).

When it became clear that 1) the others on the Trustee Council saw things differently than the Yakama Nation, 2) were firm in their desire to exclude the Columbia River in Phase 2 settlement process

---

[2] The *NWF v. NMFS* BiOp litigation (future mitigation regarding Endangered Species Act [ESA] listing of salmon) addresses a situation very different than this Portland Harbor Superfund natural resource damage assessment (a Superfund action to restore or compensate for past and future injuries to natural resources). Both, however, address harm done to salmon in the Columbia River watershed. While the Yakama Nation has not challenged the BiOp in *NWF v. NMFS* and generally supports the United States (NOAA's) position in that litigation, the Yakama Nation also supports anything that can be done in the estuary to aid the salmon, including additional mitigation and restoration work, especially in light of Judge Redden's letter.

with the cooperating PRPs, 3) would not commit to *ever* doing the assessment work in the Columbia River necessary to determine the extent of possible injury and damage there, and 4) were not interested in initially securing a partial settlement understanding with the cooperating PRPs that would protect later claims regarding the Columbia River, the Yakama Nation felt it best to withdraw from the Trustee Council and pursue its Portland Harbor natural resource damage remedies on its own in a way which addresses the Columbia River.

The Yakama Nation intends to continue being actively involved in Portland Harbor matters. We will still be involved in all aspects of EPA's Response activities working with the Lower Willamette Group. We will continue to be involved in the early actions at GASCO, Arkema and the Port of Portland's Terminal 4. We will also be continuing our work on natural resource damage matters, including work with cooperating PRPs in an effort to resolve *all* of their natural resource damage liability, including that in the Columbia River, in a timely and appropriate manner.

As we wind down our participation on the Trustee Council over the next 10 days until this withdrawal is effective, I have directed the Yakama Nation's staff and contractors to cooperate with your staff and contractors to make sure that you have access to all Portland Harbor documents, data, reports or studies in our possession that you feel would help your effort. I would appreciate it if you would do the same.

We also must address fiscal matters. I have directed the Yakama Nation's staff to prepare an accounting of all funding relating to the Yakama Nation's work on the Trustee Council. The Trustee Council MOA calls for the Lead Administrative Trustee, which the MOA designates as NOAA, to prepare an accounting when a Trustee leaves the Council.[3] I would ask that this be promptly done. A separate accounting by DOI-FWS should also be conducted to fully account for all funds received from Cooperating Responsible Parties and held by DOI for all Trustees, including the Yakama Nation.[4]

The Yakama Nation wishes you well as you pursue the work you are doing, and looks forward to working cooperatively with you when appropriate.

Sincerely,

*Ralph Sampson Jr.*

Ralph Sampson Jr., Chairman
Yakama Nation Tribal Council

---

[3] Under ¶ X.1. and ¶VI. of the MOU, an accounting of all Trustee Council funds is required by NOAA as the Lead Administrative Trustee (LAN) [see MOA ¶3 designating NOAA as LAN].

[4] In light of information received that within the last month DOI made a partial distribution of these funds to Trustees *other than* the Yakama Nation, such accounting must account for ALL such Portland Harbor funds ever received and/or disbursed by DOI.

cc:     Samuel N. Penney, Executive Committee Chairman, Nez Perce Tribe
Antone Minthorn, Board of Trustees Chairman, Confederated Tribes of the Umatilla Indian Reservation
Ron Suppah, Tribal Council Chairman, Confederated Tribes of the Warm Springs Reservation of Oregon
Delores Pigsley, Tribal Council Chair, Confederated Tribes of Siletz Indians
Cheryle A. Kennedy, Tribal Council Chairwoman, Confederated Tribes of the Grand Ronde Community of Oregon
Craig O'Conner, Regional Counsel, NOAA Office of the Northwest Regional Counsel
Robyn Thorson, Regional Director, U.S. Fish & Wildlife Service - Pacific Region
Roy Elicker, Director, Oregon Department of Fish and Wildlife
Michelle Pirzadeh, Acting Regional Administrator, U.S. EPA Region 10
Dan Oplaski, Director, U.S. EPA Region 10 Environmental Cleanup Office



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
**REGION 10**
1200 Sixth Avenue, Suite 900
Seattle, WA 98101-3140

RECEIVED

AUG 0 6 2010

FISHERIES RESOURCES
MANAGEMENT PROGRAM
OFFICE OF
ENVIRONMENTAL CLEANUP

AUG 0 4 2010

Mr. Philip Rigdon
Deputy Director
Department of Natural Resources
Confederated Tribes and Bands of the Yakama Nation
PO Box 151
Fort Road
Toppenish, Washington  98948

Re:     Portland Harbor NPL Site – EPA Region 10 Meeting with PRPs

Dear Mr. Rigdon:

Thank you for your letter of July 26, 2010, to the The Environmental Protection Agency (EPA) expressing concern and displeasure with Region 10 staff for not officially requesting the Yakama Nation to present their Natural Resource Damage Assessment (NRDA) process at a Potentially Responsible Party (PRP) meeting held July 27, 2010.  Please know that this was not an intentional act, and EPA apologizes to the Yakama Nation, as already verbally expressed by my staff to yours, for inadvertently forgetting to ask if the Yakama Nation would want to present at this meeting.  It was not EPA's intent to undermine the role of the Yakama Nation in the NRDA process under CERCLA by not inviting your staff to speak at this meeting.

We appreciate that Rose Longoria, Yakama Nation Superfund Project Manager, and Tom Zeilman, Yakama Nation Legal Counsel, were able to attend and present at the meeting.  We believe that the PRPs and their attorneys, as well as EPA and others, gained much understanding of the Yakama Nation's NRDA process and how it differs from the Natural Resource Trustee Council for Portland Harbor from the presentation.

Please know that EPA values the open relationship we have with the Yakama Nation. EPA has worked very hard over the years to coordinate with the Tribe on matters related to the Portland Harbor Superfund Site, which began with the signing of the Memorandum of Understanding (MOU) and continued with participation in the Management Meetings with the Lower Willamette Group, Technical Coordination Team meetings with other MOU partners, and coordination with EPA on Removal Actions and Legal Coordination Team meetings.

Going forward, we will ensure that EPA coordinates with the Yakama Nation whenever the agency invites the Natural Resource Trustee Council representatives to meetings with PRPs associated with the Portland Harbor Superfund Site.

*Printed on Recycled Paper*

Again, my sincerest apology for the oversight in planning this meeting.  Please call me at 206-553-1855 if you would like to further discuss this matter.

Sincerely,

Daniel D. Opalski
Director

cc:    Mr. Virgil Lewis
       Yakama Tribal Council

       Mr. Paul Ward
       Yakama Nation FRMP

       Ms. Rose Longoria
       Yakama Nation FRMP

       Mr. Tom Zeilman,
       Yakama Nation Attorney

       Mr. Julio Carranza
       Yakama Nation OLC

       Lori Houck-Cora

       Kristine Koch