be open for bid and shall be awarded by the Board of Directors. Personnel awarded trainee jobs automatically move into vacancies that they have been trained for. When there is a more than one trainee available for a vacancy, seniority shall prevail.

(b) All other jobs with the Association except jobs temporarily assigned under Section 5 of this part B, shall be assigned to members on the basis of their bid therefore. After having been posted for three days, each job shall be awarded to such bidder who is highest on the Job Bid Seniority List. Awards of jobs shall be made by the Superintendent and the Foreman involved, but shall be subject to review by the Plant Committee and the Board of Directors on appeal.

(c) A member on the member's Annual Vacation, absent by reason of injury or illness or on a leave of absence because of a death in the member's immediate family, shall have a period of not to exceed two weeks after the job has been awarded to bid on the job and be considered. The Superintendent shall notify the Secretary-Treasurer who shall check with the Timekeeper if a relative member that for the above reasons, is entitled to a vote. He must notify those members that these member/represent and if they are higher on the Job Bid Seniority List than the member present and bidding. This does not include a member on a leave of absence for any reason other than a death in the member's immediate family.

(d) Members awarded jobs on the basis of bidding shall have a period of two weeks within which to learn and perform such job satisfactorily.

(e) Any member bidding on a temporary job assignment will do so with the understanding that the member will when the reassnumber's extra gang and get back the seniority date the member had when the member was awarded the temporary job assignment, upon the return of the individual who held the job on a permanent basis.

## SECTION 4 - Job Content.

(a) The duties and responsibilities of each job shall be determined by the Board of Directors and supervision, taking into account the industry practice.

(b) The purpose of all work is the attainment of the most efficient utilization and operation of facilities in the highest standard of quality. Accordingly, management shall insure that all members are productive at all times.

(c) The Plant Committee at any regular or special meeting shall have the power by a unanimous vote of a quorum to discharge from the work of the Association any member whom they shall find to be physically or mentally unfit for such work, or who refuses to do said member's work as outlined by the management. A member can appeal to the membership at a special or regular meeting. A majority vote of the membership at a meeting shall be final. Job rights and time loss shall not be lost if the membership decision is reinstatement.

SECTION 5 - Temporary Job Assignment. Members who are recovering from an accident or illness may be temporarily assigned to a job they are able to perform until they are able to return to their regular job. Members who are replaced by such action shall retain job rights, but may be temporarily assigned to other work. Certain jobs may be designated as relief jobs by the Board of Directors and shall not be subject to bidding or seniority or classification as to content.

SECTION 6 - Leaves of Absence. Each member shall be entitled to one thirty (30) day period leave of absence each year. The Board of Directors may make exception to this unique and absence application, may grant leaves of absence in excess of thirty days upon good cause shown. Applications for leaves of absence shall be granted by priority on the basis of the time the same are filed with the Association and all leaves of absence are subject to scheduling.

SECTION 7 - Rules of Safety. All members shall obey and practice the rules and regulations concerning safety in their work. The Board of Directors may appoint a committee to investigate and advise concerning unsafe practices.

SECTION 8 - Alcohol and Drug Policy Rules. All members shall obey and practice the rules and regulations adopted by the Board of Directors concerning alcohol and drug use.

## C.   SUPERVISION SUSPENSION AND DISCHARGE

SECTION 1 - Supervision. All members working for the Association are subject to supervision with respect to the performance of the work assigned to them, such supervision being:

(a) Lead-man, dryer tenders, stock rustlers, shall have supervision over members working in their departments;

(b) Each foreman shall have supervision in said foreman's department over the workers in the job classification in above;

(c) The superintendent shall have supervision over the foreman and the workers working under the foreman's supervision through the previously stated chain of command;

(d) The manager shall have supervision over the Superintendent and the workers working under the Superintendent's supervision through the previously stated chain of command;

(e) The Board of Directors shall have supervision over the manger and the workers under the supervision of the manager.

8 - BYLAWS

SECTION 2 - Suspension and Discharge. Members of the Association shall:

(a) Not consume or partake of intoxicating liquors or any controlled substance while on the premises of the Association, nor report to work, or be engaged in work, while under the influence of liquor or any controlled substance;

(b) Not smoke in any area of the premises of the Association where smoking has been prohibited by the Association; smoking areas shall be definitely designated;

(c) Not harm, nor attempt to harm, any other member or worker of the Association;

(d) Obey the instructions of superiors concerning the performance of work;

and

(e) Report to work when called by the Association.

(f) Any member who violates rules (a), (b) or (c) above shall be suspended from work by the member's immediate supervisor under Article VIII, C, 1, for three days for the first offense and suspended from work by the member's immediate supervisor under Article VIII, C, 1, for two weeks for the second same offense. In addition, any member who violates rule (a) shall as well be subject to the Article VIII, (B), (B), rules and regulations as administered by the Board of Directors.

(g) Any member who violates rules (d) and (e) above or who violates any other provision of these Bylaws, or working rules or the laws of the State of Oregon, pertaining to cooperative associations, shall be warned in writing by the member's immediate supervisor under Article VIII, C, 1 for the first offense, suspended from work for three days by the member's immediate supervisor under Article VIII, C, 1, for the second same offense; and suspended from work for two weeks by the member's immediate supervisor under Article VIII, C, 1, for the third same offense.

(h) For the purposes of the preceding sentence, a written warning shall be effective for a period of one year from the date it is issued in order to determine the penalty for any second and third same offenses.

(i) Any member suspended from work for two weeks for an offense under this Section shall be suspended from work for two weeks for each subsequent same offense until such time as the member shall have worked for a period of one year without committing any subsequent same offense.

(j) With the exception of the Bylaws provision ARTICLE I, D, no membership can be terminated unless a two-thirds majority of the membership in attendance at a meeting of the members at which a quorum is present, has so voted.

## ARTICLE IX

## Distribution of Capital Assets Upon Dissolution

SECTION A - Priority of Distribution. In the event of dissolution of the Association, voluntary or otherwise, the assets of the Association, or proceeds thereof, shall be distributed in the following order of priority:

1. The payment of all secured liabilities, then of all unsecured liabilities of the Association, other than such as are hereinafter specified.

2. In payment to the record owners of preferred capital stock, without regard to the time of issuance of the certificates of such stock, but not to exceed the par value of such stock plus any declared but unpaid and accumulated dividends thereon.

3. In payment pro rata to the members or former members of the Association having in their account on the books of the Association net credits representing retains by the Association for its contingency reserve or for capital purposes (excluding any New Credits), but not to exceed the amount of such net credits.

4. In payment pro rata to the members or former members of the Association having in their account on the books of the Association New Credits.

5. In payment pro rata to the record owners of membership stock.

Bylaws as revised by membership
August 4, 2002 (Bylaws08.02)

BYLAWS
OF
LINNTON PLYWOOD ASSOCIATION

## ARTICLE I

### MEMBERS

SECTION A - Qualifications. A member of the Association is any person: (a) who is or intends to become a producer of forestry products, and (b) who is the owner of or a subscriber to one share of the Association's common capital stock, and (c) whose written application to the Association on its printed form requesting admission to membership has been granted by the Association.

SECTION B - Work. When the Association's plywood manufacturing plant has been completed, all members shall be entitled to work with the Association in such capacity and on such working shift as the Association may determine.

SECTION C - Transfer of Membership. The privileges of membership with the Association are personal to the member and except as otherwise provided in these Bylaws, such privileges cannot be assigned, or in any way transferred by such member to another person.

SECTION D - Termination and Suspension of Membership. Membership with the Association and all rights and privileges pertaining to such membership shall terminate: (a) if a sale, assignment, transfer or levy is made with respect to such member's share of common capital stock of this Association or the member's right and title under the subscription agreement for the purchase of such capital stock, or (b) if a member makes application to the Association for cause and termination of the member's membership, or (c) by resolution of cause, or (d) upon termination of a member to pay the installments when due under the terms of the member's subscription agreement when the Association proceeds in accordance with the provisions of ARTICLE V of these Bylaws for the sale of such member's interest in such capital stock, or (e) after the 45th day of a member's unauthorized absence without leave. A person whose membership is terminated under subparagraph (e) above shall be entitled to have his membership reinstated at any time, but such person must apply for reinstatement and fulfill all of the new member requirements including those contained in the alcohol and drug policy rules, successfully passing a physical exam, securing Board approval, and successfully completing the applicable trial period.

## ARTICLE II

### MEMBERSHIP MEETINGS

SECTION A - Annual Meeting. An annual meeting of the membership shall be held on the third Sunday of December, or on another day determined to be more practical by the Board of Directors; providing further that the day selected must fall within seven (7) days of the third Sunday of the meeting month, at such time and place in the Portland metropolitan area, as the Association may determine.

SECTION B - Semi-Annual Meeting. The Semi-Annual meeting of the members shall be held on the third Sunday of June of each year, or on another day determined to be more practical by the Board of Directors; providing further that the day selected must fall within seven (7) days of the third Sunday of the meeting month, at such time and place in the Portland metropolitan area, as the Association may determine.

SECTION C - Special Meetings. Special meetings of the members may be called at any time by the Association. Special meetings may also be called when a request therefore is made in writing to the Association by not less than ten (10) percent of the members, such written request to state the purpose of calling such special meeting.

SECTION D - Notice of Meeting.

1. The Association shall give each member written notice of each meeting and the time and place thereof and if a special meeting, notice of the purpose of such special meeting, such written notice to be given at least ten (10) days prior to the date of such meeting and addressed to each member at the address appearing on the records of the Association.

SECTION E - Quorum. Those members present at any meeting of the members shall constitute a quorum for the purpose of conducting any lawful business.

## ARTICLE III

### BOARD OF DIRECTORS

SECTION A - Organization and Powers. The corporate powers of the Association shall be exercised by or under the authority of the Board of Directors, and the business and affairs of the Association shall be managed under the direction of the Board of Directors. The Board of Directors shall consist of nine (9) persons who, at all times shall be members of the Association. The Board of Directors shall appoint agents and workers and delegate to them such powers as it deems necessary for the efficient conduct of the Association's business.

1. All Members shall be eligible for election process for the Board of Directors.

1 - BYLAWS



1

ENTERED

2

OCT 2 8 2009

3

IN REGISTER BY EG

4

FILED
2009 OCT 27  AM 11: 08
FOR MULTNOMAH COUN
CIRCUIT COURT

5

### IN THE CIRCUIT COURT OF THE STATE OF OREGON

6

### FOR THE COUNTY OF MULTNOMAH

7

8   DOUG WEISS, RON ELSNER, STANLEY )
    G. LOMNICKY, HARVEY E. YOUNG and )      No. 080710423
9   JOHN DUVALL,                       )
                                       )      **ORDER ON JOINT MOTION TO**
10                        Plaintiffs,  )      **APPROVE STIPULATION FOR**
                                       )      **SETTLEMENT**
11       vs.                           )
                                       )
12  LINNTON PLYWOOD ASSOCIATION,       )
13  JIMMY STAHLEY, GAIL HOLTER,        )
    GENE ELSEY and MIKE BALTO,         )
14                                     )
                         Defendants.   )
15  _____)

16

17       This matter came before the Honorable Christopher J. Marshall on October 12, 2009.

18  Plaintiffs appeared through their attorney, Edward H. Trompke, and Defendants appeared

19  through their attorney, Paul B. George (telephone appearance) and Nancie K. Potter. The

20  Court had previously received and reviewed the motion and supporting memorandum and

21  declarations; the Objections of Barry Axtell, Max M. Smith, Ronald E. Thomas, Holly D.

22  Jackson, and Karen S. Fitch (on behalf of the Estate of Herbert A. Randall), and Francis V.

23  L'Amie. The Court heard all arguments by the attorneys for all parties and by Mr. Thomas,

24  Ms. Randall, and Mr. Laney. Judge Marshall then heard oral argument by the attorneys for

25

26

PAGE 1 – ORDER ON JOINT MOTION TO APPROVE
STIPULATION FOR SETTLEMENT

**ROBERTS KAPLAN LLP**
601 S.W. SECOND AVENUE, SUITE 1800
PORTLAND, OREGON 97204-3171
PHONE: 503-221-0607; FAX: 503-221-1510

30168423.1

1    all parties and by Mr. Thomas, Ms. Jackson and Mr. Laney. Being thus fully advised in the

2    premises, it is hereby

3            ORDERED, that the Joint Motion to Approve Stipulation for Settlement is granted.

4    Defendants may enter a judgment of dismissal without delay.

5

6    DATED this 23rd day of October, 2009.

7

8                                              _____

9                                              The Honorable Christopher J. Marshall

10

11   Presented by:

12   Nancie K. Potter, OSB # 80152
     Roberts Kaplan LLP
13   601 SW Second Ave., Suite 1800
     Portland, OR 97204
14   (503) 221-0607

15

16

17

18

19

20

21

22

23

24

25

26

PAGE 2 – ORDER ON JOINT MOTION TO APPROVE
STIPULATION FOR SETTLEMENT

ROBERTS KAPLAN LLP
601 S.W. SECOND AVENUE, SUITE 1800
PORTLAND, OREGON 97204-3171
PHONE: 503-221-0607; FAX: 503-221-1510

1

2

3

4

5                    IN THE CIRCUIT COURT OF THE STATE OF OREGON

6                         FOR THE COUNTY OF MULTNOMAH

7    DOUG WEISS, RON ELSNER, STANLEY      )
8    G. LOMNICKY, HARVEY E. YOUNG and     )      Case No. 0807-10423
     JOHN DUVALL,                         )
9                                         )      **STIPULATION FOR SETTLEMENT**
                              Plaintiffs, )
10                                        )
11             vs.                        )
                                          )
12   LINNTON PLYWOOD ASSOCIATION,         )
     JIMMY STAHLEY, GAIL HOLTER,          )
13   GENE ELSEY, MIKE BALTO, and DOES     )
     1 THROUGH 10,                        )
14                                        )
15                            Defendants. )
                                          )
16

17                              **INTRODUCTION**

18       This Stipulation for Settlement (the "Stipulation") is by and between Linnton Plywood

19   Association, an Oregon cooperative corporation ("Association")[1], Jimmy Stahly (referred to

20   incorrectly in the case caption as Jimmy Stahley), Gail Holter, Gene Elsey, Mike Balto

21   (collectively "Individual Defendants" herein) and Doug Weiss, Ron Elsner, Stanley G.

22   Lomnicky, Harvey E. Young and John Duvall (collectively "Plaintiffs" herein).

23   ////

24   ////

25

26   [1] The definitions set forth herein are those defined in the Memorandum of Law in Support of
     Joint Motion to Approve Stipulation for Settlement.

PAGE 1 – STIPULATION FOR SETTLEMENT

ROBERTS KAPLAN LLP
601 S.W. SECOND AVENUE, SUITE 1800
PORTLAND, OREGON 97204-3171
PHONE: 503-221-0607; FAX: 503-221-1510
Exhibit 1
Page 1 of 11

30163193.5

1  I.    RECITALS

2     A.    On July 22, 2008, Plaintiffs filed a complaint (the "Complaint") in the Circuit
3           Court of the State of Oregon for the County of Multnomah Case No. 0807-10423
4           alleging that the Liquidation Plan was improperly adopted by the Association and
5           that the Liquidation Plan was in breach of the Settlement Agreement.  The
6           Association and the Individual Defendants, each of whom is a member of the
7           Board of Directors of the Association, deny each of the allegations of the
8           Complaint, but have not been required to file an answer to the Complaint by
9           virtue of the fact that the Association and the Individual Defendants have filed a
10          motion, now pending before the Court, for the complete dismissal of the
11          Complaint on the grounds it is untimely and ill founded.

12    B.    Many of the current and former members of the Association are elderly and
13          depend heavily upon the expectation that they will receive some distribution
14          through the liquidation of the Association's assets to pay their "Retains".
15

16    C.    The Parties agree that protracted litigation, no matter who prevails, will work to
17          the detriment of the Association and its current and former members by delaying
18          the close of the sale of the Real Property, the distribution of net proceeds and
19          require all Parties to incur substantial costs and fees.

20    D.    The Parties have now agreed to settle the claims alleged in the Complaint and all
21          other claims between them, both in their individual capacities and their derivative
22          capacities.  The settlement as set forth below is conditioned upon the final
23          approval by the Court of all of its terms and conditions.

24       NOW THEREFORE IN CONSIDERATION OF THE RECITALS AND COVENANTS
25       AND CONDITIONS HEREINAFTER SET FORTH, IT IS AGREED:          Exhibit 1
26                                                                    Page 2 of 11

ROBERTS KAPLAN LLP
601 S.W. SECOND AVENUE, SUITE 1800
PORTLAND, OREGON 97204-3171
PHONE: 503-221-0607; FAX: 503-221-1510

301631E3 5

1    II.    THE AGREEMENT

2

3      1.    Incorporation. The Recitals are incorporated herein by reference.

4      2.    Definitions.    In addition to the terms defined elsewhere in this Stipulation,

5    as used in this Stipulation the following terms have the meanings specified below:

6

7          2.1    The Individual Defendants are all members of the Board of Directors

         of the Association. Plaintiffs have named Doe defendants in the Complaint

8

         and have indicated an intention to amend the Complaint to include the

9

         remaining members of the Board of Directors as the previously named Doe

10

         defendants. The Individual Defendants, the Doe defendants and the unnamed

11

         members of the Board of Directors are hereinafter collectively, referred to as

12

         the "Board".

13

14          2.2    "Plaintiffs" means Doug Weiss, Ron Elsner, Stanley G. Lomnicky,

15          Harvey E. Young and John Duvall.

16

         2.3    "Defendants" means Linnton Plywood Association, Jimmy Stahly,

17

         Gail Holter, Gene Elsey and Mike Balto.

18

19          2.4    "Parties" means collectively each of the Defendants and the Plaintiffs

20          for themselves and/or itself and derivatively on behalf of Linnton Plywood

21          Association.

22

         2.5    "Complaint" means the action filed by Plaintiffs against Defendants in

23

         the Circuit Court of the State of Oregon for the County of Multnomah Case

24

         No. 0807-10423.

25

26

Exhibit 1

Page 3 of 11

PAGE 3 – STIPULATION FOR SETTLEMENT

ROBERTS KAPLAN LLP
601 S.W. SECOND AVENUE, SUITE 1800
PORTLAND, OREGON 97204-3171
PHONE: 503-221-0607; FAX: 503-221-1510

30165182.5

1    2.6    "Related Persons" means and includes, as the case may be, each and

2    all of the Parties' past and/or present directors, officers, employees, partners,

3    principals, agents, attorneys, consultants, accountants, legal representatives,

4    insurers or co-insurers, predecessors, successors, assigns, spouses, heirs,

5    executors, estates, administrators and associates.

6

7    2.7    "Released Claims" means and includes any and all claims and causes

      of action, including unknown claims, charges, complaints, actions, suits,

8    controversies, demands, rights, liabilities, costs, damages, debts, expenses,

9    guarantees, promises and obligations of every nature and description

10   whatsoever, whether based in law or equity, on federal, state, local, statutory

11   or common law, rule or regulation, including, without limitation, claims for

12   negligence, gross negligence, breach of duty of care, breach of fiduciary duty,

13   breach of contract, declaratory judgment, judgment or injunctive relief,

14   whether concealed or hidden, known or unknown, suspected or unsuspected,

15   matured or not matured, contingent or fixed, asserted or that could have been

16   asserted in the Complaint or in any other forum or proceeding by Plaintiffs in

17   their individual or derivative capacity.

18

19   2.8    "Released Derivative Claims" means and includes any and all claims

20   and causes of action, including unknown claims, charges, complaints, actions,

21   suits, controversies, demands, rights, liabilities, costs, damages, debts,

22   expenses, guarantees, promises and obligations of every nature and

23   description whatsoever, whether based in law or equity, on federal, state,

24   local, statutory or common law, rule or regulation, including, without

25   limitation, claims for negligence, gross negligence, breach of duty of care,

26   breach of fiduciary duty, breach of contract, declaratory judgment, judgment

ROBERTS KAPLAN LLP
601 S.W. SECOND AVENUE, SUITE 1800
PORTLAND, OREGON 97204-3171
PHONE: 503-221 ˙˙˙˙ ˙˙˙ ˙˙˙ ˙˙˙-1510

Exhibit 1
Page 4 of 11

30163187.5

1    or injunctive relief, whether concealed or hidden, known or unknown,

2    suspected or unsuspected, matured or not matured, contingent or fixed,

3    asserted or that could have been asserted in the Complaint or in any other

4    forum or proceeding by the Plaintiffs on behalf of the Association.

5
     2.9    "Shareholder" means current and former members, or the heirs of
6
     either, who own a share of the Association's stock.
7

8    2.10   The Stipulation will be "Effective" upon the "Effective Date", which

9    means the first date by which all of the following events have been met and

10   have occurred:

11
              A.     All of the following necessary approvals have been obtained
12
              and shall be in effect with respect to the Stipulation: (i) all individual
13
              Plaintiffs have signed this Stipulation, (ii) all individual Defendants
14
              and the Association have signed this Stipulation, and (iii) the Plaintiffs
15
              and the Board have approved the process adopted by the Court for
16
              notifying Shareholders and Former Shareholders of this Settlement.
17

18            B.     The trial Court has entered a judgment approving the

19            Stipulation;

20
              C.     The judgment has become Final. For this purpose, "Final"
21
              shall mean that the time to appeal the judgment has passed without
22
              notice of appeal being filed by any party or person, or an appeal has
23
              been filed but the appeal has been dismissed with prejudice, or the
24
              appeal has been decided with no possibility of subsequent revival,
25
              modification or judicial review.
26

Exhibit 1
Page _5_ of _11_

ROBERTS KAPLAN LLP
601 S.W. SECOND AVENUE, SUITE 1800
PORTLAND, OREGON 97204-3171
PHONE: 503-221-0607; FAX: 503-221-1510

30163183.5

1          2.11    The term "Former Shareholders" means those persons who have

2          "Retains" on the books of the Association but no longer hold any shares of

3          stock of the Association.

4

5     3.     Terms. The Parties have agreed to abide by the terms of this Stipulation as

       follows:

6

7          3.1    The Parties will cooperate in preparing and filing with the trial Court a

8          motion for approval of the Stipulation for Settlement. If this Stipulation is not

9          approved by the Court either party may go forward with the Complaint.

10

11         3.2    The Plaintiffs and Individual Defendants agree that they will

         recommend to all Shareholders and to all current and former members the

12

         approval of this Stipulation.

13

14         3.3    Further, the Board will recommend approval of this Stipulation to all

15         Shareholders and all current and former members of the Association.

16

17         3.4    Upon the Effective Date, Plaintiffs for themselves in their individual

         capacity and in their representative capacity derivatively for the Association

18

         and all Related Persons release the Board from all of the Released Claims and

19

         the Released Derivative Claims except to the extent payments are due under

20

         the Modified Allocation and Distribution Plan.

21

22         3.5    Upon the Effective Date the allocation and distribution of net proceeds

23         from the sale and liquidation of the Association's assets shall be made as set

24         forth in the Modified Allocation and Distribution Plan attached hereto as

25         Exhibit A and incorporated herein by reference, and the Association's Bylaws

26                                     Exhibit 1

                                         Page _6_ of _11_

ROBERTS KAPLAN LLP
601 S.W. SECOND AVENUE, SUITE 1800
PORTLAND, OREGON 97204-3171
PHONE: 503-221-0607; FAX: 503-221-1510

30163183 5

1    shall be deemed amended with respect to such allocation and distribution by
2    the Modified Allocation and Distribution Plan.

3
4    3.6    Upon the Effective Date, Plaintiffs shall dismiss the Complaint with
     prejudice, with all Parties to bear their own costs and attorneys' fees except as
5
     provided in paragraph 3.7 below.
6

7    3.7    The Association shall pay $25,000 to Jordan Schrader Ramis PC,
8    attorneys for Plaintiffs, as partial reimbursement for Plantiffs' attorneys' fees
9    incurred in this matter. Such payment shall be payable together with other
10   debts of the Association when distribution of proceeds of the sale of the Real
11   Property is made pursuant to the Modified Allocation and Distribution Plan.

12
     4.    Miscellaneous Provisions
13

14   4.1    The Parties acknowledge that the Board shall have all the decision
15   making/authority vested to a cooperative Board of Directors under ORS
16   Chapter 62 and such powers and authority as vested pursuant to the
17   Association's existing Articles and Bylaws, as modified by this Stipulation.

18
     4.2    The Parties agree to cooperate to the extent reasonably necessary to
19
     effectuate and implement all terms and conditions of this Stipulation, its
20
     exhibits, and all of the transactions contemplated hereby and thereby, and in
21
     obtaining all necessary approvals therefore, and to exercise their best efforts to
22
     accomplish the foregoing terms and conditions of this Stipulation.
23

24   4.3    Each of the Parties represents and warrants that he, she or it has not
25   assigned or transferred, or purported to assign or transfer, to any Person any
26   claim herein released.                                         Exhibit 1
                                                                      Page 7 of 11

ROBERTS KAPLAN LLP
601 S.W. SECOND AVENUE, SUITE 1800
PORTLAND, OREGON 97204-3171
PHONE: 503-221-0607; FAX: 503-221-1510

30165183.5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

4.4     The Parties agree that terms of the settlement were negotiated in good faith by the Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

4.5     Neither the Stipulation nor the exhibits attached to the Stipulation, nor the settlement contained herein, nor any matter learned of in connection with the matters contemplated by the Stipulation and its exhibits or the settlement or any act performed or document executed pursuant to or in furtherance of the Stipulation and its exhibits or the settlement is or may be deemed or offered or received in evidence as a presumption, a concession, or an admission of any fault, liability, or wrongdoing, and, except as required to enforce this Stipulation, shall not be offered or received in evidence or otherwise used by any Person in this or any other lawsuit, action, litigation or proceedings, whether civil, criminal, or administrative. The foregoing covenants shall survive notwithstanding the fact that this Stipulation is not approved by the Trial Court or the settlement set forth in this Stipulation is terminated or fails to become Effective in accordance with its terms, or the Effective Date does not occur for any reason. Upon the Judgment becoming Final, any of the Defendants and/or the other Released Persons may file the Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, full faith and credit, release, good faith settlement, judgment bar, or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

Exhibit 1
Page  5  of  11

PAGE 8 – STIPULATION FOR SETTLEMENT

ROBERTS KAPLAN LLP
601 S.W. SECOND AVENUE, SUITE 1800
PORTLAND, OREGON 97204-3171
PHONE: 503-221-0607; FAX: 503-221-1510

30163183.5

1    4.6    This Stipulation may be amended or modified only by a written

2    instrument signed by or on behalf of all of the Parties, or their respective

3    successors-in-interest.

4
     4.7    No provision of this Stipulation may be waived, other than by an
5
     express waiver signed by the party to be charged. No waiver of any provision
6
     in one instance shall be construed as a continuing waiver as to that provision
7
     in any other instance, nor as a waiver of any other provision of this Stipulation
8
     or any of its exhibits.
9

10   4.8    Except as otherwise provided herein, this Stipulation and the Exhibit

11   attached hereto, constitute the entire agreement among the Parties with respect

12   to the subject matter herein and therein, and no other representations,

13   warranties or inducements have been made to any party concerning the

14   Stipulation.

15
     4.9    The Parties state that there are no additional agreements made in
16
     connection with the proposed settlement, except as stated herein.
17

18   4.10   Each Person executing the Stipulation hereby warrants that such

19   Person has the full authority to do so.

20
     4.11   This Stipulation may be executed in one or more counterparts. All
21
     executed counterparts and each of them shall be deemed to be one and the
22
     same instrument. A complete set of original executed counterparts shall be
23
     filed with the Court.
24

25   4.12   This Stipulation shall be binding upon, and inure to the benefit of, the

26   successors and assigns of the Parties hereto.              Exhibit 1
                                                                Page 9 of 11

ROBERTS KAPLAN LLP
601 S.W. SECOND AVENUE, SUITE 1800
PORTLAND, OREGON 97204-3171
PHONE: 503-221-0607; FAX: 503-221-1510

301623835

1           4.13    The Court shall retain jurisdiction with respect to implementation and

2     enforcement of the terms of this Stipulation, and all Parties hereto submit to

3     the jurisdiction of the Court for purposes of implementing and enforcing the

4     settlement embodied in this Stipulation.

5

6          4.14    This Agreement and the Exhibit hereto shall be considered to have

7     been negotiated, executed and delivered, and to be wholly performed, in the

8     State of Oregon, and the rights and obligations of the Parties to this

9     Agreement shall be construed and enforced in accordance with, and governed

10     by, the internal, substantive laws of the State of Oregon.

11     IN WITNESS WHEREOF, this Stipulation is agreed to by:

12

13     DATED this _____ day of October, 2009.     _____

                                                 Doug Weiss

14

15     DATED this ___ day of October, 2009.     _____

                                                 Ron Elsner

16

17     DATED this ___ day of October, 2009.     _____

                                                 Stanley G. Lomnicky

18

19

20     DATED this ___ day of October, 2009.     _____

                                                 Harvey E. Young

21

22     DATED this ___ day of October, 2009.     _____

23                                                  John Duvall

24

25                                                   Exhibit 1

26                                           Page _10_ of _11_

ROBERTS KAPLAN LLP
601 S.W. SECOND AVENUE, SUITE 1800
PORTLAND, OREGON 97204-3171
PHONE: 503-221-0607; FAX: 503-221-1510

301653183.5

1   DATED this ___ day of October, 2009.   LINNTON PLYWOOD ASSOCIATION

2
                                          By:_____
3                                         Its:_____

4
5   DATED this ___ day of October, 2009.   _____
                                          Jimmy Stahly
6

7   DATED this ___ day of October, 2009.   _____
                                          Gail Holter
8

9   DATED this ___ day of October, 2009.   _____
10                                        Gene Elsey

11
    DATED this ___ day of October, 2009.   _____
12                                        Mike Balto

13

14       This Stipulation was reviewed and approved by the duly authorized attorneys for the
    aforementioned Parties:
15

16  DATED this ___ day of October, 2009.   JORDAN SCHRADER RAMIS PC

17

18                                        _____
                                          Edward H. Trompke, OSB No. 843653
19                                        Of Attorneys for Plaintiffs

20

21

22
    DATED this ___ day of October, 2009.   ROBERTS KAPLAN LLP
23

24                                        _____
                                          Paul B. George, OSB No. 990090
25                                        Of Attorneys for Defendants
                                                                    Exhibit 1
26                                                                  Page 11 of 11

ROBERTS KAPLAN LLP
601 S.W. SECOND AVENUE, SUITE 1800
PORTLAND, OREGON 97204-3171
PHONE: 503-221-0607; FAX: 503-221-1510

301631E2.5

EXHIBIT A TO STIPULATION FOR SETTLEMENT

The settlement agreement between the parties calls for certain adjustments to first be made before distribution of proceeds, if any, occurs. The distribution generally anticipates refunding of retains first, payment for stock next, and any residual being distributed on a patronage basis.

The allocating adjustments which are first made and the order in which they are made is as follows:

1. First, to offset the net after tax losses for the fiscal years commencing on or after April 1, 2002;

2. Second, to reinstate patronage credits previously reduced for the fiscal year ended March 31, 2002 by the net losses for such fiscal year in the same proportion that such losses were allocated to the members; and,

3. Third, the balance (the "New Credits") to the Shareholders (those who currently are owners of record of membership stock) and Former Shareholders (those who previously were but no longer are owners of record of membership stock) who have net retains or were record owners of membership stock as of March 31, 2001, (the "Current and Prior Shareholders") on a patronage basis based on hours worked by the Current and Prior Shareholders in the following sequence: the balance up to $1,690,000 will be allocated to the Current and Prior Shareholders in two pools: first, (a) $140/1690^{th}$ to the those who have hours of work during the period from April 1, 1984 to March 31, 1991 (the "Pool 1 Current and Prior Shareholders"); and, second, (b) $1550/1690^{th}$ to the those who have hours of work during the period from April 1, 1991 to March 31, 2001 (the "Pool 2 Current and Prior Shareholders"). Each allocation will be based on hours of work during the respective pool period.

4. The balance, if any, will be allocated 50% to the Pool 1 Current and Prior Shareholders and 50% to the Pool 2 Current and Prior Shareholders to be allocated among such Current and Prior Members based on the hours worked by each during their respective pool period.

Based on the foregoing adjustments, distribution to the Current and Prior Shareholders of any proceeds remaining after payment of or reservation for all liabilities or anticipated liabilities will be in the order as follows:

1. Payment to the Current and Prior Shareholders pro rata up to an amount equal to the retains as of March 31, 2001, including the retains reinstated per the above adjustment.

2. Payment of the balance, if any, to the Shareholders of record pro rata up to the par value of each outstanding share of membership stock.

3. Payment to the Current and Prior Shareholders pro rata, if any, for the New Credits, if any, created per the above adjustment.

OCT-22-2009 07:42 PM   LINNTON.PLYWOOD          503 286 6489          P.01

**7/1/09 TO 6/30/10 REAL PROPERTY TAX STATEMENT**

MULTNOMAH COUNTY, OREGON * P.O. BOX 2716  * PORTLAND, OREGON 97208-2716
Phone: (503) 988-3326    WWW.MULTCOTAX.ORG

**PROPERTY DESCRIPTION**

SITUS: 10504 NW ST HELENS RD          **CODE AREA:**    001
SECTION 02 1N 1W, TL 100 22.72 ACRES

**ACCOUNT NO:**    R323802

LINNTON PLYWOOD ASSN
10504 NW SAINT HELENS RD
PORTLAND, OR 97231-1049

| **VALUES:** | **LAST YEAR** | **THIS YEAR** |
|---|---|---|
| MARKET VALUES: | | |
| LAND | 4,998,220 | 4,998,220 |
| STRUCTURE | 943,110 | 943,110 |
| TOTAL RMV VALUE | 5,941,330 | 5,941,330 |
| | | |
| TAXABLE VALUES: | | |
| ASSESSED VALUE | 4,007,620 | 4,127,840 |

**PROPERTY TAXES:**    $84,897.42    $89,931.57

Please read the Tax Information insert.
To pay online go to www.multcotax.org

**TAX PAYMENT OPTIONS**
(See back of statement for payment instructions)

| | **Pay By** | **Discount** | **Net Amount Due** |
|---|---|---|---|
| **In Full** | 11/16/09 | 2,697.95 | $289,822.49 |
| **2/3** | 11/16/09 | 1,199.09 | $261,344.16 |
| **1/3** | 11/16/09 | NONE | $232,566.06 |

PLEASE MAKE PAYMENT TO: Multnomah County

2009-10 CURRENT TAX BY DISTRICT:

| | |
|---|---|
| MULTNOMAH ESD | 1,710.58 |
| PORTLAND COMMUNITY COLLEGE | 1,047.65 |
| PORTLAND PUBLIC SCHOOL | 19,509.82 |
| PORTLAND PUBLIC SCHOOL LOC OP | 4,669.00 |
| EDUCATION TAXES: | $26,937.05 |
| | |
| PORT OF PORTLAND | 264.59 |
| CITY OF PORTLAND | 17,102.47 |
| METRO | 362.84 |
| WEST MULT SOIL & WATER CD | 137.04 |
| MULTNOMAH COUNTY | 16,222.82 |
| CITY OF PORTLAND CHILD LOC OP | 1,518.63 |
| MULT CO LIBRARY LOCAL OPT TAX | 3,353.87 |
| PORTLAND FIRE/POLICE PENSION | 9,813.11 |
| URBAN RENEWAL - PORTLAND | 9,859.74 |
| GENERAL GOVERNMENT TAXES: | $58,635.11 |
| | |
| CITY OF PORTLAND BONDS | 816.49 |
| METRO BONDS | 1,281.28 |
| MULTNOMAH COUNTY BONDS | 633.62 |
| TRI-MET TRANSPORTATION BONDS | 324.86 |
| PORTLAND COMM COLLEGE BONDS | 1,303.16 |
| BONDS AND MISC TAXES: | $4,359.41 |
| | |
| 2009-10 TAX (Before Discount) | $89,931.57 |

DELINQUENT TAXES: (2007-2008)    $202,588.87

**TOTAL (After Discount):**    $289,822.49

PLEASE DETACH STUB AND RETURN WITH PAYMENT. RETAIN TOP PORTION FOR YOUR RECORDS.

| OREGON PROPERTY TAX YEAR | PLEASE MAKE PAYMENTS TO: | Code Area | Account Number |
|---|---|---|---|
| July 1, 2009 to June 30, 2010 | Tax Collector, Multnomah County | 001 | R323802 |
| **Multnomah County Property Taxes** | Payment options: | Net Amount | Amount Paid |
| Property Address | IN FULL 11-16-2009 | $289,822.49 | |
| 10504 NW ST HELENS RD | 2/3   11-16-2009 | $261,344.16 | |
| PORTLAND, OR 97231 | 1/3   11-16-2009 | $232,566.06 | |
| DO NOT WRITE IN SPACE BELOW | Discount is lost and interest applied after due date. | | |

0001323802    0023256606    0026134416    0028982249    11

WRITE MAILING ADDRESS CHANGES IN AREA BELOW

LINNTON PLYWOOD ASSN
10504 NW SAINT HELENS RD
PORTLAND, OR 97231-1049

150-353 008 (Rev. 6-09)
035087

OCT-22-2009 07:42 PM  LINNTON.PLYWOOD          503 286 6489          P.02

## 7/1/09 TO 6/30/10 REAL PROPERTY TAX STATEMENT
MULTNOMAH COUNTY, OREGON * P.O. BOX 2716  * PORTLAND, OREGON 97208-2716
Phone: (503) 988-3326   WWW.MULTCOTAX.ORG

**PROPERTY DESCRIPTION**

SITUS: 10504 W1/ NW ST HELENS RD
SECTION 02 1N 1W, TL 200 1.11 ACRES

**CODE AREA:**  001

**ACCOUNT NO:**  R496306

LINNTON PLYWOOD ASSN
10504 NW SAINT HELENS RD
PORTLAND, OR 97231-1049

**VALUES:**

| | LAST YEAR | THIS YEAR |
|---|---|---|
| MARKET VALUES: | | |
| LAND | 341,870 | 341,870 |
| STRUCTURE | 0 | 0 |
| TOTAL RMV VALUE | 341,870 | 341,870 |
| | | |
| TAXABLE VALUES: | | |
| ASSESSED VALUE | 124,030 | 127,750 |

**PROPERTY TAXES:**  $2,627.47   $2,783.25

Please read the Tax Information insert.
To pay online go to www.multcotax.org

### TAX PAYMENT OPTIONS
(See back of statement for payment instructions)

| | Pay By | Discount | Net Amount Due |
|---|---|---|---|
| In Full | 11/16/09 | 83.50 | $8,998.46 |
| 2/3 | 11/16/09 | 37.11 | $8,117.10 |
| 1/3 | 11/16/09 | NONE | $7,226.46 |

PLEASE MAKE PAYMENT TO: Multnomah County

2009-10 CURRENT TAX BY DISTRICT:

| | |
|---|---|
| MULTNOMAH ESD | 52.94 |
| PORTLAND COMMUNITY COLLEGE | 32.42 |
| PORTLAND PUBLIC SCHOOL | 603.80 |
| PORTLAND PUBLIC SCHOOL LOC OP | 144.50 |
| EDUCATION TAXES: | $833.66 |
| | |
| PORT OF PORTLAND | 8.19 |
| CITY OF PORTLAND | 529.29 |
| METRO | 11.23 |
| WEST MULT SOIL & WATER CD | 4.24 |
| MULTNOMAH COUNTY | 502.07 |
| CITY OF PORTLAND CHILD LOC OP | 47.00 |
| MULT CO LIBRARY LOCAL OPT TAX | 103.80 |
| PORTLAND FIRE/POLICE PENSION | 303.70 |
| URBAN RENEWAL - PORTLAND | 305.15 |
| GENERAL GOVERNMENT TAXES: | $1,814.67 |
| | |
| CITY OF PORTLAND BONDS | 25.27 |
| METRO BONDS | 39.65 |
| MULTNOMAH COUNTY BONDS | 19.61 |
| TRI-MET TRANSPORTATION BONDS | 10.05 |
| PORTLAND COMM COLLEGE BONDS | 40.34 |
| BONDS AND MISC TAXES: | $134.92 |
| | |
| 2009-10 TAX (Before Discount) | $2,783.25 |

DELINQUENT TAXES: (2007-2008)   $6,298.71

TOTAL (After Discount):   $8,998.46

PLEASE DETACH STUB AND RETURN WITH PAYMENT. RETAIN TOP PORTION FOR YOUR RECORDS.

| OREGON PROPERTY TAX YEAR | PLEASE MAKE PAYMENTS TO: | Code Area | Account Number |
|---|---|---|---|
| July 1, 2009 to June 30, 2010 | Tax Collector, Multnomah County | 001 | R496306 |

| Multnomah County Property Taxes | Payment options: | Net Amount | Amount Paid |
|---|---|---|---|
| Property Address | IN FULL 11-16-2009 | $8,998.46 | |
| 10504 WI/ NW ST HELENS RD | | | |
| PORTLAND, OR 97231 | 2/3   11-16-2009 | $8,117.10 | |
| DO NOT WRITE IN SPACE BELOW | 1/3   11-16-2009 | $7,226.46 | |
| | Discount is lost and interest applied after due date. | | |

0001496306    0000722646    0000811710    0000899846    19

**WRITE MAILING ADDRESS CHANGES IN AREA BELOW**

LINNTON PLYWOOD ASSN
10504 NW SAINT HELENS RD
PORTLAND, OR 97231-1049

150-353-008 (Rev. 6-09)
J55889

OCT-22-2009 07:43 PM   LINNTON.PLYWOOD          503 286 6489              P.03

## 7/1/09 TO 6/30/10 REAL PROPERTY TAX STATEMENT
MULTNOMAH COUNTY, OREGON * P.O. BOX 2716 * PORTLAND, OREGON 97208-2716
Phone: (503) 988-3326   WWW.MULTCOTAX.ORG

| PROPERTY DESCRIPTION | ACCOUNT NO: | R323803 |
|---|---|---|

SITUS: 10504 WI/ NW ST HELENS RD       **CODE AREA:**   001
SECTION 02 1N 1W, TL 800 0.91 ACRES

**2009-10 CURRENT TAX BY DISTRICT:**

| | |
|---|---|
| MULTNOMAH ESD | 39.91 |
| PORTLAND COMMUNITY COLLEGE | 24.44 |
| PORTLAND PUBLIC SCHOOL | 455.15 |
| PORTLAND PUBLIC SCHOOL LOC OP | 108.92 |
| EDUCATION TAXES: | $628.42 |

LINNTON PLYWOOD ASSN
10504 NW SAINT HELENS RD
PORTLAND, OR 97231-1049

| | |
|---|---|
| PORT OF PORTLAND | 6.17 |
| CITY OF PORTLAND | 398.99 |
| METRO | 8.46 |
| WEST MULT SOIL & WATER CD | 3.20 |
| MULTNOMAH COUNTY | 378.47 |
| CITY OF PORTLAND CHILD LOC OP | 35.43 |
| MULT CO LIBRARY LOCAL OPT TAX | 78.24 |
| PORTLAND FIRE/POLICE PENSION | 228.93 |
| URBAN RENEWAL - PORTLAND | 230.02 |
| GENERAL GOVERNMENT TAXES: | $1,367.91 |

| VALUES: | LAST YEAR | THIS YEAR |
|---|---|---|
| MARKET VALUES: | | |
| LAND | 241,050 | 241,050 |
| STRUCTURE | 0 | 0 |
| TOTAL RMV VALUE | 241,050 | 241,050 |
| | | |
| TAXABLE VALUES: | | |
| ASSESSED VALUE | 93,500 | 96,300 |

| | |
|---|---|
| CITY OF PORTLAND BONDS | 19.05 |
| METRO BONDS | 29.89 |
| MULTNOMAH COUNTY BONDS | 14.78 |
| TRI-MET TRANSPORTATION BONDS | 7.58 |
| PORTLAND COMM COLLEGE BONDS | 30.40 |
| BONDS AND MISC TAXES: | $101.70 |

**PROPERTY TAXES:**   $1,980.71   $2,098.03

Please read the Tax Information Insert.
To pay online go to www.multcotax.org

2009-10 TAX (Before Discount)   $2,098.03

### TAX PAYMENT OPTIONS
(See back of statement for payment instructions)

| | Pay By | Discount | Net Amount Due |
|---|---|---|---|
| In Full | 11/16/09 | 62.94 | $6,783.38 |
| 2/3 | 11/16/09 | 27.97 | $6,119.01 |
| 1/3 | 11/16/09 | NONE | $5,447.64 |

PLEASE MAKE PAYMENT TO: Multnomah County

DELINQUENT TAXES: (2007-2008)   $4,748.29

| TOTAL (After Discount): | $6,783.38 |
|---|---|

PLEASE DETACH STUB AND RETURN WITH PAYMENT. RETAIN TOP PORTION FOR YOUR RECORDS.

| OREGON PROPERTY TAX YEAR | PLEASE MAKE PAYMENTS TO: | Code Area | Account Number |
|---|---|---|---|
| July 1, 2009 to June 30, 2010 | Tax Collector, Multnomah County | 001 | R323803 |
| Multnomah County Property Taxes | Payment options: | Net Amount | Amount Paid |
| Property Address | IN FULL 11-16-2009 | $6,783.38 | |
| 10504 WI/ NW ST HELENS RD | 2/3   11-16-2009 | $6,119.01 | |
| PORTLAND, OR 97231 | 1/3   11-16-2009 | $5,447.64 | |
| DO NOT WRITE IN SPACE BELOW | Discount is lost and interest applied after due date | | |

0001323803   0000544764   0000611901   0000676338   10

**WRITE MAILING ADDRESS CHANGES IN AREA BELOW**

LINNTON PLYWOOD ASSN
10504 NW SAINT HELENS RD
PORTLAND, OR 97231-1049

150-553-004 (Rev. 6-05)
735888

POLICY:                        CP646638
EFFECTIVE:                     4/23/73-4/23/76

LIABILITY FORM:                C-10 1/73
CONDITIONS FORM:               C-1652 1/73
POLLUTION EXCLUSION:           C-1599 1/72

## BLANKET LIABILITY INSURANCE
### (COVERAGE SUPPLEMENT)

17CP 14.2

**1. COVERAGE A – BODILY INJURY** –except Automobile
**COVERAGE B – PROPERTY DAMAGE** – except Automobile
**COVERAGE C – BODILY INJURY** – Automobile
**COVERAGE D – PROPERTY DAMAGE** – Automobile

With respect to such of the foregoing coverages as have become effective under the provisions of the declarations page of this policy, the company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies, caused by an **occurrence**, the company shall have the right and duty to defend any suit against the **insured** seeking damages on account of such **bodily injury** or **property damage**, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient. The company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

### Exclusions

This insurance does not apply:

(a) to **bodily injury** or **property damage** included within the **war hazard** with respect to liability assumed by the **insured** under any contract or agreement or expenses for first aid under the Supplementary Payments provision;

(b) to any obligation for which the **insured** or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(c) to **bodily injury** to any employee of the **insured** arising out of and in the course of his employment by the **insured**; but this exclusion does not apply to liability assumed by the **insured** under any contract;

(d) to **property damage:** (1) to property owned or transported by the **insured**; (2) to property occupied by or rented to the **insured**, except damage to a rented residence or private garage caused by a **private passenger automobile**; (3) to property under **bailment** to the **insured** (except injury to or destruction of such property arising out of the use of elevators or escalators or to liability assumed under sidetrack agreements); (4) to that particular part of any property (i) upon which operations are being performed by or on behalf of the **insured**, or (ii) out of which such injury or destruction arises; (5) to premises alienated by the **named insured** arising out of such premises or any part thereof; (6) to the **named insured's products** arising out of such products or any part of such products; (7) to work performed by or on behalf of the **named insured** arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(e) to **damages** claimed for the withdrawal, inspection, repair, replacement, or loss of use of the **named insured's products** or work completed by or for the **named insured** or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(f) to **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, loading or unloading of any **mobile equipment** while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for any such contest or activity;

(g) to loss of use of tangible property which has not been physically injured or destroyed resulting from

(1) a delay in or lack of performance by or on behalf of the named **insured** of any contract or agreement or

(2) the failure of the **named insured's products** or work performed by or on behalf of the **named insured** to meet the level of performance, quality, fitness or durability warranted or represented by the **named insured;**

but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the **named insured's products** or work performed by or on behalf of the **named insured** after such products or work have been put to use by any person or organization other than the **insured;**

(h) to **contractual liability** assumed by the **insured**, if the **insured** or his indemnitee is an architect, engineer or surveyor, for bodily **injury** or **property damage** arising out of the rendering of or the failure to render professional services by such insured or indemnitee, including

(1) the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications and .

(2) supervisory, inspection or engineering services.

(i) to **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, loading or unloading of (1) any aircraft owned or operated by or rented or loaned to any **insured,** or (2) any other aircraft operated by any person in the course of his employment by any **insured;**

(j) under Coverages A and B, to liability or injury arising out of or in connection with domestic activities of any **insured** which are not connected with the business of any **insured.**

### 2. COVERAGE E – PREMISES MEDICAL PAYMENTS

The company will pay to or for each person who sustains **bodily injury** caused by accident all reasonable **medical expense** incurred within one year from the date of the accident on account of such **bodily injury**, provided such **bodily injury** arises out of (a) a condition in the **insured premises** or (b) operations which are necessary to which the **named insured** is afforded coverage for **bodily injury** liability under this policy.

### Exclusions

This insurance does not apply:

(a) to **bodily injury**

(1) arising out of the ownership, maintenance, operation, use, loading or unloading of

(i) any **automobile** or aircraft owned or operated by or rented or loaned to any **insured,** or

(ii) any other **automobile** or aircraft operated by any person in the course of his employment by any **insured;**

but this exclusion does not apply to the parking of an **automobile** on the **insured premises,** if such **automobile** is not owned by or rented or loaned to any **insured;**

(2) arising out of the ownership, maintenance, operation, use, loading or unloading of any **mobile equipment** while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for any such contest or activity;

(3) arising out of and in the course of the transportation of **mobile equipment** by an **automobile** owned or operated by or rented or loaned to any **insured;**

(b) to **bodily injury**

(1) included within the **completed operations hazard** or the **products hazard;**

(2) arising out of operations performed for the named **insured** by independent contractors other than (i) maintenance and repair of the **insured premises** or (ii) structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

(continued on reverse side)

PRINTED IN U.S.A.

17CP 20.1

17CP 20.2
(an) needs
to be added

(3) resulting from the selling, serving or giving of any alcoholic beverage (i) in violation of any statute, ordinance or regulation, (ii) to a minor, (iii) to a person under the influence of alcohol or (iv) which causes or contributes to the intoxication of any person, if the **named insured** is a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages or, if not so engaged, is an owner or lessor of premises used for such purposes but only part (i) of this exclusion (b) (3) applies when the **named insured** is such an owner or lessor;

(4) included with the **war hazard;**

(c) to **bodily injury**

(1) to the **named insured,** any partner therein, any tenant or other person regularly residing on the **insured premises** or any employee of any of the foregoing if the **bodily injury** arises out of and in the course of his employment therewith;

(2) to any other tenant if the **bodily injury** occurs on that part of the **insured premises** rented from the **named insured** or to any employee of such a tenant if the **bodily injury** occurs on the tenant's part of the **insured premises** and arises out of and in the course of his employment for the tenant;

(3) to any person while engaged in maintenance and repair of the **insured premises** or alteration, demolition or new construction at such premises;

(4) to any person if any benefits for such **bodily injury** are payable or required to be provided under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(5) to any person practicing, instructing or participating in any physical training, sport, athletic activity or contest;

(d) to any **medical expense** for services by the **named insured,** any employee thereof or any person or organization under contract to the **named insured** to provide such services.

### 3. PERSONS INSURED

Each of the following is an **insured** under this insurance to the extent set forth below:

(a) the **named insured** and, if an individual, the spouse of such **named insured** if a resident of the same household;

(b) for Coverages A and B

(1) if the **named insured** is designated in the declarations as

(i) a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

(ii) other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such;

(2) any person (other than an employee of the **named insured**) or organization while acting as real estate manager for the **named insured;** and

(3) with respect to the operation, for the purpose of locomotion upon a public highway, of **mobile equipment** registered under any motor vehicle registration law,

(i) an employee of the **named insured** while operating any such equipment in the course of his employment, and

(ii) any other person while operating with the permission of the **named insured** any such equipment registered in the name of the **named insured** and any person or organization legally responsible for such operation, but only if there is no other valid and collectible insurance available, either on a primary or excess basis, to such person or organization;

provided that no person or organization shall be an **insured** under this paragraph (3) with respect to:

(A) **bodily injury** to any fellow employee of such person injured in the course of his employment, or

(B) **property damage** to property owned by, rented to, in charge of or occupied by the **named insured** or the employer of any person described in subparagraph (ii).

This insurance does not apply to **bodily injury** or **property damage** arising out of the conduct of any partnership or joint venture of which the **insured** is a partner or member and which is not designated in this policy as a **named insured.**

(c) for Coverages C

(1) any partner or executive officer thereof, but with respect to a **non-owned automobile** only while such automobile is being used in the business of the **named insured;**

(2) any other person while using an **owned automobile** or a hired **automobile** with the permission of the **named insured,** provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to **bodily injury** or **property damage** arising out of the loading or unloading thereof, such other person shall be an **insured** only if he is: (i) a lessee or borrower of the **automobile,** or (ii) an employee of the **named insured** or of such lessee or borrower;

(3) any other person or organization but only with respect to his or its liability because of acts or omissions of the **named insured** or an **insured** under (1) or (2) above.

None of the following is an **insured:**

(1) any person while engaged in the business of his employer with respect to **bodily injury** to any fellow employee of such person injured in the course of his employment;

(2) the owner or lessee (of whom the **named insured** is a sublessee) of a **hired automobile,** or the owner of a **non-owned automobile,** or the owner of an **automobile** leased under contract for one year or more to the **named insured,** or any agent or employee of any such owner or lessee;

(3) an executive officer with respect to an **automobile** owned by him or by a member of his household;

(4) any person while employed in or otherwise engaged in duties in connection with an **automobile business,** other than an **automobile business** operated by the **named insured.**

This insurance does not apply to **bodily injury** or **property damage** arising out of (1) a **non-owned automobile** used in the conduct of any partnership or joint venture of which the **insured** is a partner or member and which is not designated in this policy as a **named insured** or (2) if the **named insured** is a partnership, an **automobile** owned by or registered in the name of a partner thereof, unless such partner is named as an individual **named insured.**

### 4. LIMITS OF LIABILITY

For the purpose of determining the limit of the company's liability, all **bodily injury** and **property damage** arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one **occurrence.**

Regardless of the number of **insureds** under this policy, or **automobiles** to which this policy applies, the company's liability is limited as follows:

(a) Combined Limits Plan

The limit of liability under the Combined Limits Plan expressed in the declarations as applicable to "each occurrence" is the total limit of the company's liability under the **bodily injury** liability and **property damage** liability coverages combined for all damages as the result of any one **occurrence** provided:

(1) with respect to all damages included within the (i) **completed operations hazard** and the (ii) **products hazard,** such limit of liability shall be the total limit of the company's liability during each annual policy period as the result of one or more than one **occurrence;**

(2) with respect to all damages arising out of **property damage** (other than **automobile,** the **completed operation hazard,** or the **products hazard**) such limit of liability shall be the total limit of the company's liability during each annual policy period as the result of one or more than one **occurrence,** but said limit of liability shall apply separately to each project with respect to operations being performed away from premises owned by or rented to the **insured;**

(3) with respect to any **occurrence** for which the notice of this policy is given in lieu of security, or when this policy is certified as proof of financial responsibility under the provisions of the motor vehicle financial responsibility law of any state or province, such limit of liability shall be applied in accordance with the applicable terms of such law, except that the total limit of liability shall not be reduced

(b) Divided Limits Plan

Coverage A –

The total liability of the company for all **damages** including damages for care and loss of services because of **bodily injury** sus-

(continued on following page)

tained by one or more pe        is the result of any one **occurrence** shall not exceed the lim..       **bodily injury** liability stated in the declarations as applicable to "each **occurrence.**" The total liability of the company for all **damages** because of (1) all **bodily injury** included within the **completed operations hazard** and (2) all **bodily injury** included within the **products hazard** shall not exceed the limit of **bodily injury** liability stated in the declarations as "aggregate."

### Coverage B –

The total liability of the company for all **damages** because of all **property damage** sustained by one or more persons or organizations as the result of any one **occurrence** shall not exceed the limit of **property damage** liability stated in the declarations as applicable to "each **occurrence.**" The total liability of the company for all **damages** because of all **property damage** to which this coverage applies shall not exceed the limit of **property damage** liability stated in the declarations as "aggregate."

Such aggregate limit shall apply separately with respect to each project away from premises owned by or rented to the **named insured.**

Aggregate limits of liability as stated in this policy shall apply separately to each annual policy period.

### Coverages C and D –

(1) The limit of **bodily injury** liability expressed in the declarations as applicable to "each person" is the limit of the company's liability for all damages because of **bodily injury** sustained by one person as the result of any one **occurrence;** but the total liability of the company for all damages because of **bodily injury** sustained by two or more persons as the result of any one **occurrence** shall not exceed the limit of **bodily injury** liability stated in the declarations as applicable to "each **occurrence.**"

(2) The total liability of the company for all damages because of all **property damage** sustained by one or more persons or organizations as the result of any one **occurrence** shall not exceed the limit of **property damage** liability stated in the declarations as applicable to "each **occurrence.**"

### Coverage E –

The limit of liability for Premises Medical Payments Coverage stated in the declarations as applicable to "each person" is the limit of the company's liability for all **medical expense** for **bodily injury** to any one person as the result of any one accident; but subject to the above provision respecting "each person," the total liability of the company under Premises Medical Payments Coverage for all **medical expense** for **bodily injury** 'to two or more persons as the result of any one accident shall not exceed the limit of liability stated in the declarations as applicable to "each accident."

### 5. POLICY PERIOD

This insurance applies only to **bodily injury** or **property damage** which occurs: (a) for Coverages A, B, C and D, during the policy period within the **policy territory;** (b) for Coverage E, during the policy period within the United States of America, its territories or possessions, or Canada.

### 6. ADDITIONAL DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of the policy):

"**aircraft or automobile hazard**" includes **bodily injury** and **property damage** arising out of the ownership, maintenance, operation, use, loading or unloading of any aircraft, **automobile** or **midget automobile;** but this hazard does not include (a) **bodily injury** to any **domestic employee** arising out of and in the course of his employment by any **insured** except while such employee is engaged in the operation or maintenance of aircraft or (b) except with respect to aircraft, **bodily injury** or property damage occurring on the **insured premises** or

the ways in        .lely adjoining on land or (c) **bodily injury** or **property damage** at.. .j out of the use of a land public conveyance by the **insured** as a passenger.

"**automobile business**" means the business or occupation of selling, repairing, servic ng, storing or parking **automobiles;**

"**contractual liability**" means liability expressly assumed under a contract or agreement provided. however, that **contractual liability** shall not be construed as including liability under a warranty of the fitness or quality of the **named insured's products** or a warranty that work performed by or on behalf of the **named insured** will be done in a workmanlike manner;

"**domestic employee**" means an employee of an **insured** performing duties not in connection with the **business** of the **insured;**

"**fire hazard**" includes **property damage** to any **premises** not owned by an **insured** and to house furnishings therein if such **property damage** arises out of (a) fire, (b) explosion, or (c) smoke or smudge caused by sudden, unusual and faulty operation of any heating or cooking unit;

"**hired automobile**" means an **automobile** not owned by the **named insured** which is used under contract in behalf of, or loaned to, the **named insured**, provided such **automobile** is not owned by, leased under contract for one year or more, or registered in the name of (a) a partner or executive officer of the **named insured** or (b) an employee or agent of the **named insured** who is granted an operating allowance of any sort for the use of such **automobile;**

### "insured premises"

for Coverage E, means all premises (except such premises as defined under paragraph (b) of this definition) owned by or rented to the **named insured** with respect to which the **named insured** is afforded coverage for **bodily injury** liability under this policy, and includes the ways immediately adjoining on land;

"**medical expense**" means expenses for necessary medical, surgical, X-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services;

"**midget automobile**" means a land motor vehicle of the type commonly referred to as a "midget automobile," "kart," "go-kart," "speed-mobile" or by a comparable name, whether commercially built or otherwise;

"**non-owned automobile**" means an **automobile** which is neither an **owned automobile** nor a **hired automobile;**

"**owned automobile**" means an automobile owned by or leased under contract for one year or more to the **named insured;**

"**private passenger automobile**" means a four wheel private passenger, station wagon or jeep type **automobile;**

"**trailer**" includes semitrailer but does not include **mobile equipment;**

"**war hazard**" includes all **bodily injury** and **property damage** due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing.

### 7. ADDITIONAL CONDITIONS

#### (a) Medical Reports; Proof and Payment of Claim

As soon as practicable the injured person or someone on his behalf shall give to the company written proof of claim, under oath if required, and shall, after each request from the company, execute authorization to enable the company to obtain medical reports and copies of records. The injured person shall submit to physical examination by physicians selected by the company when and as often as the company may reasonably require. The company may pay the injured person or any person or organization rendering the services and the payment shall reduce the amount payable hereunder for such injury. Payment hereunder shall not constitute an admission of liability of any person or, except hereunder, of the company.

#### (b) Excess Insurance – Hired and Non-Owned Automobiles

With respect to a **hired automobile** or a **non-owned automobile**, this insurance shall be excess insurance over any other valid and collectible insurance available to the **insured**.

## COMMERCIAL POLICY
### CONDITIONS APPLICABLE TO ALL SECTIONS

The Company agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and subject to the limits of liability, amounts of insurance, exclusions, conditions and other terms of this policy to insure the insured in accordance with the provisions of the schedule or schedules attached hereto and made a part hereof.

A. **Premium:** All premiums for this policy shall be computed in accordance with the company's rules, rates, rating plans, premiums and minimum premiums applicable to the insurance afforded herein.

Premium designated in this policy as "advance premium" is a deposit premium only which shall be credited to the amount of the earned premium due at the end of the policy period. At the close of each period (or part thereof terminating with the end of the policy period) designated in the declarations as the audit period the earned premium shall be computed for such period and, upon notice thereof to the named insured, shall become due and payable. If the total earned premium for the policy period is less than the premium previously paid, the company shall return to the named insured the unearned portion paid by the named insured.

The named insured shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to the company at the end of the policy period and at such times during the policy period as the company may direct.

B. **Liberalization Clause:** If during the period that insurance is in force under this policy, or within 45 days prior to the inception date thereof, on behalf of this company there be adopted, or filed with and approved or accepted by the insurance supervisory authorities, all in conformity with law, any changes in the form attached to this policy by which this form of insurance could be extended or broadened without increased premium charge by endorsement or substitution of form, then such extended or broadened insurance shall inure to the benefit of the insured hereunder as though such endorsement or substitution of form had been made.

C. **Inspection and Audit:** The company shall be permitted but not obligated to inspect the named insured's property and operations at any time. Neither the company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the named insured or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.

The company may examine and audit the named insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

D. **Cancellation:** This policy may be canceled by the named insured by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancellation shall be effective. This Policy may be canceled by the company by mailing to the named insured at the address shown in this policy, written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing.

If the named insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

E. **Deferred Premium Payment Plan:** If the insured elects to pay the premium in equal annual payments as indicated on the first page of this policy the premium for this policy is hereby made so payable. Default in making any payment shall be construed as a request of the insured to cancel this policy, in which case this company shall, upon demand and surrender of this policy, or after ten days written notice to the insured, comply with the said request.

If this policy is canceled, either at the request of the insured or at the election of this company, this company shall refund to the insured only the excess of paid premium over earned premium. In the event the earned premium exceeds the paid premium the insured shall pay this company the difference.

F. **Subrogation:** In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights.

G. **Impairment of Recovery:** Except as noted below, this company shall not be bound to pay any loss if the insured shall have impaired any right to recovery for loss to the property insured; however it is agreed that:
1. As respects property while on the premises of the insured, permission is given the insured to release others in writing from liability for loss prior to loss, and such release shall not affect the right of the insured to recover hereunder, and
2. As respects property in transit, the insured may, without prejudice to this insurance, accept such bills of lading, receipts or contracts of transportation as are ordinarily issued by carriers containing a limitation as to the value of such goods or merchandise.

H. **Conformity With Statute:** The terms of this policy and forms attached hereto which are in conflict with the statutes of the state wherein this policy is issued are hereby amended to conform to such statutes.

I. **Changes:** Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

J. **Assignment:** Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon; if, however, the named insured shall die, such insurance as is afforded by this policy shall apply (1) to the named insured's legal representative, as the named insured, but only while acting within the scope of his duties as such, and (2) with respect to the property of the named insured, to the person having proper temporary custody thereof, as insured, but only until the appointment and qualification of the legal representative.

K. **Modification of Terms:** Any provisions contained in this policy (or supplements, schedules and endorsements attached thereto) which are in conflict with conditions A thru J above are hereby waived.

L. **Extension:** If coverage provided by this policy replaces a similar coverage of a policy expiring on the effective date of this policy, then coverage hereunder shall be extended to the expiration time of the policy so replaced.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its president and secretary at Seattle, Washington, and countersigned on the declarations page by a duly authorized representative of the company.

W D HAMMERSLA, SECRETARY

GORDON H SWEANY, PRESIDENT

## CONDITIONS APPLICABLE ONLY TO SECTION II

### 1. SUPPLEMENTARY PAYMENTS

The company will pay in addition to the applicable limit of liability:

(a) all expenses incurred by the company, all costs taxed against the insured in any suit defended by the company and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon;

(b) premiums on appeal bonds required in any such suit, premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy, and the cost of bail bonds required of the insured because of accident or traffic law violation arising out of the use of any vehicle to which this policy applies, not to exceed $250 per bail bond, but the company shall have no obligation to apply for or furnish any such bonds;

(c) expenses incurred by the insured for first aid to others at the time of an accident, for bodily injury to which this policy applies;

(d) reasonable expenses incurred by the insured at the company's request in assisting the company in the investigation or defense of any claim or suit, including actual loss of earnings not to exceed $25 per day.

### 2. DEFINITIONS

When used in this policy (including endorsements forming a part hereof):

"automobile" means a land motor vehicle, trailer or semitrailer designed for travel on public roads (including any machinery or apparatus attached thereto), snowmobiles, all-terrain vehicles and similar equipment and trailers designed for use therewith, but does not include mobile equipment;

"automobile hazard" includes bodily injury or property damage arising out of:

(a) the ownership, maintenance, operation, use, loading or unloading of

(1) any automobile owned or operated by or rented or loaned to any insured, or

(2) any other automobile operated by any person in the course of his employment by any insured;

but this definition does not apply to the parking of an automobile on premises owned by, rented to or controlled by the named insured or the ways immediately adjoining, if such automobile is not owned by or rented or loaned to any insured,

(b) and in the course of the transportation of mobile equipment by an automobile owned or operated by or rented or loaned to the named insured;

"bailment" means a delivery of property by any person to the insured for some purpose beneficial to either the insured or such person or both under a contract, express or implied, for the insured to carry out such purpose and to redeliver such property or otherwise dispose of it as provided;

"Blanket Contractual Hazard" means liability assumed by the insured under any contract or agreement except an incidental contract; but this definition does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner;

"bodily injury" means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom;

"Broad Form Property Damage Hazard" means property damage to

(a) property used by the insured, or

(b) property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control,

but parts (a) and (b) of this definition do not apply with respect to liability under a written sidetrack agreement and part (b) of this definition does not apply with respect to property damage (other than to elevators) arising out of the use of an elevator at premises owned by, rented to or controlled by the named insured.

"completed operations hazard" includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(a) when all operations to be performed by or on behalf of the named insured under the contract have been completed,

(b) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or

(c) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

The completed operations hazard does not include bodily injury or property damage arising out of

(a) operations in connection with the transportation of property, unless the bodily injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof,

(b) the existence of tools, uninstalled equipment or abandoned or unused materials, or

(c) operations for which the classification stated in the policy or in the company's manual specifies "including completed operations";

"Contractual Hazard Beyond 15 Days" means liability assumed by the insured under any written contract or agreement unless the insured shall have furnished the company a copy of such agreement within (15) fifteen days from the date such agreement is signed by the insured except an incidental contract; but this definition does not apply to a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner;

"elevator" means any hoisting or lowering device to connect floors or landings, whether or not in service, and all appliances thereof including any car, platform, shaft, hoistway, stairway, runway, power equipment and machinery; but does not include an automobile servicing hoist, or a hoist without a platform outside a building if without mechanical power or if not attached to building walls, or a hod or material hoist used in alteration, construction or demolition operations, or an inclined conveyor used exclusively for carrying property or a dumbwaiter used exclusively for carrying property and having a compartment height not exceeding four feet, or hydraulic or mechanical hoists used for dumping materials from trucks;

"incidental contract" means any written (a) lease of premises, (b) easement agreement, except in connection with construction or demolition operations on or adjacent to a railroad; (c) undertaking to indemnify a municipality required by municipal ordinance, except in connection with work for the municipality, (d) sidetrack agreement, or (e) elevator maintenance agreement;

"insured" means any person or organization qualifying as an insured in the "Persons Insured" provision of the applicable insurance coverage. The insurance afforded applies separately to each insured against whom claim is made or suit is brought, except with respect to the limits of the company's liability;

(continued on reverse side)

PRINTED IN U.S.A.

"mobile equipment" means a land vehicle including any machinery or apparatus attached thereto), whether or not self-propelled, (a) not subject to motor vehicle registration, or (b) maintained for use exclusively on premises owned by or rented to the named insured, including the ways immediately adjoining, or (c) designed for use principally off public roads, or (d) designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers and drills; concrete mixers (other than the mix-in-transit type); graders, scrapers, rollers and other road construction or repair equipment; air-compressors, pumps and generators, including spraying, welding and building cleaning equipment; and geophysical exploration and well servicing equipment;

"named insured" means the person or organization named in Item 1. of the declarations of this policy;

"named insured's products" means goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, including any container thereof (other than a vehicle), but "named insured's products" shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold;

"non-owned automobile hazard" means any automobile other than an owned or hired automobile or, if the named insured is an individual, an automobile personally operated by the named insured or members of his family;

"occurrence" means an event including continuous or repeated exposure to conditions, which results in bodily injury or property -damage neither expected nor intended from the standpoint of the insured;

"personal hazard" means any domestic activities of the insured, not in connection with the business of the insured;

"policy territory" means anywhere in the world; provided, however, that: (a) resulting claims are asserted within the United States of America, its possessions, or Canada, and (b) it shall apply to suits and judgments for damages resulting therefrom only if suit is commenced in a court in the United States of America, its possessions or in Canada;

"products hazard" includes bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others;

"property damage" means (a) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (b) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period;

"suit" includes an arbitration proceeding to which the insured is required to submit or to which the insured has submitted with the company's consent.

### 3. Financial Responsibility Laws

Such insurance as is afforded by this policy for bodily injury liability or for property damage liability shall comply with the provisions of any motor vehicle financial responsibility law to the extent of the coverage and limits of liability required by such law but in no event in excess of the limits of liability stated in this policy.

### 4. Insured's Duties in the Event of Occurrence, Claim or Suit

(a) In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.

(b) If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

(c) The insured shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of injury or damage with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

### 5. Action Against Company

No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the company as a party to any action against the insured to determine the insured's liability, nor shall the company be impleaded by the insured or his legal representative. Bankruptcy or insolvency of the insured or of the insured's estate shall not relieve the company of any of its obligations hereunder.

### 6. Other Insurance

If, applicable to the loss, there is any valid and collectible insurance, whether on a primary, excess or contingent basis, available to the insured (in this or any other carrier), there shall be no insurance afforded hereunder as respects such loss; except, that if the applicable limit of liability of this policy is in excess of the applicable limit of liability provided by the other insurance, this policy shall afford excess insurance over and above such other insurance in an amount sufficient to afford the insured a combined limit of liability equal to the applicable limit of liability afforded by this policy. Insurance under this policy shall not be construed to be concurrent or contributing with any other insurance which is available to the insured.

### 7. Three Year Policy

If this policy is issued for a period of three years, the limits of the company's liability shall apply separately to each consecutive annual period thereof.

### 8. Arbitration

The company shall be entitled to exercise all of the insured's rights in the choice of arbitrators and in the conduct of any arbitration proceeding.

### 9. Policy Term

In the event the policy is written without any insurance afforded under Section I – "Property" of the policy, the inception and expiration time shall be 12:01 A.M. Standard Time at the address of the insured as stated in the Declarations, otherwise such time shall be Noon Standard Time.



This endorsement modifies such insurance as is afforded
by the provisions of the policy relating to the following:

**BLANKET LIABILITY INSURANCE — COVERAGES A AND B
COMMERCIAL TOP NOTCH INSURANCE
COMPREHENSIVE GENERAL LIABILITY INSURANCE
COMPLETED OPERATIONS AND PRODUCTS LIABILITY INSURANCE
CONTRACTUAL LIABILITY INSURANCE
GROWERS' AND RANCHERS' LIABILITY INSURANCE — COVERAGES A AND B
MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE
OWNERS' AND CONTRACTORS' PROTECTIVE LIABILITY INSURANCE
OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE
SPECIAL MULTI-PERIL LIABILITY INSURANCE
STOREKEEPER'S INSURANCE**

## POLLUTION EXCLUSION

It is agreed that the insurance does not apply to **Bodily Injury\*** or
**Property Damage** caused by or resulting from the **discharge of matter** (either during the policy period or prior to its commencement)
on or into water, land air or any other real or personal property,
provided, however, that this endorsement shall not exclude insurance with respect to the **discharge of matter**, if the discharge is
sudden, unexpected, unintentional and occurs during the policy period following the effective date of this endorsement.

When used in this Endorsement:

(a) **"discharge of matter"** means the emission of **matter** through its
release, spillage, leakage or by means of dumping, emptying,
pumping or due to failure of any equipment or resulting from
any other source or cause whatsoever.

(b) **"matter"** means any substance (gas, liquid, or solid) of any description or origin.

It is further agreed that this endorsement shall not apply to liability
arising out of the ownership, maintenance, or use of any automobile.

\*In the event this form is attached to a Commercial Top Notch Policy **"Personal Injury"** shall be substituted for **"Bodily Injury."**

This endorsement is executed by the company stated in the declarations.

W. D. HAMMERSLA  SECRETARY

GORDON H. SWEANY  PRESIDENT

COMPLETE THE FOLLOWING IF NOT ATTACHED TO POLICY WHEN POLICY IS ISSUED

| INSURED | | | | FORM NO. | CLASS FM CODE | NUMBER OF PR. FACTOR | OLD PER/EXPS PREMIUM | RETURN PREMIUM | NEW PER/TERM PREMIUM | ADDITIONAL PREMIUM | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ENDORSEMENT EFFECTIVE | | (at the hour of the stated in the policy) | | | | | $ | $ | $ | $ | |
| POLICY OR BOND NUMBER | | SERVICE OFFICE | | | | | | | | | |
| POLICY EXP. DATE | | MPP ACCT NUMBER | | | | | | | | | |
| ENDORSEMENT NUMBER | | TYPING DATE | | | | | | | | | |
| SAFECO INSURANCE COMPANY OF AMERICA GENERAL INSURANCE COMPANY OF AMERICA FIRST NATIONAL INSURANCE COMPANY OF AMERICA (Please check insured by the company designated by initial) | | | | | | | TOTALS (+ INS.) | | | | |

PRINTED IN U.S.A.



AGENT'S NAME MARSH & McLENNAN, INC. CP 276891   72   3   170   ☒ Auditable ☐ Non-Auditable

CP 383478 -



S = SAFECO INSURANCE COMPANY OF AMERICA
G = GENERAL INSURANCE COMPANY OF AMERICA
F = FIRST NATIONAL INSURANCE COMPANY OF AMERICA
4347 BROOKLYN AVE. N.E., SEATTLE, WASHINGTON 98105 (Each a Stock Insurance Company)
(Coverage is provided by the Company designated by initial)

G

383478

Commercial Polic

Item 1. Named Insured and Address (Number, Street, Town, County, State, ZIP Code)

**LINNTON PLYWOOD ASSOCIATION**
**10504 N.W. ST. HELENS RD**
**PORTLAND, OREGON  97231**

MPP ACCOUNT NO

Business of Named Insured is:

**PLYWOOD MFG.**

The Named insured is ☐ Individual   ☐ Corp.   ☐ Partnership   ☐ Joint Venture   ☐ Other **COOPERATIVE ASS**

Item 2. Policy Term

| **THREE** | **APRIL 23, 1973** | **APRIL 23, 1976** |
|---|---|---|
| Years | Inception | Expiration |

Item 3. The insurance afforded shall apply in accordance with the schedule or schedules attached hereto, and only with respect to th coverage under such schedule or schedules as specified therein.

| SECTION | COVERAGE | AS PROVIDED UNDER SCHEDULE(S) |
|---|---|---|
| I PROPERTY COVERAGE | Location of premises: (Enter "same" if same location as above) 1. 2. 3. 4. | |
| II LIABILITY COVERAGE | Liability (1) Other than Automobile | A |
| | (2) Automobile | A |
| | (3) Personal | |
| | Medical Payments (1) Premises | |
| | (2) Automobile | A |
| | (3) Personal | |
| | Uninsured Motorists | A |
| III | CRIME | A |
| IV | AUTOMOBILE PHYSICAL DAMAGE | A |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Item 4. Provisional premium subject to audit:

If paid in advance.............. $_____

If paid in installments, the first year installment is .............. $ **6,564.**

Countersignature_____

## SECTION II – LIABILITY

Policy No. **CP 363478**

| CHECK BOX IF ITEM IS CHANGED | Limits of Liability |
|---|---|

Liability

| | Coverage A - Bodily Injury | Coverage B - Property Damage |
|---|---|---|
| A. Divided Limits Plan | $ **---** each person | $ **100,000.** each occurrence |
| ☐ 1. Other Than Automobile | $ **300,000.** each occurrence | $ **100,000.** aggregate |
| | $ **300,000.** aggregate | |

| | Coverage C - Bodily Injury | Coverage D - Property Damage |
|---|---|---|
| ☐ 2. Automobile | $ **100,000.** each person | $ **100,000.** each occurrence |
| | $ **300,000.** each occurrence | |

Coverages **---**

☐ B. Combined Limits Plan     $ **---** each occurrence

☐ The Liability Form attached hereto is entitled: **BLANKET LIABILITY INSURANCE C-10**

☐ The following hazards are excluded therefrom: _____

Medical Payments

☐ Coverage E - Premises     $ **---** each person     $ **---** each accident
☐ Coverage F - Automobile     $ **2,000.** each person
☐ Coverage M - Personal     $ **---** each person     $ **---** each accident

Coverage F

☐ Designation of person insured: **NAMED INSURED**
☐ Designation of automobiles Division 1 **ANY OWNED AUTOMOBILE**

| | each person | | general |
|---|---|---|---|
| ☐ Coverage P - Personal injury Liability | $ **300,000.** aggregate | $ **300,000.** aggregate | |

☐ Including an offense within the following groups of offenses **A-B-C** Insured's participation **---** %

☐ Coverage U - Uninsured Motorists     $ **10,000.** each person     $ **20,000.** each accident
☐ Designated insured: **NAMED INSURED**
☐ Description of insured highway vehicles **ANY AUTOMOBILE OWNED BY THE NAMED INSURED.**

| ☒ Premium Change | Additional | Return | Subject to Audit | Short or Pro-Rate % |
|---|---|---|---|---|
| | | | **NO CHANGE** | |

Any explanation and/or other change:

In consideration of the continuance of the policy, it is agreed that from its effective date: (1) This endorsement becomes a part of the above numbered policy. (2) All limits of liability of the Additional Declarations are deleted and replaced by those specified above. (3) This policy provides the coverage as stated herein.

*W. D. Hammersla, Secretary*          *Gordon H. Sweany, President*

| INSURED | **LINNTON PLYWOOD ASSOCIATION** | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| ENDORSEMENT EFFECTIVE | **4-23-73** | (at the hour of day stated in the policy) | COVER-AGE | CLASS OR CODE | UNEARNED SR/PR FACTOR | OLD (FULL TERM) PREMIUM | RETURN PREMIUM | NEW (FULL TERM) PREMIUM | ADDITIONAL PREMIUM |
| POLICY OR BOND NUMBER | **CP383478** | SERVICE OFFICE | **EA:MM:S** | | | | | | |
| POLICY EXP. DATE | **4-23-76** | MPP ACCT. NUMBER | | | | $ | $ | $ | $ |
| ENDORSEMENT NUMBER | **1A** | TYPING DATE | **4-27-73** | | | | **N/A** | | |

S = SAFECO INSURANCE COMPANY OF AMERICA
G = GENERAL INSURANCE COMPANY OF AMERICA
P = FIRST NATIONAL INSURANCE COMPANY OF AMERICA
(Policy or Bond is issued by the company designated by initial)     **G**

**REPLACES ORIGINAL C-1653**

Authorized
Representative _____          Schedule **A**

IMPORTANT: This endorsement forms part of your policy.  Attach to your policy promptly for your protection.

*G. R.*
Non Money
(continued on reverse side)          By _____

**DAILY REPORT**          **DIVISION OFFICE**

*Revised Additional Declarations*

| CHECK BOX IF ITEM IS CHANGED | Limits of Liability |
|---|---|

Liability
A. Divided Limits Plan
☐    1. Other Than Automobile

Coverage A - Bodily Injury
$   300,000.   each occurrence
$   300,000.   aggregate

Coverage B - Property Damage
$   100,000.   each occurrence
$   100,000.   aggregate

☐   2. Automobile

Coverage C - Bodily Injury
$   100,000.   each person
$   300,000.   each occurrence

Coverage D - Property Damage
$   100,000.   each occurrence

☐   B. Combined Limits Plan

Coverages _____
$ _____ each occurrence

☐ The Liability Form attached hereto is entitled: **BLANKET LIABILITY INSURANCE   C-10**

☐ The following hazards are excluded therefrom: _____

Medical Payments
☐ Coverage E - Premises      $_____ each person      $_____ each accident
☒ Coverage F - Automobile      $_____ each person
☐ Coverage M - Personal      $_____ each person      $_____ each accident

Coverage F
☒ Designation of person insured: _____
☒ Designation of automobiles Division 1 _____

☐ Coverage P - Personal Injury Liability      $   300,000.   aggregate
☐ Including on offense within the following groups of offenses   **A-B-C**   Insured's participation _____ %

☐ Coverage U - Uninsured Motorists - Bodily Injury    $   10,000.   each person    $   20,000.   each accident
     † Where applicable by law.    - Property Damage † $_____ deductible    $_____ each accident
☐ Designated insured: _____ **NAMED INSURED**
☐ Description of insured highway vehicles __ **ANY AUTOMOBILE OWNED BY THE NAMED INSURED**

| ☒ Premium Change | Additional | Return | Subject to Audit | Short or Pro-Rate % | Revised Total Premium |
|---|---|---|---|---|---|
| | | | **INCL.** | | PPD<br>DPP |

Any explanation and/or other change:

In consideration of the continuance of the policy, it is agreed that from its effective date: (1) This endorsement becomes a part of the above numbered policy. (2) All limits of liability on the Additional Declarations are deleted and replaced by those specified above. (3) This policy provides the coverage as stated herein.

*W. D. Hammersla, SECRETARY*      *Gordon H. Sweany, PRESIDENT*

| INSURED | **LINNTON PLYWOOD ASSOCIATION** | | |
|---|---|---|---|
| ENDORSEMENT EFFECTIVE | **4-23-74** | (at the hour of day stated in the policy) | |
| POLICY OR BOND NUMBER | **CP 383478** | SERVICE OFFICE | **ZF:J5:5** |
| POLICY EXP. DATE | **4-23-75** | MPP ACCT. NUMBER | |
| ENDORSEMENT NUMBER | **2** | TYPING DATE | **4-26-74** |

S = SAFECO INSURANCE COMPANY OF AMERICA
G = GENERAL INSURANCE COMPANY OF AMERICA
F = FIRST NATIONAL INSURANCE COMPANY OF AMERICA
(Policy or Bond is issued by the company designated by initial)

     **S**

Authorized
Representative _____      Schedule ___ **A** ___

ATTENTION POLICY SERVICE: Attach premium worksheet for coding if required.

(continued on reverse side)

**DAILY REPORT DIVISION OFFICE**
® SAFECO Insurance Company of America, registered trademark owner.   PRINTED IN U.S.A.

C-148 R11 5/73

CHECK BOX IF ITEM IS CHANGED

Limits of Liability

**Liability**

☐ A. Divided Limits Plan
   1. Other Than Automobile

Coverage A - Bodily Injury
$ 300,000. _____ each occurrence
$ 300,000. _____ aggregate

$\mathit{b}$  Coverage B - Property Damage
$ 100,000. _____ each occurrence
$ 100,000. _____ aggregate

☒ 2. Automobile

Coverage C - Bodily Injury
$ 300,000. _____ each person
$ 300,000. _____ each occurrence

Coverage D - Property Damage
$ 100,000. _____ each occurrence

☐ B. Combined Limits Plan

Coverages _____
$_____ each occurrence

☐ The Liability Form attached hereto is entitled: ____ BLANKET LIABILITY INSURANCE C-18 ____

☐ The following hazards are excluded therefrom: _____

Medical Payments

☐ Coverage E - Premises       $_____ each person       $_____ each accident
☐ Coverage F - Automobile     $_____ each person
☐ Coverage M - Personal       $_____ each person       $_____ each accident

Coverage F

☐ Designation of person insured: _____
☐ Designation of automobiles Division 1_____

☐ Coverage P - Personal Injury Liability       $ 300,000. _____ aggregate
☐ Including an offense within the following groups of offenses ___A-B-C___ _____ insured's participation _____ %

☐ Coverage U - Uninsured Motorists - Bodily Injury       $ 10,000. _____ each person       $ 20,000. _____ each accident
   † Where applicable by low.   - Property Damage † $_____ deductible       $_____ each accident
☐ Designated insured: ____ NAMED INSURED ____
☐ Description of insured highway vehicles ____ ANY AUTOMOBILE OWNED BY THE NAMED INSURED ____

| ☒ Premium Change | Additional | Return | Subject to Audit | Short or Pro-Rate % | Revised Total Premium | |
|---|---|---|---|---|---|---|
| | 40. | | | .811 | | PPD |
| | | | | | | DPP |

Any explanation and/or other change:

**PER BREAKDOWN ATTACHED**

In consideration of the continuance of the policy, it is agreed that from its effective date. (1) This endorsement becomes a part of the above numbered policy. (2) All limits of liability of the Additional-Declarations are deleted and replaced by those specified above; (3) This policy amends the coverage as stated herein.

| INSURED | LINNTON PLYWOOD ASSOCIATION | | |
|---|---|---|---|
| ENDORSEMENT EFFECTIVE | 7-1-75 | | (at the hour of day stated in the policy) |
| POLICY OR BOND NUMBER | CP 383478 | SERVICE OFFICE | JC:DM:5 |
| POLICY EXP. DATE | 4-23-76 | MPP ACCT. NUMBER | |
| ENDORSEMENT NUMBER | 9 | TYPING DATE | 8-6-75 |

S - SAFECO INSURANCE COMPANY OF AMERICA
G - GENERAL INSURANCE COMPANY OF AMERICA
F - FIRST NATIONAL INSURANCE COMPANY OF AMERICA
(Policy or Bond is issued by the company designated by initial)

☐ S

W. D. HAMMERSLA, SECRETARY

GORDON H. SWEANY, PRESIDENT

Authorized Representative _____

Schedule ____ A

ATTENTION POLICY SERVICE: Attach premium worksheet for coding if required.

(continued on reverse side)

**DAILY REPORT DIVISION OFFICE**

## SECTION II - LIABILITY

Policy No. **CP 383478**

This schedule is attached to, and forms a part of the policy specified above.

Limits of Liability. No insurance is afforded under any coverage unless specific limits of liability as to such coverage are set forth below; The limit of the company's liability on account of each such coverage shall be as stated herein, subject to all of the terms of the policy or supplement attached having reference thereto.

### Limits of Liability

| Liability | Coverage A · Bodily Injury | Coverage B · Property Damage |
|---|---|---|
| A. Divided Limits Plan | $ **300,000.** each occurrence | $ **100,000.** each occurrence |
| 1. Other Than Automobile | $ **300,000.** aggregate | $ **100,000.** aggregate |

|  | Coverage C · Bodily Injury | Coverage D · Property Damage |
|---|---|---|
| 2. Automobile | $ **300,000.** each person | $ **100,000.** each occurrence |
|  | $ **300,000.** each occurrence | |

| B. Combined Limits Plan | Coverages _____ |
|---|---|
|  | $ _____ each occurrence |

The Liability Form attached hereto is entitled: ~~BLANKET LIABILITY INSURANCE C-10~~

The following "hazards" as defined by the form entitled "Conditions Applicable Only to Section II" are excluded therefrom:
~~"PERSONAL HAZARD" AND "CONTRACTUAL HAZARD BEYOND~~
~~15 DAYS" BOTH AS DEFINED ON FORM C-1652~~

### Medical Payments

Coverage E · Premises        $ _____ each person        $ **45** each accident

Coverage F · Automobile        $ **2000.** each person
*no fault insurance coverage* _____ *had deductible*

Coverage F
Designation of person insured: ~~NAMED INSURED~~
Designation of automobiles Division I ~~ANY LICENSED OWNED PRIVATE PASSENGER AUTOMOBILE~~

| Coverage P · Personal Injury Liability | $ **300,000.** each person aggregate | $ **300,000.** general aggregate |
|---|---|---|
| | EXCL. 'C' DELETED | |

Including an offense within the following groups of offenses A B C ____ Insured's participation _____ %

| Coverage U · Uninsured Motorists · Bodily Injury | $ **10,000.** each person | $ **20,000.** each accident |
|---|---|---|
| Property Damage † | $ _____ each accident | $ _____ deductible |

† Where applicable by law:
Designated insured: ~~NAMED INSURED~~
Description of insured highway vehicles ~~ANY AUTOMOBILE OWNED BY THE NAMED INSURED.~~

(continued on reverse side)

Schedule **A**

## DAILY REPORT DIVISION OFFICE

C·1653·1·73 (formerly CF·645)        PRINTED IN U·S·A

S•S•A•F•E•C•O•INSURANCE COMPANY OF AMERICA
F • FIRST NATIONAL INSURANCE COMPANY OF AMERICA
Home Office: 4347 Brooklyn Ave. N.E., Seattle, Washington 98105 (Each a Stock Insurance Company)
(Coverage is provided by the company designated by initial)

## SECTION III CRIME

Policy No. **CP 389478**

The premises are located at the address shown in the declarations as Location No. _____ **1** _____, unless otherwise stated herein:

| (Number | Street | Town | State) |
|---|---|---|---|

No other business is conducted in the premises, unless otherwise stated herein:

Safe Classification: _____ The alarm system is classified as ☐ Central ☐ Local. Certificate No. _____

All words or phrases (other than captions) printed in Bold Face are defined in the policy.

Limits of Liability. No insurance is afforded under any insuring agreement unless specifically stated or specific limits of liability as to such insuring agreement are set forth below: The limited of the company's liability on account of each such coverage shall be as stated herein, subject to all of the terms of the policy or supplement attached having reference thereto.

### Insuring Agreements

| | | Limits of Liability | Premium |
|---|---|---|---|
| 1. **Burglary and Robbery** | | | |
| (a) Paymaster Robbery – On a Messenger Accompanied by _____ Guards _____ | $ _____ | | $ |
| (b) Robbery Inside the Premises | $ _____ | | $ |
| (c) Robbery Outside the Premises | $ _____ | | $ |
| (d) Home of Messenger – Burglary only ☐ Theft ☐ | $ _____ | | $ |
| (e) Open Stock Burglary ..... **60** % **2000.** | $ **3,000.** | | $ **INCL.** |
| (Coinsurance Percent) (Coinsurance Limit) | | | |
| (f) Safe Burglary | $ _____ | | $ |
| (g) Burglary (not exceeding $ 50.00) | $ _____ | | $ |
| 2. **Comprehensive Dishonesty, Disappearance and Destruction** | | | |
| (I) Employee Dishonesty — ☐ Option A — ☐ Option B | $ _____ | | $ |
| (II) Loss Inside the Premises | $ _____ | | $ |
| (III) Loss Outside the Premises | $ _____ | | $ |
| (IV) Money Orders and Counterfeit Paper Currency | $ _____ | | $ |
| (V) Depositors Forgery | $ _____ | | $ |
| (VI) Merchandise Burglary ..... % | $ _____ | | $ |
| (Coinsurance Percent) (Coinsurance Limit) | | | |
| 3. **Blanket Crime** | | | |
| Total Limit of Liability | $ _____ | | $ |
| 4. **Broad Form Storekeepers** | | | |
| Limit of insurance under each of Insuring Agreements I through IX | $ _____ | | $ |
| Except under Insuring Agreement V, such limit applies in excess of a deductible of | | | |
| $ _____ as to loss under one or more of said Insuring Agreements. | | | |
| 5. **Storekeepers Burglary and Robbery** | | | |
| Limit of insurance under each of Insuring Agreements I to VII inclusive | $ _____ | | $ |
| 6. **Office Burglary and Robbery** | | | |
| Limit of insurance under each of Insuring Agreements I through VI | $ _____ | | $ |
| 7. **OTHER** | | | |
| _____ | $ _____ | | $ |

State Supplement Name(s) and Form Number(s) attached hereto.

The premium:

| | | |
|---|---|---|
| If paid in advance | $ _____ | |
| If paid in installments, the first year installment is | $ **INCL.** | |

The liability of the company is subject to the terms of the following endorsements (indicated by form No.) attached hereto: _____
**C-960; C-1055 ; C-1373**

The insured by the acceptance of this policy, gives notice to the company of election to terminate or cancel prior bond or policy No(s): __
_____
such termination or cancellation to be effective as of the time this policy becomes effective.

Schedule _____

This memorandum is for information only; it is not a contract of insurance but attests that a policy as numbered herein, and as it stands at the date of this certificate, has been issued by the company. Said policy is subject to change by endorsement and to assignment and cancellation in accordance with its terms.

## DAILY REPORT DIVISION OFFICE



SAFECO•INSURANCE COMPANY OF AMERICA
GENERAL INSURANCE COMPANY OF AMERICA
FIRST NATIONAL INSURANCE COMPANY OF AMERICA

*Additional Declarations*

Policy No. **CP 383478**

SECTION   **IV** AUTOMOBILE PHYSICAL DAMAGE

This schedule is attached to and forms a part of the policy specified above.

### SCHEDULE OF AUTOMOBILES

| ITEM No. | Year, Trade Name, Type  Serial or Motor No. | Purchased  Month and Year  New or Used | Actual Cost incl. equip. or Symbol if private pass. | Limit of Liability other than collision | O Comp. | P Collision Deduct. or | Included | Q Fire | R Theft | T Comb Add'l. Cov. | V Towing and Labor |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. | 1964 CHEV. PICKUP S#4C154H165821 | | 2079. | 2079. | -- | -- | -- | INCL | INCL | INCL | |
| 2. | 1972 CHEV. IMPALA 4 DR. SEDAN S#1M69H2C184663 | 5-2-4 | | ACV | INCL | 100. | INCL. | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

The company's maximum liability under this endorsement on any one automobile shall not exceed ........ $ **10,000.** ;
The maximum liability for any one loss shall not exceed ........................................ $ **20,000.** .
Any loss is payable as interest may appear to the named insured and (Name and address)

Schedule _____ **A** _____

Section      - Automobile Physical Damage

A-1068-R3 1/72           Additional Declarations           **DIVISION**