# Exhibit 5

2. The Association shall not enter into any contract exceeding (30) thirty days with the Manager, Superintendent or President, unless ratified by a majority of the members at any regularly called members' meeting.

SECTION B - Terms of Office.

1. The election for Directors shall be held at the annual meeting of the membership when each successor shall be elected and qualified. At the election for Directors, the candidate receiving the highest number of votes shall be elected to the office even though such highest number does not constitute a majority.

2. Nominations for candidates for Director shall be made by the members at the membership meeting immediately preceding the annual membership meeting. It may be either the semi-annual meeting or a special meeting; but if nominations are to be made at a special meeting, such meeting must be held at least thirty (30) days prior to the annual membership meeting. The nominees shall present to the Secretary-Treasurer a short resume of their qualifications which shall be compiled and sent to each member of the Association.

3. The election of nine (9) directors shall be from the qualified candidates. Incumbent directors may be elected if they have been nominated at the membership meeting immediately preceding the annual membership meeting, and not otherwise.

4. All voting for the office of Director shall be made by written ballot.

SECTION C - Removal of Directors. Any member may bring charges against a Director by filing such charges in writing with the Secretary-Treasurer together with a petition requesting the removal of that Director signed by ten percent (10%) of the members. The Secretary-Treasurer shall immediately notify the Director in writing of the charges filed. The Director may then file a written response within ten (10) days, with the Secretary-Treasurer. The Secretary-Treasurer will then schedule a special membership meeting no more than fourteen (14) days from receipt of the Director's response. A copy of the charges and response will be included in the meeting notice. The Director will be given a chance to respond in person at the membership meeting. A majority vote of the total membership is required for removal of a Director.

SECTION D - Annual Meeting. The annual meeting of Directors shall be held immediately following the annual membership meeting, and in no event more than five (5) days after such membership meeting, at which time they shall select from their number the officers of the Association.

SECTION E - Regular Meetings. The directors shall hold such regular, periodic meetings as they deem necessary for the business affairs of the Association and the welfare of its members, such regular meetings to be held at such time and place as the directors from time to time determine.

SECTION F - Special Meetings. Special meetings of the Board of Directors may be called at any time by the President. Special meetings may also be called at the request of three members of the Board of Directors addressed to the Secretary, who shall thereupon notify all directors of such meeting.

SECTION G - Notice of Special Meetings. The Secretary of the Association shall give not less than five (5) days notice in writing to each director of the time, place and purpose of a special meeting. The five day notice may be waived only if all directors concur in writing with such waiver.

SECTION H - Quorum. Seven directors shall constitute a quorum for the transaction of business at any regular or special meeting of the Board of Directors and the affirmative vote of not less than five directors shall be necessary to pass on any question which is put to a vote.

SECTION I - Vacancies. To fill a vacancy in the Board of Directors which may exist, the Board shall:

First, appoint the member who has the next highest number of votes at the last annual election, such appointee to serve the full unexpired term of the vacated position of the Director succeeded;

Second, if there are no remaining nominees from the last election, the Board shall call a special membership meeting to nominate and elect a Director to fill the vacancy. The nominee receiving the highest vote total will be elected to the Board of Directors. Future vacancies will then be filled from the list of nominees, beginning with the nominee having the highest total vote.

SECTION J - Resolutions of Membership. After each regular membership meeting or each special meeting, the Board of Directors shall meet within five (5) days to consider resolutions adopted by the membership.

SECTION K - Contents and Posting of Minutes. The minutes of the meetings of the Board of Directors must be posted within the following three (3) days. All Minutes must include motions and by whom made, by whom seconded and how each director voted on motions on matters to come before it on which a vote is taken. Minutes shall also include who submitted the information and which directors presented it. All directors must vote on every motion. All motions postponed must be acted upon at the next meeting.

SECTION L - Examination of Expenditures. The Board shall examine for approval or rejection all proposed expenditures in excess of $500.00.

SECTION M - Examination of Bills. The Board of Directors shall examine all payable or paid bills.

2 - BYLAWS

SECTION N - **Statements and Audits.** The Association shall make available to the members monthly financial statements and the completed certified annual audit report.

SECTION O - **Capital Expenditures.** No expenditure for a capital purpose in excess of $50,000.00 shall be made unless approved by a majority vote of the membership in attendance and voting by a secret ballot at a duly held membership meeting. The ballots are to be counted and the results made known before the meeting is adjourned. Members of the Board of Directors shall not be held responsible for exceeding this limitation provided the Board of Directors cost estimates are made in good faith and indicate that the cost of the project authorized by them will be less than $50,000.00.

SECTION P - **Indemnification of Directors, Officers, and Agents.** Each person who at any time has served or serves as Director, officer, or agent of the Association shall be indemnified by the Association against liabilities incurred as a result of, and expenses (including attorney's fees) reasonably sustained in the defense or in the compromise or settlement of, any civil, criminal, or other action, suit, or proceeding, in which the person may become involved as a party or with which the person may be threatened, by reason of the person being or having been a Director, officer, or agent of the Association, provided, however, that such indemnification shall not apply to any claim, action, suit, or other proceeding in which the Director, officer, or agent is adjudged liable for negligence or misconduct in the performance of duty, or in which the person shall have entered a plea of guilty or nolo contendere, unless the Association shall receive a written opinion of independent legal counsel that (a) the conduct of the person in connection with such matters was in good faith, for a purpose which the person reasonably believed to be in the best interest of the Association, and, in any criminal action, in addition, that such person had no reasonable cause to believe that the person's conduct was unlawful, and (b) that indemnification pursuant to the provisions of this Bylaw may be legally and validly made as authorized by Oregon Revised Statutes for Cooperative Corporations.

SECTION Q - **Rules and Policies.** The Board of Directors shall establish and publish such working rules and policies as are necessary to establish and maintain the efficient operation of the business of the Association.

## ARTICLE IV

## OFFICERS

SECTION A - **Officers.** The officers of this Association shall be a President, a Vice-President and a Secretary-Treasurer. They shall be elected by the Directors from their number at their annual meeting and shall hold office for a term of one year or until their successor is elected and qualified.

SECTION B - **President.** The President shall preside at all meetings of the directors and of the members. The President shall sign in behalf of the Association all documents and instruments which have been approved by the Board of Directors. The President shall have general supervision over the properties and business interests of the Association as well as its agents and workers customarily performed by a President or Chief Executive Officer as prescribed by the Board of Directors.

SECTION C - **Vice-President.** The Vice-President shall have such duties as the Board of Directors from time to time may assign to the Vice-President and the Vice-President shall act in the place and stead of the President in the event of the President's absence or incapacity.

SECTION D - **Secretary-Treasurer.**

1. The Secretary-Treasurer shall keep all minutes of proceedings and actions taken at the meetings of the Board of Directors and of the members and shall record the same in the minute book of the Association. The Secretary-Treasurer shall be the custodian in behalf of the Association of its books of account and records and corporate seal. The Secretary-Treasurer shall affix such seal to such documents and instruments as may be directed by the Board of Directors.

2. The Secretary-Treasurer shall keep all monies of the Association and keep books of account thereof and at each annual membership meeting the Secretary-Treasurer shall submit a full statement of account for the preceding period since the last account was rendered, showing the interest of the members in the capital assets, reserves and other assets of the Association. All checks and commercial papers shall be signed by the Secretary-Treasurer or such other officers and persons as the Board may from time to time determine.

3. All officers, agents, directors, members and other person who handle the monies of the Association shall procure and maintain a fidelity bond in favor of the Association, the premium for which shall be paid by the Association.

SECTION E - **Removal and Resignation.** Any officer, agent or other person appointed by the Board of Directors may be removed by a majority vote of the Board of Directors at any regular or special meeting.

Any officer may resign at any time by giving written notice to the Association. Any resignation shall take effect at the date of the receipt of that notice, or at any later time specified in that notice. Unless otherwise specified in that notice, the acceptance of the resignation shall not be necessary to make it effective. Any resignation is without prejudice to the rights, if any, of the Association any contract to which the officer is a party.

3 - BYLAWS

## ARTICLE V

### COMMON STOCK

SECTION A - Certificates. The shares of common stock of this Association shall be represented by certificates of stock in the form selected by the Association. All certificates shall be signed by the President and the Secretary-Treasurer under the seal of the Association. A certificate shall be issued only when the full purchase price thereof has been paid.

SECTION B - Subscription Agreement. The Association may agree to sell shares of its capital stock in accordance with the terms of a subscription agreement approved by it. Persons admitted to membership with the Association shall have the rights and privileges of membership upon the execution of a subscription agreement for the purchase of a share of common capital stock and upon the making of the initial payment therein required.

SECTION C - Breach of Subscription agreement. Failure of a subscriber to comply with the provisions of the member's subscription agreement with the Association shall, at the option of the Association, and in addition to all other remedies provided by law, empower the Association to offer for sale and sell all the right, title and interest which such subscriber has in the Association's capital stock. Such sale is to be made only after having given such subscriber not less than ninety (90) days prior written notice of a demand for payment of delinquent installments and of the time and place of the sale. Proceeds from such sale shall first be applied to the unpaid balance due under the subscription agreement and the balance paid to subscriber.

SECTION D - Limitation of Ownership of Common Stock. No member shall own or hold more than one share of the Association's common capital stock. Common capital stock can be held and owned only by a member of the Association, except that a member may cause said member's share of stock to be issued or reissued in the names of said member and said member's spouse as joint owners with right of survivorship.

SECTION E - Limitation of Sale or Assignment. No share of common capital stock shall be sold, transferred, pledged or encumbered in any way unless it has been first offered for sale in writing at its then market value to the Association, and the Association has refused to purchase it. A written bona fide offer made to a stockholder for a share of common stock shall be recognized by the Board of Directors as the market value of the stock. The Association shall accept or reject an offer of stock as aforesaid within fifteen (15) days of receipt of such written notice. If the Association refuses to purchase, the share may then be sold or transferred to any person who is physically and mentally qualified to perform gainful work for the Association as determined by the Board of Directors. This section shall not apply to reissue of a share of common stock in the names of a member and said member's spouse as joint owners with right of survivorship, as authorized by Section D of this Article.

SECTION F - Transfer Upon Death of Member. Upon the death of a member, said member's personal representative shall have 180 days after appointment by the court to find a purchaser of such deceased member's share or subscription. Upon the expiration of such 180 day period, the Association shall have thirty (30) days within which to either purchase or to find a purchaser for said share or subscription which shall be sold at its fair market value, the purchase price for which shall be paid by the Association to the said personal representative. Upon the expiration of such thirty (30) day period the legal representative may then again seek to dispose of such share to a person acceptable to the Association. If such deceased member was at the time of death a working member of the Association, the person acquiring the member's share or subscription agreement shall have the right to work with the Association in such job classification as the Association determines. If the deceased member's share of common stock is held in the names of that member and said member's spouse as joint owners with right of survivorship, then the surviving spouse shall be considered to be the personal representative referred to in this Section F.

SECTION G - Voting Proxies. The capital stock of the Association cannot be voted, voting in the Association being a privilege of membership. There shall be no voting by proxy.

## ARTICLE VI

### DISTRIBUTION OF EARNINGS

SECTION A - Non Profit. This Association shall operate on a cooperative basis for the mutual benefit of its members who work in the Association, and without profit to itself. All net proceeds from the Association's operations shall be the property of the members of the Association who work in the Association during the fiscal year to which such net proceeds relate, each member's share thereof being proportionate to the time worked by the member in the Association during that fiscal year.

SECTION B - Determination of Net Proceeds. In determining net proceeds for the purpose of this Article, there shall be charged against gross operating receipts of the Association all operating and business expenses incurred by the Association during the applicable fiscal year, including costs of raw materials, manufacturing cost, sales and delivery expenses, general and administrative expenses, taxes, insurance, interest expenses on indebtedness, depreciation and depletion allowances as determined by the Board of Directors, and all other charges necessary or proper in determining net operating proceeds in accordance with generally accepted accounting principles applicable to the Association's operations, and after deducting from gross receipts, as provided by the Oregon Cooperative Corporation Act, dividends, if any, paid upon capital stock of the Association.

4 - BYLAWS

SECTION C - Patronage Credits. Work performed as a member of the Association in the operations of the Association shall be recorded on the Association's books as patronage credits to the account of each member based upon the number of hours of such work. Such patronage credits shall be computed uniformly as to all members irrespective of the kind of work performed or the specific job worked, except that hours worked in excess of forty hours, during any calendar week shall be credited for patronage record purposes as time and a half.

SECTION D - Allocation and Distribution of Net Proceeds.

1. The net proceeds from the Association's operations during each fiscal year shall be allocated among the members of the Association in accordance with the ratio which each member's patronage credits during the year bears to the total patronage credits of all members during that year.

2. Each member's share of the net proceeds from the Association's operations shall be computed at the end of each fiscal year and shall be credited to that member's account with the Association. The amount of net credits, if any, to the account of each member as of the end of each fiscal year (or such other applicable period not exceeding one year as may be entered thereon for advances, indebtedness to the Association, or other cause) shall be paid to the member as soon as may be practicable, but, in any event within ninety (90) day after the close of that fiscal year or other period. Such payment shall be made in cash except as to any sums which may be retained by the Association as hereinafter provided for the Association's contingent or capital reserves.

3. The Board of Directors shall provide for a regular periodic semi-monthly partial distribution, within the limits of reasonable anticipated net proceeds to the Association for capital or reserve purposes, such partial distribution to be based upon the patronage credits accumulated during that period. All such advanced partial distributions shall be subject to final accounting, adjustment and settlement at the close of the applicable fiscal year.

4. Any distributions of net margins or any redemption of or payment based upon security, as those terms are used in ORS 62.425, which remains unclaimed four (4) years after the date authorized for payment, redemption or retirement may be forfeited by the Board of Directors and shall revert to the Association upon compliance with the procedures set forth in ORS 62.425. The amount so forfeited shall be considered as part of the net savings of the Association for the year of forfeiture and shall be allocated accordingly.

SECTION E - Retains.

1. The Board of Directors shall cause to be withheld from the net proceeds otherwise distributable to the working members of the Association each year such sum as the Board may deem necessary to be reasonably required or advisable for any Association contingency reserve. Sums withheld for such reserve shall be credited to the accounts of the working members from whom withheld, subject to subsequent charges as such reserve is expended.

2. In order that the active working members of the Association will currently furnish money through their work for further capitalizing the Association and for revolving the patronage capital furnished by working members in earlier years, the Board of Directors as of the close of each fiscal year shall determine what sum reasonably should be added to the patronage capital of the Association for any proper purpose, including among other purposes the funding or payment of any capital obligations, or the revolving of the Association's capital reserves. The sum thus determined shall be withheld as a capital retainer from the net proceeds otherwise payable or accrued to the members of the Association, and the amount withheld in this manner from each member shall be recorded on the Association's books as payment for a proportionate interest in the patronage capital of the Association. As soon as practicable after the close of each fiscal year, the Board of Directors shall cause to be given to each member written notice of the sum thus contributed by that member to the patronage capital of the Association during that fiscal year. Such capital contributions shall not bear interest and shall not constitute any debt by the Association and the credits representing such patronage capital contributions shall be subordinate to all debts and liabilities of the Association. At any time the Board of Directors shall determine that the portion of the Association's patronage capital acquired through such capital retains, the exceeds the reasonable anticipated needs of the Association for such capital credits Board shall apply any excess to payment of the earliest capital credits representing such capital retains, in the order of the year of their retain, or prorate among such year's retains, if the amount to be paid is less than the full amount of that prior year's retains.

3. Membership in this Association shall constitute consent by that member that any allocation to that member by the Association of net credits or other sums with respect to the member's patronage of the Association occurring after March 31, 1963, which are made in the form of written notices of allocation (as defined in 26 U.S. Code 1388) will be taken into account by the member for income tax purposes at their stated dollar amounts, in the manner and to the extent provided by applicable law in the taxable year in which such notices are received by the member.

SECTION F

Notwithstanding anything to the contrary in this Article VI, the following allocation rules shall apply with respect to net after tax income and net after tax losses of the Association beginning with the fiscal year ended on March 31, 2002 and ending on the completion of the dissolution of the Association:

1. For the fiscal year ended March 31, 2002, the loss (including the effect of the net gain on sales of assets of the Association, related income taxes and treating advances to members during such year as an operating expense) shall be allocated to the members as provided in Section D-1 of this Article VI (the "2002 Losses").

5 - BYLAWS

2. Any net income from operations and the disposition of assets, less any income taxes ("Net After Tax Income"), for any fiscal year commencing on or after April 1, 2002 (the "Liquidation Period") shall be allocated to the members as follows:

(a) First, any Net After Tax Income shall be allocated to offset any Net After Tax Losses previously allocated pursuant to Section F-3(b) below.

(b) Second, any Net After Tax Income in excess of the amount required to be allocated pursuant to Section F-2(a) above shall be allocated to each of the members to whom the 2002 Losses were allocated in proportion to the amount of the 2002 Losses each such member was allocated, not to exceed the then net balance of the 2002 Losses (said net balance being the 2002 Losses reduced by any Net After Tax Income previously allocated pursuant to this Section F-2(b) which had not been previously offset pursuant to Section F-3(a) below).

(c) Third, any Net After Tax Income in excess of the amount required to be allocated pursuant to Sections F-2(a) and F-2(b) above shall be allocated to offset the unallocated losses and overadvances from fiscal years ended prior to March 31, 2000 that are still recorded on the Association s books after the adjustments previously made pursuant to this Section F-2(c) and Section F-3(a) below.

(d) Fourth, any Net After Tax Income in excess of the amounts required to be allocated pursuant to Sections F-2(a), F-2(b) and F-2(c) above (the "New Credits") shall be allocated only to members who have net retains or who were record owners of membership stock as of March 31, 2001 (the "Remaining Members"), and shall be based on the ratio of the patronage credits (hours worked as set forth in Article VI, Section C) which each Remaining Member's patronage credits during the period from April 1, 1991 through March 31, 2001 (the "Look Back Period") bears to the total patronage credits of all of the Remaining Members for the Look Back Period.

3. Any net losses from operations and any dispositions of assets (the "Net After Tax Losses") for any fiscal year during the Liquidation Period shall be allocated as follows:

(a) First, the Net After Tax Losses shall be allocated in the reverse of the sequence set forth in Section F-2 above to offset any Net After Tax Income previously allocated pursuant to Section F-2 above but only to the extent such Net After Tax Income as reduced by any Net After Tax Losses previously offset pursuant to this Section F-3(a).

(b) Second, any Net After Tax Losses in excess of the amounts allocable under Section F-3(a) above shall be allocated in the same manner as is set forth in Section F-2(d) above.

4. Sections F-2 and F-3 above are intended (and shall be so interpreted) to provide for an allocation to members of Net After Tax Income and Net After Tax Losses on an annual fiscal year basis with the same net result to the members as if the entire Liquidation Period were treated as one accounting period and the results of such accounting period were allocated as follows:

(a) If the total income and losses, after income taxes, during the entire Liquidation Period were a net gain, then such net gain would be allocated to members (i) first, to each of the members to whom the 2002 Losses were allocated in proportion to the amount of the 2002 Losses each such member was allocated, not to exceed the 2002 Losses, (ii) second, any excess to offset the unallocated losses and overadvances from fiscal years ended prior to March 31, 2000, and (iii) third, any excess to the Remaining Members (as that term is defined in Section F-2(d) above in the same manner as is provided in Section F-2(d) above.

(b) If the total income and losses, after income taxes, during the entire Liquidation Period were a net loss, then such net loss would be allocated to the Remaining Members in the same manner as is provided in Section F-2(d) above.

## ARTICLE VII

## AMENDMENT TO BYLAWS

SECTION A - Meeting and Majority Vote Requirement.

These Bylaws shall never be amended in their entirety at any one meeting, and no more than two articles may be considered for amendment at any one meeting. If any other article is affected by the article being amended, it shall be changed to coincide with the amended article. These Bylaws may be amended at any membership meeting by the affirmative vote of the majority of the members present, provided that a copy of the proposed amendment has been sent to each member no less than (30) days prior to such meeting.

SECTION B - Method of Amendment. There shall be three ways to amend the Bylaws:

1. By any member distributing the proposed Bylaw change to all members thirty (30) days prior to a general or special meeting. This is to be done at the member's expense but the Secretary shall furnish the member with a list of the members names and addresses as it is recorded in the Association files, provided the member so requests.

2. By submitting such proposed change to the Secretary to be distributed to the membership at Association expense, provided the Board of Directors approve such distribution, in which case the Secretary shall see that the distribution is made.

3. By motion at any general meeting that the member's proposed change shall be considered for action at the next meeting, provided such received the affirmation vote of the majority of members present. In this case, the President may appoint a committee to draft the change, and/or consult with the Association attorney, if the President deems such action necessary.

ARTICLE VIII
WORKING RULES

A. PLANT COMMITTEE

SECTION 1 - Organization.

(a) At the adoption of these Bylaws and at each annual meeting thereafter, the working members shall elect from the members of the Association five (5) persons to serve as members of the Plant Committee, each of whom shall hold office for one year or until their successor is elected and qualified. The Plant Committee shall elect from their number a Chair and a Secretary.

(b) Elections of plant committee members will be in the same manner as the Board of Directors as set forth in Article III, Section B(1).

(c) Vacancies will be filled in the same manner as the Board of Directors as set forth in Article III, Section I, except that no special membership meeting shall be called.

(d) All members of the committee present must vote, no abstentions. A quorum of four members and a minimum of three affirmative votes are required for any Plant Committee action.

SECTION 2 - Jurisdiction. Except complaints arising out of the alcohol and drug policy and the rules and regulations of that policy, the Plant Committee will be considered exclusively by the Board of Directors, the Plant Committee shall have the power to receive all other complaints made by a member of the association, including but not limited to disputes between members or appeals involving discipline of members. It shall conduct hearings with respect thereto and on all matters presented to it, and make findings of fact. It may impose penalties and or make recommendations to the Board of Directors. The plant committee shall publish its findings and notify all parties in writing within three (3) working days.

SECTION 3 - Procedure. All complaints must be in writing and must be signed by the person or persons submitting them and must clearly state the matter of grievance. Three copies thereof must be filed with the Plant Committee or any member thereof, whereupon the accused member shall be notified in writing of such charges. The member making the complaint and the accused member shall then be given opportunity for hearing and the Plant Committee may make such additional investigations as it deems necessary. It may make its own rules and regulations for the handling and disposition of complaints filed with it.

SECTION 4 - Appeals. Any affected member may appeal from a decision of the plant committee to the Board of Directors by filing with the Secretary-Treasurer of the Association a written notice of appeal within three (3) working days of written notification of a plant committee decision. The appeal of the plant committee decision shall be limited to whether a fair hearing was conducted and to whether the penalty imposed or recommended was appropriate.

SECTION 5 - Penalties

(a) The Plant Committee shall impose such penalties as it judges appropriate except as specifically provided in Article VIII, C, 2, (a), (b), (c).

(b) No penalty (time off) shall be imposed prior to the provisions for hearing and appeal set forth in Article VIII, Section A(4), unless the member has waived said member's right in writing. Appeals to the Plant Committee must be filed within one working day.

(c) Penalties imposed under Article VIII, C, 2, (a), (b), and (c) shall be imposed immediately.

B. CONDITIONS OF WORK

SECTION 1 - Hours of Work. The work week shall commence with the start of the graveyard shift on Sunday of each week. Members working shall be on the job at the commencement of their work shift and shall remain on the job until the end of each shift.

(a) Every member shall be given an equal opportunity to work an equal number of hours. The advances shall be paid semi-monthly and that amount, in reference to equalization, shall be posted in the mill each month. All members of the Association must punch the time clock in and out; exceptions shall require Board approval.

(b) Members working on an operation which is conducted for one or two shifts shall have a one-half hour lunch period without pay. Members working on an operation which is conducted for three shifts shall have a twenty-minute lunch period with pay.

(c) Groups working on jobs of more than one working shift shall rotate working shifts every fourth week.

SECTION 2 - Seniority. All members shall be called to work in the numerical order of their stock subscription number, and all members who refuse to come to work when called, except in emergencies as determined by the Board of Directors, shall, thereupon lose their seniority. As to members who are working the first day, Association, their seniority shall be computed as beginning on the first day, which such member worked on said member's most recent period of work with the Association. A seniority list showing the seniority rights of each member shall be posted in the plant.

SECTION 3 - Bidding on Jobs.

(a) The jobs of Manager, Superintendent, Foreman, Foreman Trainee, Master Mechanic, Sales Manager, Log Buyer, Head Electrician and Office Personnel shall

7 - BYLAWS