# Exhibit 11

# NATURAL RESOURCE TRUSTEE MEMORANDUM OF AGREEMENT
## FOR THE PORTLAND HARBOR SUPERFUND SITE

This Memorandum of Agreement (MOA) is entered into by and between the following governmental entities:

-the Confederated Tribes and Bands of the Yakama Nation
-the Confederated Tribes of the Grand Ronde Community of Oregon
-the Confederated Tribes of Siletz Indians of Oregon
-the Confederated Tribes of the Umatilla Indian Reservation
-the Confederated Tribes of the Warm Springs Reservation of Oregon
-the Nez Perce Tribe
-the Oregon Department of Fish and Wildlife
-the United States Department of the Interior
-the National Oceanic and Atmospheric Administration (NOAA)

These governmental entities are collectively referred to as the "Trustees".

## I. PURPOSE

The Trustees recognize the importance of coordinating:  1)  any assessment of natural resource damages for injuries to natural resources resulting from hazardous substance releases at or from the *Portland Harbor Site* (Site)[1]; 2)  any actions to restore, replace, or acquire the equivalent of those resources (restoration);  and 3) any prosecution or settlement of natural resource damage claims associated with the Site.  Further, the Trustees recognize the importance of coordinating their efforts as participants in the February 2001 Intergovernmental Memorandum of Understanding (Intergovernmental MOU) for the Portland Harbor Superfund Site with the Environmental Protection Agency (EPA) and Oregon Department of Environmental Quality. The purpose of this Trustee MOA is to provide a framework for such coordination and cooperation between the Trustees and for implementation of joint activities.

---

[1]The boundaries of the site for remedial purposes will be determined after the issuance of the Record of Decision(s) (ROD)(s) by the Environmental Protection Agency.

## II. AUTHORITY

The Trustees enter into this MOA pursuant to the authorities provided under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Section 9601, et seq. (CERCLA), the National Oil and Hazardous Substances Pollution Contingency Plan, 40 C.F.R. 300, Subpart G (NCP), Executive Order 12580 and other applicable federal and state laws and regulations.

## III. SCOPE

Natural resources for which the above-identified federal, state, and tribal entities assert trusteeship may have been injured as a result of releases of hazardous substances at or from the Site. Releases of hazardous substances at or from the Site are continuing.

This MOA is intended to facilitate the coordination and cooperation of the Trustees with regard to: 1) review of EPA and State remedial activities at the Site as participants in the Intergovernmental MOU; 2) the performance of any joint natural resource damage assessment (NRDA), pre-assessment, emergency restoration, restoration planning, and restoration implementation activities ("NRDA activities"); 3) any prosecution or settlement of natural resource damage claims; 4) the maintenance of confidentiality of designated documents and discussions related to NRDA activities; and 5) the role and responsibilities of the Trustee Council and the Lead Administrative Trustee (LAT) as defined herein.

## IV. TRUSTEE COUNCIL ESTABLISHMENT AND RESPONSIBILITIES

### 1. TRUSTEE COUNCIL

The Portland Harbor Natural Resource Trustee Council (Trustee Council) is established and will be the forum through which the Trustees will coordinate their NRDA activities in connection with the Site.

### 2. TRUSTEE COUNCIL RESPONSIBILITIES:

The Trustee Council is responsible for the following activities:

> a. facilitating Trustee review and comment on potentially responsible party (PRP) deliverables as provided for under the Intergovernmental MOU; this facilitation may involve the development of joint positions but does not require unanimous approval by the Trustee Council.

> b. facilitating Trustee development and implementation of any NRDA activities;

c.  assisting the Trustees in negotiating the terms of funding and participation agreements with PRPs for NRDA activities;

d.  authorizing deposits to and disbursements from the account(s) in which funding will be deposited;

e.  developing joint Trustee negotiation, settlement, litigation, and restoration positions; and

f.  establishing a regular meeting schedule, protocol, and procedures for Council business and sub-committees not otherwise set out in this MOA as necessary.

## 3.  LEAD ADMINISTRATIVE TRUSTEE:

It is the goal of the Trustees to work together cooperatively and to coordinate their communications with the public and the PRPs.  For purposes of facilitating the exchange of information and the coordination of positions among the Trustees, one Trustee will be designated the LAT.  The LAT is responsible for managing and coordinating NRDA activities for the Trustees and serves as the Trustee Council's primary contact and representative on NRDA issues in accordance with Trustee Council decisions.  The LAT will be responsible for:

a.  acting as the Trustees' central point of contact for communication with the PRPs.  The LAT will coordinate these communications with the Trustees.

b.  preparation of such minutes, resolutions and other documents as needed to record actions and decisions of the Trustee Council;

c.  maintenance of the administrative record for any assessment and restoration activities; and

d.  such other duties as agreed upon by the Trustees.

The Trustees agree that NOAA will serve as the LAT.  Upon unanimous approval, the Trustee Council  may designate another Trustee as LAT.  The LAT may delegate any of its duties to another Trustee with the unanimous approval of the Trustee Council.

## 4.  TRUSTEE COUNCIL MEMBERSHIP:

The Trustee Council will consist of one member and one alternate from each of the Trustees.  Other representatives of each Trustee may attend meetings and participate in the deliberations of the Trustee Council.

5.  TRUSTEE COUNCIL DECISIONS :

Trustee Council decisions shall be reached by unanimous approval. Unanimous approval means an affirmative vote by each active Trustee Council representative or an affirmative vote by eight of the nine Trustee Council representatives with one abstention.  The Trustee Council will conduct extensive good faith discussions directed toward obtaining unanimous approval.   It is the goal of the Trustees to resolve disputes informally. In the event unanimous approval cannot be reached, the dispute resolution procedures provided in Section V. will govern.

Decisions of the Trustee Council shall be recorded in writing, either by resolution signed by the voting representatives, or in minutes approved as to content and form by the voting representatives.  All decisions authorizing the expenditure of funds, however, shall be memorialized in a Trustee Council resolution signed by the voting representatives. The budget and other documents describing the work to be conducted will be attached to the resolution and maintained in the administrative record.

The Trustee Council may seek advisory participation from other federal, state, or local agencies or any other entity as deemed appropriate by the Trustee Council.

6.  TRUSTEE COUNCIL DECISIONS BY PROXY:

A Trustee Council representative may vote by proxy when both the primary and the alternate representatives are unavailable for a meeting.  The proxy must be in writing, delineating voting instructions for a specific resolution(s), and signed by the Trustee Council representative. The proxy will be sent to the LAT or the Trustee chairing the Council meeting (if not the same) for which the proxy is intended.  A copy of the proxy will be attached to any written resolution(s). The original proxy will be retained by the LAT for inclusion in the administrative record.  A separate proxy is required for each meeting which a Trustee representative cannot attend.  Should an issue(s) arise at a Trustee Council meeting which is not covered by the proxy, the Trustee Council cannot vote on the issue at that meeting.

7.  TELEPHONE PARTICIPATION:

A Trustee Council meeting may be convened by a telephone conference call. Should a Trustee Council representative(s) be unable to travel to a meeting that representative(s) may participate by telephone conference, if such facilities are available.

8.  TRUSTEE COUNCIL CHAIRPERSON:

The Trustees agree that the Trustee Representative for the Warm Springs Tribe will serve as the Trustee Council Chairperson. The position may rotate on a yearly basis as agreed to

by the Trustees. The Trustee Council Chairperson, with the assistance of the LAT, will be responsible for organizing meetings, preparing proposed agendas, identifying in the agendas any issues to be voted upon at the proposed meeting, distributing agendas to the designated primary, alternate and legal contacts at least three (3) days in advance of a meeting, and presiding over convened Trustee Council meetings.

### 9. TRUSTEE COUNCIL MEMBERS AND ALTERNATES:

No later than twenty (20) working days after the final execution of this MOA by a Trustee, the Trustee will notify the other Trustees of the names, addresses, e-mail addresses, telephone numbers, and facsimile numbers of that Trustee's primary, alternate and legal representatives to the Trustee Council. Communications regarding the Trustee Council business shall be addressed to the primary representative and, unless the Trustee Council directs otherwise, copied to the alternate representative and the Trustee legal representative.

Legal representatives of each Trustee will serve as legal counsel to their Trustee representatives on the Trustee Council.

The Trustee Council will develop procedures to address Trustees who may need to take a temporary leave of absence and become an inactive member of the Trustee Council. In no case will execution of a leave of absence by a Trustee result in delay in Trustee Council decision making.

## V. DISPUTE RESOLUTION

If the Trustees do not reach unanimous approval through informal means, the Trustees will use the following dispute resolution process:

1. Any unresolved dispute will be elevated to the Trustee representatives' respective managers.

2. If the Trustees continue to disagree the matter will be elevated to the following officials identified in Appendix A who will resolve the matter or decide the appropriate forum or means for ultimate resolution.

3. The agencies will strive to resolve disputes within thirty (30) working days.

4. This Dispute Resolution provision does not preclude separate government-to-government consultation between the Tribes, the State, NOAA and the DOI.

## VI. RECOVERY OF FUNDS

### 1. ASSESSMENT ACTIVITIES

The Trustees may enter into funding and participation agreements with one or more PRP(s) to fund NRDA activities. Any agreement will address the terms of the monetary disbursement and the level of PRP participation. The Trustees acknowledge that payments and/or promises of goods and services for NRDA activities pursuant to any funding and participation agreement, exclusive of the individual costs of their participation, are intended for the joint and undivided use and benefit of all the Trustees acting cooperatively in planning, coordinating and conducting joint Trustee NRDA activities. Prior to the receipt of any such funds, the Trustee Council will, by resolution, determine the appropriate place for the deposit of funds and appropriate activities for the expenditure of these funds recognizing that legal authority may restrict where such funds can be held. Any interest earned on the money deposited in the Fund shall be credited to the fund and shall be subject to the terms of this MOA.

The Trustees will evaluate the most effective means for recovery of their individual costs of participation and seek recovery of these costs through agreement(s) with one or more PRP (s). The Trustees further acknowledge that each Trustee may seek individual reimbursement from any PRP for NRDA activities unanimously approved by the Trustee Council but separately financed by the individual Trustee. However, prior to seeking reimbursement, the Trustee will provide notice and an accounting of the monies sought to the Trustee Council. Additionally, the Trustees will be responsible for maintaining their own accounting for the costs of their participation. The LAT will be responsible for keeping an accounting of any agreed upon joint NRDA activities. It is the goal of the Trustees to minimize administrative costs.

### 2. SETTLEMENT

The Trustees recognize that their coordinated activities may result in the recovery of funds for the purpose of restoring natural resources and/or natural resource services injured, destroyed, or lost as a result of releases from or at the Site. Prior to the receipt of any such funds, the Trustee Council, will by resolution, determine the appropriate place for the deposit of funds recognizing that legal authority may restrict where such funds may be held. The depository chosen will be referred to as the Portland Harbor NRD Fund. Any interest earned on the money deposited in the Portland Harbor NRD Fund shall be credited to the Fund and shall be subject to the terms of this MOA. No money shall be expended from the Portland Harbor NRD Fund except to the extent such expenditure is consistent with this MOA, any consent decree and/or administrative order on consent which embodies a settlement between the Trustees and any PRP(s), and any applicable law.

## VII. COMMUNICATIONS AND SETTLEMENT NEGOTIATIONS

It is a goal of the Trustees to work together cooperatively and to coordinate their communications and settlement discussions with any PRP. The Trustees agree to inform each other within five (5) working days of any oral or written communications to or from PRPs regarding proposed settlement or other disposition of natural resource damage claims associated with the Site. The Trustees may enter into settlement negotiations with a PRP(s) for the purpose of resolving any natural resource damage claims. No Trustee may conduct independent settlement negotiations with a PRP, with the exception of negotiations conducted by a Trustee for individual reimbursement in accordance with Section VI of this MOA, or pursuant to reservation of rights in accordance with Section IX of this MOA, or unless all Trustee representatives agree in writing to such independent settlement negotiations.

## VIII. CONFIDENTIALITY

The status of the Parties as co-Trustees warrants that they carry out NRDA activities and settlement negotiations in a coordinated fashion and that they protect the integrity of the claim determination and analysis process and the confidentiality of certain information and strategies. The Trustees may share among each other certain confidential information, including but not limited to: legal strategies and theories, draft documents, deliberations, proprietary information, and other confidences regarding the assessment and collection of natural resource damages associated with the Site ("Confidential Information"). The Trustees agree that the sharing of such Confidential Information among Trustees is being done for the purpose of asserting common claims and asserting and protecting the rights and interests of respective clients, and that any other publication or use is not authorized. The attorney-client, attorney work-product, deliberative process, law enforcement, and other such privileges are intended to remain attached to Confidential Information and the sharing and exchange of such Confidential Information among Trustees does not waive any privilege attaching thereto. Whenever sharing information deemed confidential, the Party shall clearly mark any information to which it asserts a privilege as "Privileged and Confidential Information Do Not Release Without Authorization." To the extent permitted by applicable law, each Trustee agrees not to disclose to any person not a party to this MOA any Confidential Information so marked without the consent of the Trustee generating the information. The Trustees agree that failure to so mark information developed or shared under this Agreement does not preclude the parties from asserting the protections from disclosure available under law. The obligation to not disclose Confidential Information shall survive withdrawal or termination by any party.

The Trustees recognize the public's interest in scientific data developed during the damage assessment process. As appropriate, the Trustees may decide to release such information after consultation with legal representatives.

## IX. RESERVATION OF RIGHTS

This MOA is intended only to achieve the purposes set out in Section I of the MOA and is not intended to create any right or responsibility which is legally enforceable by any person or entity against any Trustee and creates no rights in third parties or the right to judicial review regarding the acts or omissions of any Trustee.

Nothing in this MOA is or shall be construed to be a waiver of the sovereign immunity of a signatory Trustee.

Each Trustee to this MOA reserves all rights now or hereafter existing and nothing in this MOA waives or forecloses the exercise of any such rights. However, each Trustee to this MOA agrees to provide (10) ten days prior written notice to all other Trustees of its intent to participate in independent claims or negotiations with any PRP (s) or other entities regarding settlement or other disposition of natural resource damage claims associated with the Site.

A Trustee engaging in independent claims or negotiations  must  withdraw from this MOA in accordance with Section X unless such claim or negotiation is for individual trustee reimbursement of costs in accordance with Section VI. of this MOA or is unanimously approved by the Trustee Council.

## X. MISCELLANEOUS PROVISIONS

### 1. WITHDRAWAL AND TERMINATION

This MOA shall be in effect from the effective date until termination by unanimous approval of the Trustees who are parties to the MOA.  A Trustee may withdraw from the MOA, upon written notice at least ten 10 days in advance of the withdrawal.  In the event of the withdrawal of any Trustee, or upon other termination of this MOA, there shall be a full and complete accounting of all funds received and expended pursuant to Section VI of this MOA, or otherwise controlled in any joint account by the Trustees.

### 2. COMMITMENT OF RESOURCES

Nothing in the MOA shall be construed as obligating the United States, the Tribes, the State of Oregon, or  their respective officers, agents, or employees, to expend any funds in excess of appropriations authorized by law.

### 3. MODIFICATION OF MOA

This MOA will be periodically  reviewed by the Trustee Council.  The MOA  may be modified by unanimous approval of the Trustees.  Any modification must be in writing

and signed by all the Trustees who are parties to the MOA at the time of modification.

### 4. EXISTING DIRECTIVES

Nothing in this MOA is intended to conflict with existing directives of any Trustee. If the terms of this MOA are inconsistent with existing directives of any Trustee, those portions of this MOA that are determined to be inconsistent shall be identified by the applicable Trustee. At the first opportunity for review of the MOA, all identified inconsistencies will be discussed by the Trustees for possible amendment to this MOA as the Trustees determine appropriate.

### 5. TRUSTEESHIP

Nothing in this MOA is intended to imply that any signatory Trustee is in any way abrogating or ceding any responsibility or authority inherent in its trusteeship over natural resources. Nothing in this MOA shall be construed to restrict, enlarge or otherwise determine the rights, interests, and jurisdiction of any Trustee.

## XI. EXECUTION: EFFECTIVE DATE

This MOA may be executed in counterparts. A copy with all original executed signature pages affixed shall constitute the original MOA and shall be maintained by the LAT. The MOA shall be effective with respect to any Trustee upon submission of that Trustee's executed signature page for the MOA.

## XII: SIGNATURES

The following officials execute this MOA as representatives of their respective agencies, which act on behalf of the public as Trustees for natural resources, and as representatives of tribal governments, which act on behalf of their tribal membership.

# APPENDIX A

**Signing Officials:**

DEPARTMENT OF COMMERCE
NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION

_____          12/5/01
Craig R. O'Connor                         Date
Acting General Counsel, NOAA

DEPARTMENT OF THE INTERIOR
U.S. FISH AND WILDLIFE SERVICE

for _____    7/15/02

Anne Badgley                        Date

Regional Director, U.S. Fish and Wildlife Service, Region 1

OREGON DEPARTMENT OF FISH AND WILDLIFE

_Lindsay A. Ball_                                         03-10-02
Lindsay A. Ball                                            Date
Director Oregon Department of Fish and Wildlife

CONFEDERATED TRIBES AND BANDS OF THE YAKAMA NATION

_____      _____
Lonnie Selam, Sr.                               Date
Chairman, Tribal Council

CONFEDERATED TRIBES OF THE GRAND RONDE COMMUNITY OF OREGON

Cheryle A. Kennedy
Tribal Council Chairwoman

April 12, 2002
Date

CONFEDERATED TRIBES OF THE UMATILLA INDIAN RESERVATION

Gary Burke
Chair, Board of Trustees

12-31-01
Date

CONFEDERATED TRIBES OF THE SILETZ INDIANS

Chairperson, Delores Pigsley                          Date

CONFEDERATED TRIBES OF THE WARM SPRINGS RESERVATION OF OREGON

Olney Patt, Jr.
Chairman, Tribal Council

Nov. 6, 2001
Date

NEZ PERCE TRIBE

*Samuel N. Penney*
Samuel N. Penney, Chairman

7-17-02
Date

*Carla Wheeler*
Julia A. Davis-Wheeler, Secretary

7-18-02
Date