# Exhibit 15



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
WASHINGTON, D.C. 20460

Received

DEC 1 1 1998

Enforcement & Compliance Docket
& Information Center

SEP 3 0 1997

OFFICE OF
ENFORCEMENT AND
COMPLIANCE ASSURANCE

<u>MEMORANDUM</u>

SUBJECT:   General Policy on Superfund Ability to Pay Determinations

FROM:   Barry Breen, Director
Office of Site Remediation Enforcement

TO:   Regional Counsel, Regions I-X
Regional Enforcement Coordinators, Regions I-X
Director, Office of Site Remediation & Restoration, Region I
Director, Emergency & Remedial Response Division, Region II
Director, Hazardous Waste Management Division, Regions III & IX
Director, Waste Management Division, Region IV
Director, Superfund Division, Regions V, VI & VII
Assistant Regional Administrator, Office of Ecosystems Protection &
   Remediation, Region VIII
Director, Office of Environmental Cleanup, Region X

This memorandum transmits a policy document developed by the Office of Site Remediation Enforcement (OSRE) that explains what is necessary for an acceptable ability to pay (ATP) settlement in Superfund cases. The main text of the policy document addresses **general** issues that apply to the ATP process and ATP settlements. The policy document also contains two appendices that address issues specific to making ATP determinations for **individuals** and **businesses**.

The policy document is directed primarily toward Office of Regional Counsel (ORC) and Superfund enforcement program staff who handle cases involving ATP issues. It should also be useful for potentially responsible parties (PRPs) who believe that they are unable to pay their share of Superfund cleanup costs, as well as for other PRPs at sites where ATP claims are raised.

This policy document is the second Superfund ATP document issued by OSRE. In May 1995 OSRE issued a "short sheet" guidance document, entitled "Overview of Ability to Pay Guidance and Models," which describes policies and models relevant to Superfund ATP analyses.

The policy document establishes an "undue financial hardship" standard for determining a party's ability to pay its share of Superfund cleanup costs, and uses a two-part analysis to

Recycled/Recyclable • Printed with Vegetable Oil Based Inks on 100% Recycled Paper (40% Postconsumer)

determine what is an acceptable ATP settlement amount. The first part of the analysis, called the "balance sheet phase," looks at the assets, liabilities, and owners' equity of the ATP Candidate, calculating the amount of money available from excess cash, the sale of assets that are not ordinary and necessary, borrowing against assets, and owners' equity.

The second part of the analysis, called the "income and cash flow statement phase," looks at the income and expenses of the party and generally calculates "available income" for a Superfund settlement over a five-year period. In calculating "available income," the analysis takes into account "increased future needs" (i.e., ordinary and necessary expenses that will be incurred by the ATP Candidate that have not been incurred in the past or that were incurred previously but which are expected to be significantly greater than in the past).

A work group composed of representatives from regional, headquarters, and Department of Justice offices helped to develop the policy document. This policy is intended to apply outside of a formal bankruptcy context, because the bankruptcy laws provide other mechanisms to protect debtors from undue financial hardship or to allow viable businesses to reorganize. If you have any questions concerning this document, please contact OSRE's Policy and Guidance Branch at (202) 564-5115.

Additional copies of this document can be ordered from the National Technical Information Service (NTIS), U.S. Department of Commerce, 5285 Port Royal Road, Springfield, VA 22161. Each order must reference the NTIS item number, PB97-199731. For telephone orders or further information on placing an order, call NTIS at (703) 487-4650 or (800) 553-NTIS. For orders via E-mail/Internet, send to the following address: orders@ntis.fedworld.gov.

Enclosure

cc:     Steve Herman, OECA
        Steve Luftig, OSWER
        Linda Boornazian, OSRE
        Sandra Connors, OSRE
        Charles Breece, OSRE
        Lori Boughton, OSRE
        Bob Kenney, OSRE
        Lisa Friedman, OGC
        Earl Salo, OGC
        Joel Gross, DOJ
        Bruce Gelber, DOJ
        Karen Dworkin, DOJ
        Superfund Ability to Pay Work Group
        Superfund Ability to Pay Contacts

# GENERAL POLICY ON SUPERFUND
# ABILITY TO PAY DETERMINATIONS

## INTRODUCTION

This document provides a general policy framework for settlements in which a party's financial ability to pay is a significant consideration ("ATP settlement") under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA" or "Superfund"). The United States may enter into ATP settlements with individuals and businesses for recovery of response costs and performance of cleanup work in appropriate cases. The purpose of this policy is to provide guidance to EPA enforcement personnel, affected parties, and the public on the information that EPA will look at in evaluating proposals to enter into an ATP settlement, and the steps that Agency personnel should follow in evaluating a party's inability to pay claim.

The ATP settlement process is reserved for business potentially responsible parties ("PRPs") who demonstrate to EPA's satisfaction that payment of the amount sought by the government is likely to put a company out of business or otherwise jeopardize its viability, and for both business and individual PRPs who demonstrate to the Agency that payment of such an amount is likely to create an undue financial hardship. The ATP settlement process may provide for a reduction in the proposed settlement to an amount that is not likely to create an undue financial hardship. An undue financial hardship occurs if, in the opinion of EPA, satisfaction of the environmental claim will deprive a PRP of ordinary and necessary assets or cause a PRP to be unable to pay for ordinary and necessary business expenses and/or ordinary and necessary living expenses.

This document first presents a general overview of ATP settlements. It then discusses the types of analysis that should be conducted in a case where an ATP settlement has been requested by a PRP, and generally describes how EPA enforcement personnel working on a Superfund case and, where applicable, Department of Justice (DOJ) staff ("the case team") should determine an amount that represents the ability of a particular PRP to pay for response costs or work ("ATP amount"). This document does not cover the final settlement amount that the Agency should accept. There may be situations in which ability to pay is not the only factor on which the settlement is based.

This document also includes appendices that address ATP issues arising in settlements with individuals (Appendix A) and businesses (Appendix B). These appendices provide supplemental information on the analysis of ATP claims and the determination of ATP amounts for individuals and businesses. Although Appendix B was developed primarily to expedite the processing of ATP claims by small businesses, its principles apply to business

entities of all sizes.  The Agency believes that providing in
Appendix B a written description of the standards and procedures
that it will use in making determinations on ATP claims by
business entities will be especially helpful for small entities
that may not have access to sophisticated financial advisors.

Appendices A and B should be read in conjunction with the
main body of this policy document when determining the ability to
pay of these parties in Superfund cases. The appendices do not
discuss each step of the ATP analytical process, so readers
should rely on the main body of the policy statement for a full
description of this process.

## PURPOSE OF ABILITY TO PAY SETTLEMENTS

In any case in which EPA is considering an ATP settlement,
it must consider a number of competing interests.  On the one
hand, the Agency is charged with ensuring that hazardous waste
sites are cleaned up, that money spent from the Superfund is
restored, and that those responsible for contamination pay an
appropriate share of cleanup costs.  On the other hand, many
individuals and businesses have limited resources with which to
satisfy the government's claims.  As the district court recently
noted in United States v. Bay Area Battery, 895 F. Supp. 1524
(N.D.Fla. 1995), the government must be afforded the leeway to
take ability to pay into account in fashioning settlements under
CERCLA.  In particular, it must consider the impacts of any
settlement on the business or individual in a way that recognizes
the value of permitting a functioning business to continue as a
productive component of our economy earning money and employing
workers, and which demonstrates compassion for individuals and
their unique circumstances.

ATP settlements may be utilized to balance two interests:
(1) that a PRP satisfies its liability associated with the
cleanup of an environmental problem; and (2) that payment of the
liability does not create an undue financial hardship for the PRP
or, where the PRP is a natural person, for those dependent on the
PRP[1].

Early identification of an undue financial hardship will
preserve the financial resources of the government, the settling
PRP ("the ATP Candidate"), and other PRPs for cleanup actions by
reducing transaction costs.  EPA does not consider an ATP
settlement for response costs as relieving the settling PRPs from
any other obligation they have under the law, including their

---

[1]Dependents should generally include only those persons
lawfully claimed as such by the PRP on its most recent federal
income tax return.

obligation to allow access or provide information to help facilitate the Superfund process.

EPA seeks to recover monies expended from the Superfund by either obtaining a court judgment against a PRP for the United State's response costs at a site or by settling with a PRP for an appropriate share of the response costs at a site. EPA determines an appropriate settlement amount for a PRP based on a variety of considerations that may include the volume of wastes contributed to a site by the PRP, the nature of the wastes contributed by the PRP, the degree of the PRP's cooperation, and in some cases the PRP's ability to pay[2]. This reflects the fact that ignoring a PRP's ability to pay may, in certain situations, not only impose an undue financial hardship on the PRP but may also reduce or eliminate important benefits that the PRP provides to the community.

Any ability to pay settlement should be based on the particular facts and circumstances of the case. However, it is important that the Agency employ a generally consistent approach to evaluating claims of inability to pay. Accordingly, this policy sets forth a framework for considering such claims, along with procedures that the regions should follow where a PRP asserts that it has a limited ability to make a substantial contribution to the costs of cleanup or to the reimbursement of the government's past response costs.

## CONDITIONS UNDER WHICH EPA WILL CONSIDER A CLAIM OF UNDUE FINANCIAL HARDSHIP

Although the ATP settlement process is based largely on the financial condition of the ATP Candidate, other conditions should also be met as part of the settlement. Among the factors that should be present to proceed with an ATP settlement are the following:

1. **The settling party has met its burden of demonstrating that the payment of the full amount sought by EPA is likely to create an undue financial hardship.**

The burden to demonstrate the likelihood of undue financial hardship rests with the ATP Candidate, rather than with the Agency, in CERCLA cases. The ATP Candidate will be required to provide adequate information to substantiate that payment of the amount EPA seeks is likely to create an undue financial hardship. The Agency need not consider the request made by the ATP Candidate for an ATP settlement unless EPA has received all

---

[2]Interim CERCLA Settlement Policy, 50 FR 5024 (February 5, 1985)

3

requested financial information from the ATP Candidate.
Furthermore, any PRP who is attempting to settle under the ATP
process may be required to assist EPA in defending the
settlement, if the settlement is challenged. The Candidate
should recognize that it may be required to authorize release of
financial information necessary to defend the settlement. Where
appropriate, the Agency will be willing to address
confidentiality issues by seeking to obtain protective orders, in
camera review, or similar techniques.

2.    The settlement should not release the ATP Candidate from
      other site-related responsibilities.

     The ATP Candidate should not be released from other site-
related responsibilities, including the duty to provide the
necessary information and site access to assist with the cleanup
and enforcement activities.

3.    The ATP Candidate must request the ATP Settlement.

     Although EPA may encourage parties to seek an ATP
settlement, the ATP Candidate must request the ATP settlement and
must attest that the payment of a greater amount is likely to
create an undue financial hardship. The ATP Candidate must also
certify to the truth and accuracy of the financial information
that has been submitted.

4.    An Ability to Pay Analysis must consider the entire
      financial position of the ATP Candidate.

     The demonstration of an undue financial hardship must be
based on an analysis of the ATP Candidate's entire financial
situation and not just some portion of the ATP Candidate's
holdings. The analysis should include an ATP Candidate's ability
to obtain support from other entities that may be legally
responsible for satisfying the environmental obligations of the
ATP Candidate. In addition, EPA should review and analyze the
facts and consequences relating to all material transfers of
property by the ATP Candidate subsequent to notice of potential
liability from EPA.

5.    An ATP Settlement is entered on an individual basis with
      each Person as defined under CERCLA.

     The covenant not to sue and contribution protection offered
by the ATP settlement applies only to the ATP Candidate that
demonstrates an undue financial hardship. For example, in the
case of a corporation, the covenant and contribution protection
should generally not extend to other PRPs such as a corporate
parent or corporate shareholder (unless their assets and income
are included within the ATP analysis and they are contributing to
the settlement).

4

6. **The ATP Settlement is in addition to expenditures that are recoverable from other sources.**

The settlement agreement should require the ATP Candidate to disclose the ability of the ATP Candidate to recover expenses associated with the Site. This may include sources such as insurance recoveries, indemnification agreements, contribution actions, and increases in property values resulting from cleanup activities. The ATP settlement should consider the funds available from these activities. Unless the ATP Candidate demonstrates that no recovery from these sources will occur, the settlement agreement should provide for payment of a percentage of recovered expenses to the United States.

7. **The ATP Settlement should seek to resolve all of the ATP Candidate's liability for response costs at the site.**

An ATP settlement should seek to resolve all financial issues associated with the ATP Candidate's liability for response costs at the site. A settlement that does not fully resolve the environmental claim against the ATP Candidate may leave the ATP Candidate exposed to a burdensome contribution claim. The case team and the ATP Candidate should estimate the effect of the settlement on potential contribution claims (and similar claims, such as those related to indemnification agreements) made by other PRPs at the site. The ATP settlement should be very clear in identifying what the ATP settlement will resolve and what litigation exposure (if any) remains for the ATP Candidate.

INITIAL REVIEW

The ATP analysis utilizes past and present financial information to evaluate the present and predict the future financial condition of the party being analyzed and its ability to pay for a cleanup. The ATP analysis requires enough information to support a determination as to whether the proposed settlement is likely to create an undue financial hardship. Generally, the Agency should request that each ATP Candidate (business or individual) submit federal income tax returns for the five most recent years and a completed financial questionnaire.[3] Similarly, the Agency should also generally request five years of financial information (audited, if available) from businesses that are ATP Candidates.

_____

[3] The case team should consult with the financial analyst who will be reviewing the ATP Candidate's financial information to ensure that all relevant information is requested. Copies of financial questionnaires developed by Region 9 for this purpose are attached to this policy document as examples of requests for financial information relating to ability to pay settlements with individuals and businesses.

Additionally, other information, as determined appropriate by
EPA, should be reviewed.  This may include information relevant
to the financial condition of the ATP Candidate that is submitted
by the ATP Candidate itself or by other PRPs at a site, or that
is obtained from disinterested third parties (e.g., Dun and
Bradstreet reports).

     EPA's analysis should characterize the financial condition
of the ATP Candidate.  This analysis should consider the ATP
Candidate's complete financial condition.  In reviewing financial
information, the case team should be alert for facts relating to
transfers of property by the ATP Candidate particularly those
subsequent to the notice of potential liability from the Agency.
The case team should not limit its analysis to the evaluation of
the ATP Candidate's assets, liabilities, income, and expenses.
It may also be appropriate to look to related sources, including
income and assets that are not in the ATP Candidate's name but
which might be available to the ATP Candidate.  Not all such
income and assets should automatically be considered available to
the ATP Candidate, but they should be treated as potentially
relevant to the analysis.

## REVIEW OF ATP SETTLEMENT REQUESTS

     The Regions should implement a consistent approach for
gathering financial information.  It is suggested that a
screening process be developed to identify ATP candidates who
have provided adequate financial information to determine their
ability to pay the proposed settlement amounts and those that
will be required to provide additional financial information for
this purpose.  It would also be helpful to develop a process to
differentiate between situations that clearly require the
assistance of a financial analyst and those that do not.

     When conducting the ATP analysis, the case team will need to
have available a team member who is qualified to express opinions
on the financial information that is submitted.  Although the
case team has the primary responsibility to make determinations
relating to a Superfund settlement, the case team should rely on
the opinion expressed by a person qualified to conduct a
financial analysis when determining whether or not a settlement
amount is likely to create an undue financial hardship.

## USE OF COMPUTER MODELS

     EPA has a variety of computer models that assist with an ATP
analysis.  Included among these models are the ABEL and Superfund
ABEL models for the analysis of ATP claims of for-profit business
entities.  In the near future, EPA will be issuing additional
computer models that will assist in evaluating ATP claims for
individuals and municipalities.  The Agency is also developing
manual financial screening protocols ("protocols") that do not

require very much input, and that may be particularly useful in screening ATP claims made by a large number of PRPs at a Superfund site.

These computer models and protocols, which require the input of financial information, are useful in evaluating financial strengths and weaknesses of a PRP. However, they lack the capability to evaluate the quality of the financial information and to consider all aspects of a PRP's financial condition necessary to make financial projections. Due to these limitations, computer models and protocols should be used in screening and prioritizing ATP settlement requests but should not be the basis for entering into an ATP settlement. The opinion of the case team in conjunction with the opinion of a financial analyst should be the basis for the ATP settlement.

## VERIFICATION

After the initial review, the financial information should be verified. The purpose of the verification process is to determine if the information can be relied upon to express an opinion concerning the effect of the proposed settlement amount on the ATP Candidate.

Information that has been submitted should be verified and the explanation of any discrepancies documented. This verification may require that the ATP Candidate produce receipts for large or unusual expenses, submit an appraisal report to verify the value of an asset purchased or sold, and submit other documentation to substantiate the financial information provided by the ATP Candidate. The amount of substantiating documentation for the ATP settlement is based on case specific needs. The size of the business and the complexity of the financial picture of the business or individual ATP Candidate are important factors in determining what is needed to verify the information. It is anticipated that, in every instance, EPA should perform some minimum verification prior to accepting information as submitted. In the event that the verification process identifies significant contradictions within the financial information, it may be appropriate to preclude any further consideration of an ATP settlement with this candidate.

When estimating borrowing capacity, EPA should determine if the ATP Candidate has overstated its liabilities. Questions relating to the status of a liability should be documented and a determination concerning the priority of the liability in comparison to the environmental claim should be made.

The ATP Candidate should also be required to certify that the ATP Candidate has made a full and accurate disclosure of financial information. The certification can be in the form of a signed statement from the ATP Candidate that is similar to

certifications provided in responding to § 104(e) information requests or work performed pursuant to a consent decree. Any consent decree or administrative order on consent (AOC) that relies on financial information provided by the ATP Candidate should include a provision that the covenant-not-to-sue is null and void if EPA later finds that information to be false or, in any material respect, inaccurate.

In general, after receiving adequate financial information and verifying the information, the case team should conduct an evaluation of the ATP Candidate's ability to pay. This will generally involve a two-phase examination process. First, the Region should analyze the ATP Candidate's ability to make an up-front payment. This analysis is based primarily on a review of its balance sheet ("**balance sheet phase**"). If the up-front payment that can be made by an ATP Candidate is adequate to pay the total amount sought by EPA, the ATP claim should be rejected. If the up-front payment that can be made by an ATP Candidate is not adequate to pay the total amount sought by the Agency, the case team should then analyze the ATP Candidate's ability to make additional payments over time based on the ability to generate available cash flow. This analysis is based primarily on a review of the ATP Candidate's income and cash flow statements ("**income and cash flow statement phase**").

## BALANCE SHEET PHASE

The balance sheet phase includes a review of the assets, liabilities, and owners' equity of an ATP Candidate. The balance sheet is a financial report that displays the assets, liabilities, and owners' equity of a business as of a specific date (e.g., the end of a fiscal year). Assets include cash, cash equivalents, accounts receivable, inventory, and fixed assets. Liabilities include accounts payable, interest payable, notes payable, and taxes. Liabilities may be current (expected to be paid within one year) or long-term (expected to be paid in more than one year). **Owners' equity** (or shareholders' equity) is the difference between assets and liabilities, and includes contributed capital (amounts directly invested by the owners) and retained earnings (profits that have not been paid out to the owners).

The balance sheet phase should produce a dollar estimate that is the sum of (1) excess cash; (2) funds available from the sale of assets that are not ordinary and necessary; (3) increased borrowing capacity; and (4) funds available from owners' equity.

The asset holdings of the ATP Candidate should be examined so as not to deny the ATP Candidate ordinary and necessary assets. While protecting ordinary and necessary assets, EPA recognizes that the ATP Candidate may also possess assets that are not ordinary and necessary. These assets may be sold or

borrowed against without the ATP Candidate incurring an undue
financial hardship.  In addition, there may be cases where
borrowing against ordinary and necessary assets by an ATP
Candidate is appropriate.  This issue is addressed more
specifically in the appendices for individuals and  businesses.

     In making a determination regarding whether an asset is
ordinary and necessary, EPA relies on the information (both
written and oral) provided by the ATP Candidate using the
following general guidelines:

- Businesses--For a business, an asset is ordinary and
  necessary if it is currently used for the business
  purpose of the entity.  This would include, for
  example, manufacturing equipment that relates to the
  product line(s) of the business.  It would not include
  property owned by the business that is intended for
  investment purposes.

- Individuals--For an individual, an asset is ordinary
  and necessary if it provides for a need of the ATP
  Candidate or those dependent on him/her.  Examples of
  such assets are provided in Appendix A.  Property
  holdings that are not held for the purpose of
  generating needed income or that do not provide for
  such needs may not be ordinary and necessary.

     Assets identified as not ordinary and necessary should be
examined to determine the value that can be obtained from selling
and/or borrowing on the asset.

     If the ATP Candidate has not established why an asset is
ordinary and necessary and if the asset has significant value,
the estimated net value of the asset should be included in the
ATP estimate.  If other factors (e.g., reluctance of banks to
lend to a Superfund PRP) prevent the ATP Candidate from borrowing
on the asset, strong consideration should be given to settling
based on the estimated net sale value of assets that have been
identified as not ordinary and necessary.

     After estimating the amount available from assets that are
not ordinary and necessary, the potential of the ATP Candidate to
borrow is determined.  To do this EPA needs to determine what
assets, if any, are secured by existing borrowing; what
liabilities are identified on loan applications; and the extent
to which the potential release from liability was considered in
the lender's decision to lend funds to the settlor.

     In assessing the ATP Candidate's borrowing capacity, the
loan period should generally be estimated based on the facts and
circumstances of each case.  In making this estimate, factors to
be considered should include the type of asset to be borrowed

9

against, the ATP Candidate's equity in the asset, and other relevant factors (e.g., age and income of an individual ATP Candidate).

The balance sheet phase should ensure that the ATP Candidate will have funds available to repay any loan made for purposes of an ATP settlement. If the income statement phase indicates that there may not be adequate income available to make periodic loan payments needed to fully pay the settlement amount, the amount that can be borrowed and applied toward the settlement amount should be reduced to reflect the ATP Candidate's ability to repay a loan. However, if the income statement phase suggests an inability to repay a loan, the balance sheet phase should still include the estimate of funds obtained from the sale of assets that are not ordinary and necessary.

Owners' equity should also be analyzed as a potential source of ATP settlement funds. This part of the balance sheet analysis should look at two primary components: dividends and capital contributions.

Dividends are periodic payments by a company to its owners (i.e., shareholders). Financial statements and tax returns should be examined to determine whether dividends have been issued to shareholders by the ATP Candidate, particularly those issued subsequent to notification of its CERCLA liability. If so, the ATP Candidate should be asked how such dividends were issued in light of the entity's claimed inability to pay the proposed Superfund settlement amount. Absent extenuating circumstances, the amount of such dividends should generally be included in the ATP amount. Payment of future dividends may also be restricted in the ATP settlement agreement.

Capital contributions are investments in a business made by its owner(s). The balance sheet phase of the ATP analysis should also evaluate on a case-by-case basis whether additional capital contributions should be included in the ATP amount.

## INCOME AND CASH FLOW STATEMENT PHASE

In evaluating the amounts that an ATP Candidate can afford to pay over time, Regions should pay particular attention to the income and cash flow statements of the ATP Candidate. This analysis looks at the revenues (income) and expenses of the ATP Candidate over time. This analysis attempts to predict future earning potential and to identify ordinary and necessary future expenses, based on a review of financial statements from prior years, budgets and projections (if provided), and likely future events. As previously stated, the goal of an ATP settlement is to allow a business PRP to remain a going concern and to prevent

10

an individual PRP from suffering undue financial hardship. Excess available cash flow should form the basis for ATP payments over time.

The income statement and cash flow phase includes review of revenues and expenses reported over several successive years. The income statement is a financial report that shows revenue and profit-making activities over a period of time, typically a fiscal year. Revenues measure the inflow of assets, while expenses measure the outflow or using up of assets. Net income indicates an increase in assets and owners' equity during a time period, while net loss indicates a decrease. Changes in revenues and expenses from year to year should be examined to determine if a trend exists and if there is an explanation for this trend. If a trend is identified, financial projection should reflect the impact of the trend.

Total sources of revenue should be examined to determine if they are stated correctly and to make sure that they have not been undervalued. A similar review of expenses should be made to determine if a trend exists, if expenses have been overstated, and/or if the need for the expense has not been established. Questionable revenues and expenses are to be discussed with the ATP Candidate and may result in adjustments to the income statement estimate. When adjustments are made, the reason for the adjustment should be documented in the case file.

After the examination of prior revenues and expenses, any Increased Future Needs identified by the ATP Candidate should be examined. Increased Future Needs are ordinary and necessary expenses that will be incurred by the ATP Candidate that have not been incurred in the past or that were incurred previously but are expected to be significantly greater than in the past. When estimating Increased Future Needs, the ATP Candidate must explain the reason why payment of these expenses cannot be deferred for a limited period of time. Examples of Increased Future Needs are:

- Businesses--Estimated environmental expenditures that are to be incurred in the next five years. However, in limited and appropriate cases, the ATP settlement may require additional payments if the estimated environmental expenditures are not made.

- Individuals--A significant decrease in revenues or a significant increase in expenses that will be incurred within the next five years, such as a change in an individual's financial situation caused by retirement.

The next step in the income and cash flow statement phase is to calculate the difference between the projected revenues and ordinary and necessary expenses (including any Increased Future Needs and debt servicing on any additional borrowing determined

11

appropriate in the balance sheet phase of the analysis) during
the next five years ("Available Income").  The Available Income
should be compared with the proposed settlement amount.  If the
Available Income is greater than the settlement amount, there is
no undue financial hardship and no reduction based on an ATP
claim should be allowed.  If Available Income is less than the
settlement amount, the difference between these two amounts
should be included with the ATP estimate.

The Agency should normally require an ATP Candidate to
direct five years of Available Income toward payment of the
proposed settlement amount.  However, the number of years of
Available Income may be changed when circumstances warrant.
Examples of such circumstances include the following:

- The revenue and expense projections for an ATP Candidate are
  too erratic to allow for any certainty in the future cash
  projections.  In such a situation, the settlement may need
  to require payment of a percentage of future earnings for
  more than five years.

- A business is in the process of a major capital
  restructuring that will result in a temporary deferral of
  profits.  In such a case, the analysis may need to include a
  greater number of years of Available Income or consider the
  use of an alternative method to estimate the value of the
  restructuring.

- An individual has a very valuable asset that produces only
  minimal income.  In such a case, the analysis may need to
  include a greater number of years of Available Income or
  consider the net sales value of the asset in the calculation
  of a settlement amount.

The fact pattern associated with each ATP Candidate's
financial position may require deviation from the five year
estimate.  This deviation may be in the form of a reduction or
increase in the number of years of future income that is
considered.  It may also include consideration of the sale value
of an income-producing asset instead of limiting the review to
income provided by the asset.  The explanation for the change in
the estimate should be part of the documentation requirements.

If the case team determines that an ATP settlement should
include payments over time, an interest factor should be applied
to all payments except the up-front payment.  Interest should be
applied at the Superfund rate, which changes annually and can be
obtained by contacting Charles Young of the Financial Management
Division, Office of the Chief Financial Officer (202-564-4914).
In addition, the Region should determine whether settlement
payments made over time can be secured by personal guarantees
from owners of an ATP Candidate business (particularly if it is

12

known that an owner has significant personal assets) and/or
through unencumbered assets (i.e., assets that have no
outstanding liens or pledges against them).

## ESTABLISHMENT OF THE ATP AMOUNT

Any type of credit analysis, including the assessment of a
ATP Candidate's ability to pay Superfund cleanup costs, involves
many judgments with regard to issues like what constitutes an
ordinary and necessary asset or expense, what projected future
earnings and available cash flow are likely to be, and whether a
capital expenditure can be reasonably delayed.  It is important
for the case team and the analyst to obtain necessary information
from the business entity or individual pertaining to these
difficult decisions in order to reasonably arrive at an
appropriate ability to pay determination.

Once the case team is assured that all requested financial
information has been obtained and analyzed, Available Income (as
defined above), amounts available from estimated borrowing
capacity, amounts available from the sale of assets that are not
ordinary and necessary, and amounts available from owners' equity
should be identified and added together.  This sum should then be
reduced by an appropriate safety factor to reflect the
uncertainties in making predictions for a specific ATP Candidate,
and to provide for unexpected events.  The safety factor can be a
percentage adjustment, a dollar estimate or some other adjustment
that is appropriate to the analysis and should be determined on a
case by case basis.  The amount produced by this step is the
estimated ATP amount.  Another quick review of the ATP
Candidate's financial situation should be conducted to assure
that the analysis is complete and accurate.  If this review
indicates that the ATP Candidate can pay the estimated ATP
amount, that amount should be recommended as the ATP amount.[4]  If
the review does not produce such a result, the estimated ATP
amount should be revisited.

Once the ATP amount has been established, EPA should seek
settlement rapidly since the financial condition of an ATP
Candidate may change.  If there is an extended delay between the
analysis and the settlement, the financial condition of the ATP
Candidate may change and EPA's information may be stale.

In evaluating the amount that an ATP Candidate can afford to
pay in a settlement, one consideration is how the payment will be
structured in the settlement agreement, namely a one-time payment
versus installment payments.  For example, an ATP Candidate's
ability to generate future income may be used to fund installment

---

[4]Any ATP settlement recommendation in a case involving the
Department of Justice is subject to DOJ approval.

13

payments over time, or it may be used to support borrowing to
fund an up-front payment.  If there is borrowing capability, the
amount available to fund an up-front payment is increased by the
ability to borrow.  However, servicing the additional debt
(payment of principal and interest) must be factored into the
income and cash flow phase of the analysis, and reduces the
availability of funds in that phase.

The ATP amount should generally be payable upon settlement.
Under appropriate circumstances, however, the settlement may
provide for installment payments.  When considering installment
payment options, the case team should keep in mind the advantages
and disadvantages of such payments, including the potential of an
increased ATP amount, the risk of default, and the administrative
burden on the Agency.

Generally, the Agency should not structure payments over a
period longer than five years.  There may be times when a
settlement is more appropriately structured over a shorter period
of time.  For example, if it is determined that an ATP Candidate
has a specific large cash need beginning in the fourth year after
settlement and that therefore extending a payment beyond three
years would not likely result in significant additional payment
amounts, the payment period could be limited to three years.

## SHARING THE REVIEW

Once an appropriate ATP amount is determined, the
conclusions of the ATP analysis should be shared with the ATP
Candidate[5].  After a discussion of the ATP amount and the basis
for the amount, the ATP Candidate should be allowed to respond to
the analysis and to submit additional financial information.  If
the information submitted by the ATP Candidate is new and
significant, it may result in changing the ATP amount.  If it
does not, negotiations may proceed provided the ATP Candidate
agrees to the ATP amount.

## DOCUMENTATION OF THE DECISION

The case team should document the ATP decision in Superfund
settlements.  Under CERCLA, costs not recovered from one PRP may
be recovered from other PRPs.  Because an ATP settlement is
predicated on, among other considerations, a PRP's financial
ability to pay, it has the potential to affect the settlement

---

[5]Agency personnel should generally not provide a copy of any
ABEL or other computer model analysis to an ATP Candidate unless
the analysis indicates an ability to pay the full amount sought
by the government.  For further information on this subject, the
ABEL User's Guide (or other appropriate computer model user's
guide) should be consulted.

amount to be paid by other PRPs.  Therefore, it is important for the case team to document the basis for the ATP settlement, including identifying and maintaining copies of all documents relied upon in conducting the ATP analysis as well as preparing a narrative explanation that describes the analysis.  This ATP documentation is not part of the administrative record for response selection and is not subject to National Contingency Plan ("NCP") requirements relating to the Administrative Record for Response Selection.

## DEVIATION FROM THIS MEMORANDUM

Each person's financial condition is unique.  Accordingly, if the specifics of the financial position of a PRP are not applicable to the assumptions contained in this guidance, an ATP Settlement may be reached on other grounds, but should be clearly documented and elevated to the appropriate management official for approval.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

NOTICE:  This policy is not a rule, and does not create any legal obligations.  The extent to which EPA applies the policy will depend on the facts of each case.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

# APPENDIX A: INDIVIDUAL ABILITY TO PAY DETERMINATIONS

## APPLICABILITY

For purposes of this appendix, an individual is a natural person. Individuals include sole proprietors and non-corporate general partners in a partnership. However, this appendix does not apply to limited partners in a partnership because their liability, like that of shareholders in a corporation, is generally limited to the amount of their investment.[6]

The ability to pay of a partnership that has both limited and general partners should be evaluated in two stages. First, financial resources of the partnership should be assessed. Second, if the resources of the partnership entity are inadequate, the financial resources of the general partner(s) (but not those of the limited partner(s)) should then be assessed to determine whether these resources can make up the shortfall. If the general partner(s) is an individual, the policy set forth in this appendix on individual ability to pay determinations should be followed. If the general partner(s) is a corporation, the policy set forth in Appendix B on business ability to pay determinations should be followed.

## PURPOSE OF INDIVIDUAL ABILITY TO PAY SETTLEMENTS

It is not EPA's intent to deprive individuals or their dependents of ordinary and necessary assets or income. For this reason, EPA may enter into an ATP settlement with an individual PRP (the "ATP Candidate") if the ATP Candidate demonstrates that the payment of the proposed settlement amount is likely to create an undue financial hardship. If EPA's analysis of the financial condition of the individual ATP Candidate identifies available funds that exceed the proposed settlement amount, there should be no ATP Settlement.

## INITIAL REVIEW

The ATP Candidate should provide sufficient financial information upon which EPA can base an ATP settlement decision. Generally, the ATP Candidate should provide the five most recent years of individual federal income tax returns and should complete a financial questionnaire. EPA may request additional information. This may include loan applications, financial information relating to businesses owned by the ATP Candidate, and the fair market value of assets owned by the ATP Candidate.

---

[6]However, there may be cases where limited partners and shareholders participate so heavily in the business that they are liable in their personal capacity and this appendix would apply.

EPA should not limit its analysis to the evaluation of the ATP Candidate's assets, earnings and expenses. It may also be appropriate to examine other sources of funds available to the ATP Candidate. This may include income and assets not in the name of the ATP Candidate but that are available to the ATP Candidate, such as income from, and assets in, trusts and other related entities as well as the financial holdings of the ATP Candidate's spouse. Not all such income and assets should automatically be considered available to the ATP Candidate, but they should be treated as potentially relevant to the analysis.

The initial review should characterize the financial condition of the ATP Candidate in terms of income and net worth. The initial review may include:

1)   Comparison of the ATP Candidate's income and expenses to national and local averages; and

2)   Estimation of the percentage of income applied to debt.

By conducting the initial characterization, EPA may then estimate the extent of the financial hardship that would be imposed upon the ATP Candidate if required to pay the proposed settlement amount. If this amount is not likely to create an undue financial hardship, EPA should suspend the analysis, pending an explanation from the ATP Candidate as to why payment of the proposed settlement amount is likely to create an undue financial hardship.

VERIFICATION

Verification of the ATP Candidate's financial information is often the most labor-intensive aspect of an ATP analysis for an individual. Although businesses and municipalities have available a variety of information relating to revenues, expenses, assets and liabilities, many individuals have only copies of income tax returns. Furthermore, businesses and municipalities are experienced at explaining their financial positions--individuals rarely have a need to do so. The case team should use the least intrusive method of inquiry consistent with adequately analyzing an individual ATP Candidate's ability to pay. For example, the number of people that participate in financial discussions with the individual ATP Candidate should be kept to a minimum.

BALANCE SHEET PHASE

The balance sheet phase looks at the assets, liabilities, and owners' equity of the individual ATP Candidate. Asset holdings generally fall into one of two categories: (1) assets required to meet the ordinary and necessary needs of the ATP Candidate and those dependent on the ATP Candidate; (2) other

17

assets.    Inquiries should be made as to the proper classification of assets owned by the individual ATP Candidate.   Assets of limited value, however, may be excluded from this phase of the analysis.

Assets required to provide for ordinary and necessary needs include the personal residence, vehicles needed for transportation, clothing, and other personal possessions that can be accurately attributed to providing for the needs of the ATP Candidate and those dependent upon the ATP Candidate.   Unless the Agency determines that these assets are not ordinary and necessary for the ATP Candidate or that there exist unresolved issues concerning questionable transfer(s) of the assets, these assets should be excluded from the ATP analysis and the requirement to determine a fair market value for them should be eliminated.

A preliminary review of assets required to provide for ordinary and necessary needs should be performed to ensure that they are not misclassified.    If the assets are not ordinary and necessary, EPA may calculate an ATP amount based on:

1.    Requiring the ATP Candidate to sell the asset(s);

2.    Requiring the ATP Candidate to borrow on the asset(s);

3.    If borrowing is not an option due to other constraints such as the age of the borrower, the Agency and the ATP Candidate may agree that the asset will be sold as part of the resolution of the ATP Candidate's estate, with an appropriate portion of the proceeds from the sale going to the ATP settlement; or

4.    Not requiring either the sale of the asset or borrowing on the asset, but requiring the settlement to include Available Income (as defined below) for a period greater than five (5) years.

EPA should also analyze the value of a sum certain versus the possibility of a greater amount if paid over time (along with the possibility of a default on the agreement by the ATP Candidate).    The Agency should also estimate the net sale amount and the enforcement costs (such as costs to require compliance with the ATP settlement agreement) for each alternative.

The ability-to-borrow estimate should include the ability to borrow on other assets owned by the ATP Candidate.   Other assets include assets of significant value that are owned by the individual ATP Candidate that have not been demonstrated to be ordinary and necessary for the individual or those dependent on the individual.   If other constraints limit the borrowing capacity on assets owned by the individual ATP Candidate, the ATP

estimate should consider the amount that would be available if
the other assets were sold.

For individual ATP Candidates who are sole proprietors or
general partners, owners' equity should also be analyzed as a
potential source of ATP settlement funds. This analysis should
consider the ability of the ATP Candidate's enterprise to attract
additional investments or capital contributions. Any funds
identified in this analysis should be included in the ATP amount.

## INCOME AND CASH FLOW STATEMENT PHASE

The income and cash flow statement phase looks at the
revenues (income) and expenses of the individual ATP Candidate.
The tax returns and other financial information should be relied
upon to estimate the future income and sources of funds for the
ATP Candidate. The income and cash flow statement phase should
identify the ordinary and necessary living expenses described in
the ATP Candidate's response to the financial questionnaire.
Ordinary and necessary living expenses include the cost of items
such as housing, utilities, food, transportation, clothing,
education, medical treatment, and prescriptions. Ordinary and
necessary living expenses should not include expenses for assets
that would be described by any reasonable standard as luxuries.
The decision concerning ordinary and necessary living expenses
should be made based on the unique condition of each individual
ATP Candidate being analyzed.

The case team should evaluate the ATP Candidate's sources of
income and estimate the ATP Candidate's future income. The case
team should then examine the expenses identified by the ATP
Candidate and estimate the ordinary and necessary living expenses
for the ATP Candidate and those dependent upon the ATP Candidate.
In addition, if it was determined in the balance sheet phase that
the ATP Candidate has borrowing capacity, additional expenses to
service such borrowing should be factored into this analysis.
The difference between estimated future income and ordinary and
necessary living expenses (including any debt-servicing expenses)
is defined as Available Income. The Agency should normally
require the ATP Candidate to direct five years of Available
Income toward payment of the proposed settlement amount.

As discussed more fully in the main body of this policy
document, the fact pattern associated with each ATP Candidate's
financial position will determine the number of years to include
in the Available Income estimate. This may result in reducing or
increasing the number of years used in computing the Available
Income estimate. The explanation for any change in the Available
Income estimate should be part of the documentation requirement.

Normally, the income and cash flow statement phase assumes
that income and expense projections will remain constant. If

special circumstances are identified; this assumption should be changed to meet the unique needs of the ATP Candidate. For example, if the individual ATP Candidate is expected to retire in two years, the income and expense projections should be changed to reflect this circumstance.

## ESTABLISHMENT OF THE INITIAL ATP AMOUNT

In establishing the initial ATP amount, EPA should deduct from the Available Income estimate an amount that should provide a measure of safety to prevent the existence of an undue financial hardship. The safety factor for an individual ATP Candidate should be based on facts specific to the individual and those dependant upon the individual.

20

# APPENDIX B: BUSINESS
## ABILITY TO PAY DETERMINATIONS

APPLICABILITY

Businesses can be broadly grouped into three categories: corporations, partnerships, and sole proprietorships. From the perspective of analyzing the financial health of a business, a critical distinction exists among these categories regarding the extent to which the business' owners are responsible for the business' liabilities. A corporation is an entity in which ownership is established by parties (who may be individuals, partnerships, or other corporations) who hold shares of stock in that corporation. The corporation under the law has the status of a person. Therefore, liability generally is limited to the corporation. A corporation's owners (i.e., shareholders) generally enjoy limited liability for any of the corporation's debts or legal claims, and the most they can "lose" is the value of their investments (i.e., stock) in the firm. In assessing the financial health of a corporation, only the financial resources of the corporation are relevant.

The owner of a sole proprietorship, in contrast, is not protected from business debts, and the owner has unlimited liability for his business. The total financial resources and financial responsibilities of the owner of a sole proprietorship or the partners of a general partnership should be evaluated in assessing the ability of these entities to pay.

A less common form of partnership is known as a "limited partnership." These partnerships consist of one or more limited partners (whose liability for the partnership's debts is limited to the amount of money originally invested) and one or more general partners (whose liability for partnership debts is not limited to the amount of their investment).

For purposes of analyzing ability to pay situations, it may be necessary to consult one or both of the appendices. For example, ATP settlements affecting businesses enjoying limited liability (e.g., corporations) should be determined in accordance with the policy set forth in Appendix B and the main body of this policy document. However, business entities who have general liability (e.g., sole proprietorship) are addressed in Appendix A: Individual Ability to Pay Determinations.

PURPOSE OF BUSINESS ABILITY TO PAY SETTLEMENTS

EPA does not intend the Superfund settlement process to result in the closing of a business or the inability of a business to conduct its business activities. For this reason an ATP settlement with a business PRP is permitted if the business PRP (the "ATP Candidate") demonstrates that the payment of a

21

certain sum of money is beyond its financial capability and that settling for such a sum of money would create an undue financial hardship for the ATP Candidate. The business ATP settlement should also meet the requirements contained in the main body of this policy document.

EPA's analysis of the financial condition of the ATP Candidate should be performed with the assistance of a person who is qualified to make this determination. If the analysis identifies available sources of funds that exceed the proposed settlement amount, there should be no reduction in this amount.

## INITIAL REVIEW

The ATP Candidate should provide EPA with sufficient financial information on which to base an ATP settlement decision. Generally, the ATP Candidate should be required to provide a minimum of the five most recent years of federal corporate income tax returns. Similarly, the Agency should also generally request the five most recent years of financial information (audited, if available) and a completed financial questionnaire. Other information, as determined by EPA, should be provided and reviewed by EPA. This may include loan applications, financial information relating to other entities owned by the business and/or shareholders or directors of the business, financial information for a period of time greater than five years, and information that might assist in estimating the fair market value of assets, liabilities, income and expenses of the ATP Candidate.

The initial review should characterize the financial condition of the ATP Candidate in terms of income and net worth. The initial review may:

1) Compare the ATP Candidate's income and expenses with similar businesses[7];

2) Calculate various financial ratios (e.g., debt-to-equity ratio) that help to describe the equity, solvency and profitability of the ATP Candidate; and

3) Compare net income and cash flow projections with the proposed settlement amount.

If a preliminary review of the financial information indicates that the proposed settlement amount is not significant in comparison to the financial position of the ATP Candidate, the

---

[7]For example, information on officers' compensation is available in the Robert Morris Associates business profiles. For further information on how to make these comparisons, see the "Beyond ABEL Training Course" materials.

analysis should be suspended, and the ATP Candidate should be
asked to explain why the proposed settlement is likely to create
an undue financial hardship. Only if such an explanation is
provided should the analysis continue.

Generally, if the financial characteristics indicate a
strong financial condition, a reduction in the proposed
settlement amount is not justified. However, it is important to
recognize that these are only financial indicators and do not
express a final opinion on any business. A final opinion should
only be provided based on a detailed analysis by a qualified
financial analyst.

## VERIFICATION

Businesses have available an assortment of documents that
describe their financial condition. However, the majority of
these financial documents were prepared under standards that are
different from the standards used to evaluate an ability to pay.
Because of this, caution should be used in relying on them.
Sufficient inquiries should be made to verify the accuracy of the
documents and to determine that they accurately reflect the
current financial condition of the ATP Candidate.

Understanding trends in the business and the reason for the
trends are important in verifying the financial information.
Superfund litigation can be expensive and this may have created a
significant but temporary impact on the business that may ease or
discontinue after settlement.

Other expense and spending patterns should also be examined
to determine whether debt has increased or decreased. Often in
difficult financial times a company may reduce assets to pay
expenses or borrow on the assets. Substantiating documentation
should be provided to explain why a business that has a history
of profit has increased its amount of debt or reduced its net
worth.

## BALANCE SHEET PHASE

The balance sheet phase looks at the assets, liabilities,
and owners' equity of the business ATP Candidate. Asset holdings
of a business should generally fall into either of two
categories: (1) assets that are ordinary and necessary to
continue the business operation(s) of the business ATP
Candidate; and (2) assets that are not ordinary and necessary for
the business operation(s) of the business ATP Candidate. EPA may
make inquiries as to the classification of all assets.

An inquiry should be made to determine if the company has
the ability to borrow upon either or both types of assets. If
borrowing potential exists, the amount that could be borrowed and

23

paid by the ATP Candidate should be estimated and included in the ATP estimate.

If other constraints limit the borrowing capacity of the business ATP Candidate, EPA should estimate the net proceeds from the sale of assets that are not ordinary and necessary. This estimate should be included in the ATP amount. During the balance sheet phase, EPA should ensure that the business ATP Candidate is not required to dispose of ordinary and necessary assets or to borrow so heavily on ordinary and necessary assets that it is unable to make the payments on the debt.

Owners' equity should also be analyzed as a potential source of ATP settlement funds. As described more fully in the main body of this policy document, this analysis should look at two primary components: dividends and capital contributions. Any funds identified in this analysis should be included in the ATP amount.

## INCOME AND CASH FLOW STATEMENT PHASE

The income and cash flow statement phase looks at the revenues (income) and expenses of the business ATP Candidate. This phase of the analysis should predict future earning potential and identify ordinary and necessary e enses for the business ATP Candidate. This should be based on financial statements from prior years and likely future events. The goal of the ATP settlement should be to allow the business to remain solvent, but not to retain excess cash flow. Any excess cash flow should instead be used as a source of contribution towards a Superfund site cleanup. Similarly, the ATP settlement should not permit inflated or unreasonable expenses.

When conducting the income and cash flow statement phase, EPA should look to see that all sources of income are identified and valued accurately, and that any related party transactions (i.e., transactions among natural persons related to each other, or among corporations that are closely related) are identified. Current and projected future sources of income should be compared with prior sources of income and an estimate of future income should be made.

Current and estimated future expenses should also be examined. Expenses of the business ATP Candidate that are intrinsic to the service or manufacturing purpose of the corporation ("ordinary and necessary expenses") should be reviewed. Expenses that do not appear to relate to the business purpose of the business ATP Candidate (e.g., charitable contributions; dues and membership fees) should be questioned. In addition, if during the balance sheet phase it was determined that the ATP Candidate had additional borrowing capacity, future expenses should reflect increased debt servicing requirements.

24







## APPENDIX C: DEFINITIONS

**Available Income** is the difference between projected revenues and ordinary and necessary expenses, generally for the next five years.

**Increased Future Needs** are ordinary and necessary expenses that will be incurred by the ATP Candidate that have not been incurred in the past or that were incurred previously but which are expected to be significantly greater than in the past.

**Ordinary and Necessary Asset** is an asset that is currently used for a business purpose or an asset that provides for a need of an individual ATP Candidate or those dependent on him/her.

**ATP Amount** is the sum of Available Income, excess cash, amounts available from estimated borrowing capacity, amounts available from the sale of assets that are not ordinary and necessary, and amounts available from owners' equity, reduced by a safety factor.

**Undue Financial Hardship** occurs if payment of the settlement amount sought by the government will deprive an ATP Candidate of ordinary and necessary assets or cause an ATP Candidate to be unable to pay for ordinary and necessary business expenses and/or ordinary and necessary living expenses.

# EPA · **Financial Statement for Individuals** *

(If additional space is needed, attach a separate sheet)

| 1. Your name and address *(including zipcode and county)* | | 2. Home phone number | 3. Marital status |
|---|---|---|---|
| | | 4. Social Security Numbers *(optional)* | a. Yours | b. Spouse |

| Zip Code | County |
|---|---|

## Section I. — Employment Information

**5. Present employer or business** *(name and address)*

**6. Business phone number**

**7. Occupation**

| 5a. How long at present employment. | 8. Check appropriate box ☐ Wage earner ☐ Partner ☐ Sole proprietor ☐ Corporate officer |
|---|---|

**9. Spouse's employer or business** *(name and address)*

**10. Business phone number**

**11. Occupation**

| 9a. How long at present employment. | 12. Check appropriate box ☐ Wage earner ☐ Partner ☐ Sole proprietor ☐ Corporate officer |
|---|---|

## Section II. — Personal Information

**13. Name, address and telephone number of next of kin or other reference**

| 14. Date of birth | a. Yours | b. Spouse's | |
|---|---|---|---|

## Section III. — General Financial Information

| 15. Last three years Federal and state income tax returns filed | 15a. Adjusted gross income on returns, per year | 15b. List all states these returns were filed in: |
|---|---|---|

**16. Bank accounts** *(include Savings & Loans, Credit Unions, IRA and Retirement Plans, Certificates of Deposit, etc.)*

| Name of Institution | Address | Type of Account | Account No. | Balance |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| **Total** *(Enter in Item 25)* | | | ▶ | |

'ormation is requested pursuant to Section 104(e) of the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9604, and is not subject to ; of the Paperwork Reduction Act of 1980, 44 U.S.C. § 3501, et seq.

\casadev\fininfo.pm4 <1> · revised 04/08/9

Charge cards, Lines of credit

| Type of Account or Card | Name and Address of Financial Institution | Monthly Payment | Credit Limit | Amount Owed | Credit Available |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| **Totals** (Enter in item 31) ▶ | | | | | |

18. Safe deposit boxes rented or accessed (List all locations, box numbers, and contents including estimated market value)

| 19. Real Property (Brief description of property and type of ownership) | Address (Include county, state and parcel number) |
|---|---|
| a. | |
| b. | |
| c. | |

| 20. Insurance Policies (Name of Company) | Policy Number | Type | Face Amount | Available Loan Value |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| **Total** (Enter in item 27) | | | ▶ | |

21. Additional Financial Information (Court and administrative proceedings by or against you, legal claims(whether asserted or not), settlement agreements, employment agreements, consulting and similar agreements, "golden parachute" agreements, bankruptcies, repossessions, recent transfers of assets for less than full value, anticipated increases in income, real estate being purchased under contract, real or personal property being held on your behalf, condition of health, information on trusts, estates, profit-sharing plans, inheritance, etc., in or of which you are a participant or beneficiary).

22. Are you currently receiving retirement benefits as a former civilian or military employee of the federal government? If so, give dates of service, agency or branch of service employed by, and location of employment.

23. Indicate any business entity with which you own five (5) percent or more of the outstanding stock (or other equity interest).

| Name of Business Entity | Address | Percentage of Stock | Date Purchased |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

| Description | Current Market Value | Liabilities Balance Due | Equity in Asset | Amount of Monthly Payment | Name and Address of Issuer or Lien/Note Holder/Obligee | Date Pledged | Date Fina Payme |
|---|---|---|---|---|---|---|---|
| 24. Cash and precious metals or gems | | | | | | | |
| Bank accounts | | | | | | | |
| a. Stocks | | | | | | | |
| b. Bonds | | | | | | | |
| c. Mutual Funds, Partnership Interest, Securities and other Investments | | | | | | | |
| 27. Cash or loan value of insurance. | | | | | | | |
| 28. Vehicles (Model, year, license) | | | | | | | |
| a. | | | | | | | |
| b. | | | | | | | |
| c. | | | | | | | |
| 29. Real property (From item 19) a. | | | | | | | |
| b. | | | | | | | |
| c. | | | | | | | |
| 30. Other tangible assets (including art, boats, jewelry, options, etc.) or financial debts owed to you in excess of $1000. | | | | | | | |
| a. | | | | | | | |
| b. | | | | | | | |
| c. | | | | | | | |
| d. | | | | | | | |
| 31. Bank revolving credit | | | | | | | |
| 32. Other Liabilities (Include judgements, notes, tax liens, etc.) a. | | | | | | | |
| b. | | | | | | | |
| c. | | | | | | | |
| d. | | | | | | | |
| e. | | | | | | | |
| f. | | | | | | | |
| g. | | | | | | | |
| 33. Federal and state Taxes Owed | | | | | | | |
| 34. Totals | | | $ | $ | Enter in item 49 | | |

List all transfers real & personal property, including cash (by gift or loan made not at fair market terms) that you have made within the last 3 years (items with a current market value of $1000.00 or more):

| Date | Current Market Value | Sale Price You Received (if any) | Description of Property Transferred | To Whom (Indicate relationship to you) | Nature and Conditions of Transfer |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

\casedev\Nininfo.pm4 <3> - revised 04/0

| Income | | | | Necessary Living Expenses | |
|---|---|---|---|---|---|
| **Source** | **Gross** | **Net** | | | |
| 35. Wages/Salaries | $ | $ | 47. | Rent (Do not show mortgage listed in item 30) | $ |
| 36. Wages/Salaries (spouse) | | | 48. | Groceries (no. of people _____ ) | |
| 37. Commissions | | | 49. | Installment payments | |
| 38. Interest - Dividends | | | 50. | Utilities (Gas $ _____ Water $ _____ | |
| 39. Net business income | | | | Electric $ _____ Phone $ _____ ) | |
| 40. Rental income | | | 51. | Transportation | |
| 41. Pension/Social Security income | | | 52. | Insurance (Life $ _____ Health $ _____ | |
| 42. Pension/Social Security income (spouse) | | | | Home $ _____ Car $ _____ ) | |
| 43. Child Support | | | 53. | Medical (describe if in excess of $500.00) | |
| 44. Alimony | | | 54. | Estimated tax payments (if self-employed) | |
| 45. Other income (e.g. investment income, capital gains) | | | 55. | Other expenses (specify) | |
| | | | | | |
| | | | | | |
| | | | | | |
| 46. Total | $ | $ | 56. Total | | $ |

## Certification

Under penalties of perjury, I declare that to the best of my knowledge and belief this statement of assets, liabilities, and other information is true, correct, and complete.

| 57. | signature | | 58. Date |
|---|---|---|---|
| | | | |



U.S. Environmental Protection Agency, Region IX

# Financial Statement for Businesses *

(If additional space is needed, attach a separate sheet)

| ur name and address (including zipcode and county) | 1a. Business name and address (including zipcode and county) | 2. Business phone number ( ) |
|---|---|---|
| | | 4. (Check appropriate box) |
| | | ☐ Sole proprietor ☐ Trust |
| | | ☐ Partnership ☐ Other (specify) _____ |
| 3. Name and address of registered agent (including zipcode and county) | | ☐ Corporation |

| 5. State of incorporation (or country if foreign) | 5a. Employer Identification Number | 6. Date of incorporation | 7a. Type of business |
|---|---|---|---|
| | | | 7b. SIC Code |

**8.** Information about owner, partners, officers, directors, major shareholder (5% or more stock ownership), other holders of more than 5% equity interest, holders of rights to purchase more than equity interest and other persons with an ability to control.

| Name and Title | Effective Date | Home Address | Social Security Number (optional) | Phone Number | Total Shares or Interest |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## Section I — General Financial Information

**9.** Last three years Federal and state income tax returns ▶

| Forms Filed | Tax Years ended | Net Income before taxes |
|---|---|---|
| | | |

**10.** Bank accounts (List all types of accounts including checking, savings, certificates of deposit, etc.)

| Name of Institution | Address | Type of Account | Account No. | Balance |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | Total (Enter in Item 19) | ▶ | |

**11.** Bank Credit available (Lines of credit, etc.)

| Name of Institution | Address | Credit Limit | Amount Owed | Credit Available | Monthly |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| otals | | ▶ | | | |

**12.** Location, box number, and contents of safe deposit box rented or accessed

* This information is requested pursuant to Section 104(e) of the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9604, and is not subject to ...
... al of the Paperwork Reduction Act of 1980, 44 U.S.C. § 3501, et seq.

**13. Real property**

| Brief Description and Type of Ownership | Address (include county, state and parcel number) |
|---|---|
| a. | |
| b. | |
| c. | |

**14. Insurance policies owned with business as beneficiary**

| Name Insured | Company | Policy Number | Type | Face Amount | Available Loan Value |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | Total (Enter in Item 21) | | ▶ | |

**15.** Additional information (Court and administrative proceedings by or against the business, settlement agreements, agreements to purchase or sell tangible or financial assets other than in the ordinary course of business, legal claims (whether asserted or not), bankruptcies, repossessions, recent transfers of assets for less than value, anticipated increases in income, options to buy or sell real or personal property, real or personal property being purchased under contract, real or personal property being held on behalf of the business).

**15a.** List all subsidiaries owned, joint ventures, partnerships and other entities controlled by the business. Provide current market value of the business' interest in subsidiary or other entity.

**16. Federal government departments or agencies with whom you have a contract for payment of goods or services**

| Agency Name | Address | Contract No. | Amount to be Received | Payment Due Date |
|---|---|---|---|---|
| | | | | |
| | | | | |

**16a.** Federal government departments or agencies that have extended or given the business loans, grants or assistance, or to which you have applied (or anticipate applying for any loan, grant, or assistance) in the past 5 years.

| | | | | |
|---|---|---|---|---|
| | | | | |
| | | | | |

**17. Accounts/Notes receivable (include loans to stockholders, officers, partners, etc.)**

| Agency Name | Address | Amount Due | Due Date | Status |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | Total (Enter in Item 20)   ▶ | | | |

## Section II.
### Asset and Liability Analysis

| Description (a) | | Cur. Mkt Value (b) | Liabilities Bal. Due (c) | Equity in Asset (d) | Amount of Mo. Pymt. (e) | Name and Address of Lien/Note Holder/Obligee (f) | Date Pledged (g) | Date of Sale Real Prop (h) |
|---|---|---|---|---|---|---|---|---|
| Cash on hand | | | | | | | | |
| 19. Bank accounts | | | | | | | | |
| 19a. Securities and other financial assets owned | | | | | | | | |
| 20. Accounts/Notes receivable | | | | | | | | |
| 21. Insurance Loan Value | | | | | | | | |
| 22. Real property (from Item 18) | a. | | | | | | | |
| | b. | | | | | | | |
| | c. | | | | | | | |
| | d. | | | | | | | |
| 23. Vehicles (Model, year, license) | a. | | | | | | | |
| | b. | | | | | | | |
| | c. | | | | | | | |
| Machinery and equipment (Specify) | a. | | | | | | | |
| | b. | | | | | | | |
| | c. | | | | | | | |
| 25. Merchandise Inventory (Specify) | a. | | | | | | | |
| | b. | | | | | | | |
| 26. Other Assets (including permits, licenses, tax loss carry forwards, agreements not to compete, other contracts) (Specify) | a. | | | | | | | |
| | b. | | | | | | | |
| | c. | | | | | | | |
| | d. | | | | | | | |
| 27. Other Liabilities (include judgements, notes, tax liens, etc.) | a. | | | | | | | |
| | b. | | | | | | | |
| | c. | | | | | | | |
| | d. | | | | | | | |
| | e. | | | | | | | |
| 28. Federal & State Taxes Owed | | | | | | | | |
| 29. Totals | | | | | | | | |

## Section III.    Income and Expense Analysis

The following information applies to Income and expenses during a one year period:

Accounting method used

_____ to _____

| Income | | Expenses | |
|---|---|---|---|
| Gross receipts from sales, services, etc. | $ | 36. Materials purchased | $ |
| 31. Gross rental income | | 37. Wages and salaries of employees | |
| 32. Interest | | 38. Wages/salaries/bonuses for officers, directors and stockholders | |
| 33. Dividends | | 39. Rent | |
| 34. Other income (Specify) | | 40. Installment payments (from line 23) | |
| | | 41. Supplies | |
| | | 42. Utilities / Telephone | |
| | | 43. Gasoline / Oil | |
| | | 44. Repairs and maintenance | |
| | | 45. Insurance | |
| | | 46. Current taxes | |
| | | 47. Other, including fees paid for services (Specify) | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| 35. Total | ▶ $ | 48. Total | ▶ $ |
| | | 49. Net difference | ▶ $ |

50. List all transferred real & personal property, including cash (by gift by loan that was not at fair market terms; by sale for less than fair market value or in die outside the normal cou of business, etc.) that was made within the last 6 years (items of $3,000.º or more):

| Date | Amount | Property Transferred | To Whom | Cond ons of Transfer |
|---|---|---|---|---|
| | | | (Indicate any relationship to business or its partners, directors, stockholders, or other operating persons | |
| | | | | |
| | | | | |

### Certification
Under penalties of perjury, I declare that to the best of my knowledge and belief this statement of assets, liabilities, and other information is true, correct, and complete.

| 51. Signature | 52. Print Name / Title | 53. Date |
|---|---|---|
| | | |