# Exhibit 16



UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
WASHINGTON, D.C. 20460

June 3, 1996

Received
MAY 18 1999
Enforcement & Compliance Docket
& Information Center

OFFICE OF
ENFORCEMENT AND
COMPLIANCE ASSURANCE

## MEMORANDUM

SUBJECT: Interim Guidance on Orphan Share Compensation for Settlors of Remedial Design/Remedial Action and Non-Time-Critical Removals

FROM: Steven A. Herman, Assistant Administrator
Office of Enforcement and Compliance Assurance

TO: Regional Administrators, I-X

This memorandum transmits the "Interim Guidance on Orphan Share Compensation for Settlors of Remedial Design/Remedial Action and Non-Time-Critical Removals." This guidance provides Regions with further direction to address orphan share compensation in Superfund settlements.

On October 2, 1995, Administrator Browner announced the third in a series of reforms designed to fundamentally change the way EPA implements the Superfund program. This orphan share guidance is the latest installment in the Clinton Administration's commitment to reform Superfund and provide greater fairness, reduce litigation and promote faster cleanup of Superfund sites. One of the cornerstones of the October announcement is the Agency's initiative to exercise its enforcement discretion to provide orphan share compensation at sites where parties agree to perform the cleanup.

This guidance strikes a balance between the budgetary constraints of a lapse in Superfund taxing authority and the desire to provide meaningful reform consistent with the Administration's legislative proposals. In fiscal year 1996 alone, the Administration is prepared to offer over $50 million in orphan share compensation to potential settlement parties.

For further information concerning this guidance, please contact either Susan Boushell (202-564-5107) or Patricia Mott (202-564-5133) in the Office of Site Remediation Enforcement.

Attachment

Recycled/Recyclable • Printed with Vegetable Oil Based Inks on 100% Recycled Paper (40% Postconsumer)

cc:    Elliott Laws, Assistant Administrator for Solid Waste and Emergency Response
Lois Schiffer, Assistant Attorney General, DOJ
Jerry Clifford, Director, Office of Site Remediation Enforcement
Steve Luftig, Director, Office of Emergency and Remedial Response
Director, Office of Site Remediation and Restoration, Region I
Director, Emergency and Remedial Response Division, Region II
Director, Hazardous Waste Management Division, Regions III, IX
Director, Waste Management Division, Region IV
Director, Superfund Division, Regions V, VI, VII
Assistant Regional Administrator, Office of Ecosystems Protection and
  Remediation, Region VIII
Director, Environmental Cleanup Office, Region X
Regional Counsel, Regions I-X
Larry Starfield, Associate General Counsel, OGC
John Cruden, Deputy Assistant Attorney General, DOJ
Joel Gross, Chief, Environmental Enforcement Section, DOJ
Bruce Gelber, Principal Deputy Chief, Environmental Enforcement Section, DOJ

# INTERIM GUIDANCE ON ORPHAN SHARE COMPENSATION FOR SETTLORS OF REMEDIAL DESIGN/ REMEDIAL ACTION AND NON-TIME-CRITICAL REMOVALS

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
401 M Street, S.W.
Washington, D.C. 20460

# INTERIM GUIDANCE ON ORPHAN SHARE COMPENSATION FOR SETTLORS OF REMEDIAL DESIGN/REMEDIAL ACTION AND NON-TIME CRITICAL REMOVALS

## Policy Statement and Purpose

On October 2, 1995, Administrator Browner announced the third in a series of reforms designed to fundamentally change the way EPA implements the Superfund program. Several of these Superfund Reforms are intended to provide greater fairness, reduce litigation and transaction costs, and promote private party cleanup of Superfund sites. One of the cornerstones of the October announcement was the Agency's initiative to exercise its enforcement discretion to provide orphan share compensation at sites where potentially responsible parties (PRPs) agree to perform the cleanup.

The purpose of this interim guidance is to provide Regions with further direction for providing orphan share compensation in settlements with PRPs. This guidance makes clear that, where EPA determines that there is a share which may be equitably attributed to parties who are insolvent or defunct (i.e., the "orphan share") and which would ordinarily be allocated to viable PRPs under principles of joint and several liability, EPA intends to consider this factor in its assessment of the federal compromise it provides in settlement.[1] EPA anticipates that its willingness to contribute to settlement, based in part upon an increased emphasis on the effect of an orphan share, will facilitate settlement with performing parties.

Of course, the Region's consideration of an "orphan share" is only one component of a Region's settlement analysis. Consistent with our historic practice, the total amount of federal compromise in settlement incorporates other factors in addition to the presence or absence of an orphan share, including: (1) litigation or other risks to recovery or performance; (2) cooperation of performing parties; and (3) the resources of parties. This guidance simply establishes limits upon the amounts the Regions may provide as orphan share compensation in light of current fiscal limitations. This policy preserves the application of common law tort principles of joint and several liability by recognizing the impact of joint and several liability in the settlement analysis factors where EPA determines that an orphan share at a given site may be greater than de minimis.

---

[1] This guidance is intended for settlement purposes only and, therefore, orphan share compensation is appropriate only where settlement occurs. In the event that settlement does not occur, Regions should, as appropriate, pursue PRPs jointly and severally for their performance of cleanup and recovery of response costs. Courts have uniformly found that CERCLA liability is joint and several where the harm is indivisible, which ensures that the costs of cleanup are borne by the parties who contributed to the contamination, rather than the tax-paying public. This guidance does not apply where EPA determines or a court finds that PRPs have met their substantial burden of proving as a defense to joint and several liability that the harm is divisible and reasonably capable of apportionment.

## Background

Under CERCLA's joint and several liability system, at sites where there are insolvent or defunct parties who cannot contribute to the cost of cleanup, viable PRPs are required to absorb the shares that may be attributable to such non-viable PRPs. In an effort to mitigate this effect and encourage PRPs to perform cleanup, EPA committed in the October 1995 announcement to compensate performing parties for a limited portion of the orphan share in future cleanup settlements. The Agency stated that this compensation might be accomplished through forgiveness of past costs and of projected oversight costs, and would necessarily be subject to the amount of funding available for the program.

Since the October announcement, however, Congress has not reauthorized Superfund, nor has it provided the Agency with a separate appropriation for orphan share compensation. In addition, Congress has not yet reinstated the Superfund taxing authority -- the principal source of revenue for the Superfund Trust Fund -- which expired at the end of 1995. Until these taxes are reinstated, the Trust Fund will continue to be depleted by costs expended to implement the program and achieve cleanups. Because of this lapse in taxing authority and absence of specific orphan share funding in the FY 96 appropriation, EPA examined ways to compensate a portion of the orphan share within existing appropriations.

EPA also determined that it was important to provide incentives for parties to voluntarily perform cleanups, provide the benefits of this reform to as many qualifying sites as possible, recognize cooperative parties, keep transaction costs low, and use readily available information. Finally, the Agency wants to provide appropriate balance between preserving the Trust Fund and providing meaningful implementation of this reform. Based on these considerations, EPA developed a process that would enable the Regions to implement this reform this fiscal year.

## Applicability

This reform applies where: (1) EPA initiates or is engaged in on-going negotiations for a remedial design or remedial action (RD/RA) at a site or for a non-time-critical (NTC) removal at a National Priorities List (NPL) site under the Superfund Accelerated Cleanup Model (SACM); (2) a PRP or group of PRPs agrees to conduct the RD/RA or RA pursuant to a consent decree or the NTC removal pursuant to an administrative order on consent (AOC) or consent decree; and (3) an "orphan share" exists at the site.[2] For the purposes of this reform, the term "orphan share" refers to that share of responsibility which is specifically attributable to identified parties EPA has determined are: (1) potentially liable; (2) insolvent or defunct; and (3) unaffiliated with any party potentially liable for response costs at the site. This definition of orphan share does not include shares due to, for example: (1) unallocable waste; (2) the difference between a party's

---

[2] This guidance is not intended to apply at sites where the only PRPs at the site currently or formerly owned or operated the facility or at federal facilities.

2

share and its ability to pay; or (3) those parties, such as "de micromis" contributors, municipal solid waste (MSW) contributors or certain lenders or residential homeowners, that EPA would not ordinarily pursue for cleanup costs. See "Policy on CERCLA Enforcement Against Lenders and Government Entities that Acquire Property Involuntarily" (Sept. 22, 1995); "Policy Toward Owners of Property Containing Contaminated Aquifers" (May 24, 1995); "Guidance on CERCLA Settlements with De Micromis Waste Contributors," OSWER Directive No. 9834.17 (July 30, 1993); "Policy Toward Owners of Residential Property" (July 3, 1991); "Interim Policy on CERCLA Settlements Involving Municipalities and Municipal Wastes" (Dec. 6, 1989).

A party may be considered to be "insolvent" if EPA determines that a party has no ability to pay. A party may be considered to be "defunct" if: (1) the entity has ceased to exist or ceased operations; and (2) the entity has fully dissipated its assets such that the party has no ability to pay. For both the insolvent and the defunct determinations, EPA's investigation must indicate that there is no successor or other affiliated party that is potentially liable.

## Methods for Determining Appropriate Orphan Share Component of Federal Compromise

Compensation for the orphan share component of the federal compromise in settlement may be provided through forgiveness of past costs and reduction of liability for future oversight costs.[3] At some sites, forgiveness of some portion of past costs already may have occurred in conjunction with a prior settlement with PRPs at the site. In such cases, those past costs which have been forgiven would not be available for use as compensation under this reform with respect to the same PRPs.

To determine the appropriate orphan share component of the federal compromise at a particular site, Regions should make a rough estimate of the size of the orphan share. At many sites, an estimated range will be sufficient to determine whether the share which may be equitably attributed to insolvent and defunct parties warrants federal compromise. Using total site costs,[4] Regions should estimate the orphan share based upon equitable factors, such as the

---

[3] Although mixed funding might have been used as compensation under this reform, EPA did not receive a separate appropriation for orphan share compensation and, therefore, any mixed funding provided under this reform would have reduced the funds available for cleanups. As a result, compensation under this reform does not include mixed funding. However, this guidance is not intended to modify or alter EPA's enforcement discretion to enter into mixed funding agreements under Section 122(b) of CERCLA, 42 U.S.C. § 9622(b).

[4] "Total site costs" refer to outstanding past costs and future oversight costs at the site or operable unit that is the subject of the ROD or NTC removal and projected ROD or NTC removal costs.

3

Gore factors.[5] To ensure that implementation of this reform does not impede cleanup, cause a delay in statutory negotiation deadlines, or result in increased transaction costs, Regions should rely upon readily available or easily obtainable information in making this estimation.

Given current financial constraints, EPA is limiting the amount that Regions can offer in compensation for the orphan share component of the federal compromise to 25 percent of projected ROD remedy/NTC removal costs. First, EPA determined that such a limitation is necessary to moderate the impact on the Trust Fund in light of the expiration of the taxing authority and lack of separate orphan share appropriation. Second, EPA believes that a 25 percent limitation will minimize the incurrence of additional transaction costs and the delay in cleanup negotiations associated with calculation of the orphan share. Finally, a 25 percent limitation will ensure a fairer distribution among sites because it represents the amount at which most sites will have sufficient past costs and future oversight costs to provide compensation for the orphan share component of the federal compromise in settlement.

Accordingly, Regions should maximize compensation for the orphan share component of the federal compromise as long it does not exceed any of the following: (1) the orphan share; (2) the sum of all unreimbursed past costs and EPA's projected costs of overseeing the design and implementation of the Record of Decision (ROD) remedy or NTC removal costs; or (3) 25 percent of the projected ROD remedy or NTC removal costs at the site. This will be considered the maximum amount appropriate for compensating the orphan share component of the federal compromise under this policy.

There is a presumption that Regions will provide the maximum amount appropriate for the orphan share component of the federal compromise. However, in limited circumstances, Regions may, in their discretion, decide that compensation less than the maximum amount is appropriate after consideration of equitable factors, including: (1) PRP fairness to other PRPs, including small businesses, MSW parties, small volume waste contributors and certain lenders and homeowners; (2) PRP cooperation; and (3) size of the orphan share. Regions should give greater consideration to these factors when activities encompassed by the factors occur after issuance of this guidance.

---

[5] The "Gore factors" are usually relied upon by courts in making equitable allocations in contribution actions. They include: (1) the amount of hazardous substances involved; (2) the degree of toxicity of the substances; (3) the degree of involvement by parties in the generation, transportation, treatment, storage, or disposal of the substances; (4) the degree of care exercised by the parties with respect to the substances; and (5) the degree of cooperation of the parties with government officials to prevent any harm to public health or the environment. See, e.g., Envtl. Transp. Servs. v. Ensco, Inc., 969 F.2d 503 (7th Cir. 1992).

### Implementation

When providing notice of forthcoming negotiations to PRPs or during on-going negotiations, Regions should indicate whether the site is eligible for this reform and should share any available information about the maximum amount appropriate for compensation. Regions may request PRPs to submit information regarding the size of the orphan share at the site, including a basic rationale and supporting documentation.

Headquarters pre-approval will be required for any settlement at a site where the projected ROD remedy or NTC removal cost exceeds $30 million. To satisfy this pre-approval requirement, Regions should contact Headquarters, either orally or in writing, prior to conveying a formal settlement offer to a PRP or group of PRPs that includes an orphan share compensation component. Headquarters will then evaluate such proposed compensation in light of site-specific factors, state concerns and national priorities, including meaningful implementation of the reform and impact on the Trust Fund.

For all sites, an analysis of the proposed orphan share compensation provided through forgiveness of past costs and reduction of liability for future oversight costs should be included in the enforcement confidential ten-point settlement analysis submitted to Headquarters. This guidance is not intended to limit EPA's consideration of other settlement factors. The Regions may elect to compromise a greater or lesser amount than that described herein, based upon other factors they would consider in their routine settlement analyses, such as litigation or other risks to recovery or performance, cooperation of the performing parties, and the resources of parties.

### Orphan Share Assistance Team

We have established an orphan share assistance team with the Department of Justice to assist Regions in implementation of this important reform. The team will be in contact with Regional staff to resolve issues to ensure results.

For further information concerning this guidance, please contact either Susan Boushell (202-564-5107) or Patricia Mott (202-564-5133) in the Office of Site Remediation Enforcement.

### Purpose and Use of this Guidance

This guidance and any internal procedures adopted for its implementation are intended exclusively as guidance for employees of the U.S. Environmental Protection Agency. This guidance is not a rule and does not create any legal obligations. Whether and how EPA applies the guidance to any particular site will depend on the facts at the site.