**James P. Murphy, OSB No. 067084**
Murphy Armstrong & Felton LLP
701 Millennium Tower
719 Second Avenue
Seattle, WA 98104
Telephone: (206) 985-9770
Attorney for The Portland Harbor Federal
　　Superfund Site Participation and Common
　　Interest Group

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Civil Action No. 3:14-01772-ST |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Portland Harbor Federal Superfund Site |
| ) | Participation and Common Interest Group's |
| LINNTON PLYWOOD ) | **MOTION FOR LEAVE TO** |
| ASSOCIATION, ) | **APPEAR AS** ***AMICUS CURIAE*** |
| ) | |
| Defendant. ) | |

### I.　CERTIFICATION REQUIREMENT

In compliance with Local Rule 7-1(a), the parties have made a good faith effort to resolve the dispute underlying this motion for leave to appear as amicus curiae. The other parties to this action have all expressed that they consent or do not object to this motion.

### II.　MOTION

The United States has moved this Court for entry of the Amended Consent Decree lodged with the Court on April 10, 2015. The Amended Consent Decree would resolve the United States' claims against Linnton Plywood Association ("LPA") under the Comprehensive

Motion of PCI Group for Leave to Appear as Amicus Curiae　　　　　　　　　　　　　　-Page 1-

Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601, *et seq.*, for reimbursement of past response costs and natural resource damage assessment costs, as well as for future response costs and natural resource damages at the Portland Harbor Superfund Site. The Portland Harbor Federal Superfund Site Participation and Common Interest Group (the "PCI Group"), a group of about 100 private and public entities that have been identified by the US Environmental Protection Agency ("EPA") as potentially responsible parties ("PRPs") for the Portland Harbor Site, moves for leave to file as *amicus curiae* in opposition to the United States' pending motion.[1] This motion is accompanied by a Proposed Amicus Brief, which sets forth the PCI Group's views on the entry of the Amended Consent Decree.

### III.  MEMORANDUM IN SUPPORT

#### A.  Legal Standard

Federal district courts "frequently welcome amicus briefs from non-parties concerning legal issues that have potential ramifications beyond the parties directly involved or if the amicus has unique information or perspective that can help the court." *NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, 355 F. Supp. 2d 1061, 1067 (N.D. Cal. 2005) (internal quotations omitted). Additionally, "[a]n amicus brief should normally be allowed when … the amicus has an interest in some other case that may be affected by the decision in the present case." *Cmty. Ass'n for Restoration of Env't (CARE) v. DeRuyter Bros. Dairy*, 54 F. Supp. 2d 974, 975 (E.D. Wash. 1999). Put more simply, a federal district court should "grant leave to appear as an amicus if the information offered is timely and useful." *Long v. Coast Resorts, Inc.*, 49 F. Supp. 2d 1177, 1177 (D. Nev. 1999) (internal quotations omitted). As explained below, the Court should grant

---

[1] The PCI Group includes a number of federal and state agencies. These federal and state agencies do not join in this motion.

the PCI Group's motion to appear as amicus because such appearance would readily satisfy these standards.

### B.     Factual Background

The Portland Harbor Superfund Site, which was listed on EPA's National Priorities List in December 2000, extends for about 10 miles along the Lower Willamette River.  EPA has repeatedly stated that it intends to look to responsible parties for funding of cleanup activities at the Site.  EPA has identified 156 parties as potentially responsible parties ("PRPs") at the Site and has sent those parties notice of their potential liability.[2]  EPA stated in the Complaint in this action that it "anticipates that it will issue a Record of Decision selecting a remedy for the Site in 2017."[3]  At this point, because a cleanup plan has not been determined, the costs of implementing that plan are unknown and can only be estimated with a high degree of uncertainty.  Nonetheless EPA has indicated that the costs of such implementation are likely to be very substantial, if not unprecedented, in magnitude.  The Amended Consent Decree setting forth the proposed settlement with LPA states:  "A 2012 draft Feasibility Study estimated the cost of different remedial alternatives could range between $169 Million and $1.7 Billion."[4]  In 2008, EPA initiated an alternative dispute resolution process for the Site and encouraged parties notified of their potential liability to participate therein.[5]

---

[2] http://www.epa.gov/region10/pdf/ph/uplands/gnl_address_list_september_2014.pdf.

[3] Complaint, page 5, para. 17.

[4] Amended Consent Decree, Dkt. 33-1. page 2, para. C.

[5] http://yosemite.epa.gov/R10/CLEANUP.NSF/6d62f9a16e249d7888256db4005fa293/31ae45c9c90a674988256e470062ced9/$FILE/GNL%20Letter%20Template%2002_23_09.pdf ("EPA is encouraging PRPs to convene a mediated allocation process. Through such a process PRPs work together to allocate the cleanup costs and work through intra-party issues to prepare

*Footnote continued next page*

The PCI Group was formed for the purpose of conducting a non-binding allocation and mediation process among the Site's PRPs so that when a remedy is selected for the Site, members of the PCI Group in conjunction with other PRPs will be best situated to discuss with EPA a possible agreement related to the implementation of that remedy. The PCI Group's allocation and mediation process has proceeded with the support of EPA. Indeed, in its Motion to Enter the Amended Consent Decree, the United States acknowledged that the PCI Group is both "beneficial and important" to achieve a successful allocation process. *See* Dkt. 33 at 32 ("The mediation will hopefully result in a comprehensive allocation among all participating PRPs, resulting in an enormous cost savings for everyone involved, and ultimately expediting cleanup of the Site. The United States has no desire to disrupt that process.")

Notwithstanding the ongoing allocation and mediation process, the United States has proposed a settlement with LPA, which the United States alleges is a liable party for the Portland Harbor Site, and now asks this Court to approve that settlement. The United States argues that this settlement is appropriate because of LPA's alleged limited ability to pay. The PCI Group submitted comments on the proposed settlement (Attachment C to the United States motion, Dkt. 33-3), in which the Group explained that the "proposed settlement with LPA could be--and should be--a positive step in the process of accumulating funding that can be used for the long-term remediation of the Site. But to achieve that goal, and to ensure that the proposed settlement

---

*Footnote continued from previous page*
for future negotiations with EPA for performance of the cleanup and reimbursement of response costs after EPA has issued its Record of Decision for the Portland Harbor Superfund Site. A comprehensive settlement for performance of all work and reimbursement of response costs will avoid litigation and significant transaction costs to you and your company. A group of PRPs have formed a convening group to start this effort.")

is fair, reasonable and in the public interest, it is critical that certain modifications be made to the proposed settlement." In response to the comments of the PCI Group and others, the United States made certain limited modifications to the Consent Decree, and in its motion to enter the Amended Consent Decree responded to the PCI Group's comments that did not result in further modifications. But the PCI Group continues to have serious concerns with the settlement, and believes, that as presently constituted, the settlement would be unfair, unreasonable and not consistent with CERCLA. The Group seeks permission to share its continuing concerns with the Court.

### C.  Argument

The PCI Group has a unique role and broad interest in the success of the allocation and mediation process and in the overall cleanup of the Site. In light of its special position and perspective, the PCI Group seeks limited involvement as an amicus curiae in this action to voice its concerns with the Amended Consent Decree. As explained more fully in the Proposed Amicus Brief, the Amended Consent Decree, if entered, would undermine the ongoing allocation and mediation process and would set a bad precedent for future settlements at the Site.

Any early settlement at the Site must be entered into and examined with rigor to ensure that it furthers the possibility of future settlements that could provide funding for the remediation of this complex Site. The PCI Group believes that its Proposed Amicus Brief will help the Court better understand the shortfalls of the Amended Consent Decree, and that the Brief would not be duplicative of the objections that will be raised by the Intervenors[6] in this action.

---

[6] As the Court is aware, two groups of PRPs have been granted leave to intervene in this action. Although the PCI Group arguably had bases to intervene as well, it has decided to pursue the more limited involvement as amicus curiae because such status is sufficient to express the Group's concerns.

Granting this motion will not delay the Court's consideration of the United States' motion for entry of the Amended Consent Decree as the PCI Group is timely filing its Proposed Amicus Brief by the deadline for oppositions to the motion for entry.  To the extent that the United States disagrees with any of the arguments set forth in the Amicus brief, it will have the opportunity to set forth its position in its reply.

The other parties to this action (the United States, LPA and the Intervenors) have all expressed that they consent or do not object to this motion.

In light of the foregoing, the PCI Group respectfully requests that this Court grant its motion to file an Amicus Brief in opposition to the United States' motion to enter the Amended Consent Decree.

Respectfully submitted this 30th day of April, 2015.

/s/ James P. Murphy
**James P. Murphy, OSB No. 067084**
Murphy Armstrong & Felton LLP
701 Millennium Tower
719 Second Avenue
Seattle, WA 98104
Telephone:   (206) 985-9770

**Joel M. Gross**[7]
Arnold & Porter LLP
555 12th Street NW
Washington DC 20004
Telephone: (202) 942-5705

---

[7] Application for *pro hac vice* admission pending.

CERTIFICATE OF COMPLIANCE

The foregoing Memorandum in Support of the Motion for Leave to Appear as Amicus Curiae complies with the length limitation of LR 7-2(b)(1) because it does not exceeded 35 pages.

Dated: April 30, 2015

                                             */s/ James P. Murphy*
                                             **James P. Murphy, OSB No. 067084**
                                             Murphy Armstrong & Felton LLP
                                             701 Millennium Tower
                                             719 Second Avenue
                                             Seattle, WA 98104
                                             Telephone:   (206) 985-9770

CERTIFICATE OF SERVICE

      I certify that a copy of the foregoing document and attachments was served on all counsel of record via filing with the Court's ECF system on April 30, 2015.

Dated: April 30, 2015

                                              */s/ James P. Murphy*
                                              **James P. Murphy, OSB No. 067084**
                                              Murphy Armstrong & Felton LLP
                                              701 Millennium Tower
                                              719 Second Avenue
                                              Seattle, WA 98104
                                              Telephone:   (206) 985-9770